IN THE UNITED STATES DISTRICT COURT
                  FOR THE EASTERN DISTRICT OF PENNSYLVANIA

---------------------------------------------------------------
UNITED STATES OF AMERICA,           :
                                    :
              Plaintiff,            :    CRIMINAL NO: 2:19-cr-00064-JLS-1
                                    :
    v.                              :
                                    :
JOHN DOUGHERTY,                     :
                                    :
              Defendant.            :
                                    :
---------------------------------------------------------------

**REPLY IN FURTHER SUPPORT OF DEFENDANT JOHN DOUGHERTY'S MOTION TO DISMISS COUNTS 97 – 109 OF THE INDICTMENT**

Dated: May 1, 2019

Henry E. Hockeimer, Jr. (I.D. No. 86768)
David L. Axelrod (I.D. No. 323729)
Terence M. Grugan (I.D. No. 307211)
Emilia McKee Vassallo (I.D. No. 318428)
BALLARD SPAHR LLP
1735 Market Street, 51st Floor
Philadelphia, PA 19103-7599
T: 215.665.8500
F: 215.864.8999

*Attorneys for Defendant John Dougherty*

## I. INTRODUCTION

In its Opposition to Defendant's Motion to Dismiss, the Government bobs and weaves around the simple, straightforward argument advanced in the Motion: The Indictment fails to allege that Mr. Dougherty bribed defendant Robert Henon in exchange for Mr. Henon's engaging in official acts that deprived the citizens of Philadelphia of their right to Mr. Henon's honest services. Instead, the Government relies on unsupported and unsupportable legal conclusions in urging the Court to just leave it to a jury to sort out its inherently inconsistent bribery theory. First, the Government argues that the allegation "John Dougherty, *through Local 98*, provided defendant Robert Henon with a stream of benefits" meets what it describes as a virtually meaningless pleading burden. However, the Government does not address the critical portion of this conclusory statement, "through Local 98," nor does it acknowledge its own explanation of this key phrase that *"Local 98 paid" the alleged stream of benefits*. The Government thus leaves unanswered the basic dispositive question: If, as the Government has alleged, the *quid* at the heart of the scheme is regular salary payments and if, as the Government has alleged, "Local 98 paid" that salary, how is Mr. Dougherty personally implicated as an alleged briber? On this, the Indictment is silent, and that silence alone provides a sufficient basis to dismiss the honest services fraud counts.

Second, the Government offers no more in its Opposition in its attempts to explain away the lack of allegations in the Indictment establishing corrupt intent. Instead of responding to this argument, it offers and inapt strawman, misrepresenting Mr. Dougherty's argument as "based on the misconception that Dougherty is charged with committing honest services fraud in

2003."[1] From there, the Government repeats the legal conclusions in the Indictment, sets forth the definition of "*quid pro quo*," and falls-back on a permissive standard of review to get its theory to a jury.

To be clear, Mr. Dougherty is charged with entering either an express or implied agreement to exchange a Local 98 salary and tickets to a single Philadelphia Eagles game in November 2015 for Mr. Henon's performance of official acts in 2015 and 2016. The timeframe of the charge is not in dispute. And, to be clear, the Government must allege that Mr. Dougherty[2] possessed the corrupt intent to influence Mr. Henon's official action *at the time* the decision was made to give Mr. Henon a Local 98 salary. The Government's theory fails in the lack of contemporaneousness of these events – the essence of a *quid pro quo*. If, as the Government alleges, Mr. Henon received his salary from Local 98 for at least 12 years before the *quid pro quo* was consummated and 8 years before he took public office, how could Mr. Dougherty have conceivably intended it as a corrupt bribe payment in 2015 and 2016? Put another way, what facts, beyond the mere fortuity of the Commonwealth of Pennsylvania permitting public officials to maintain private employment while in office, has the Government alleged to establish that the intent behind those salary payments changed from the day before Mr. Henon took office to the day after? None at all.

Confronted with the infirmities of its charges, the Government contradicts its own allegations and rests its position on boilerplate allegations invoking what it evidently considers

---

[1] Indeed, even the Government's strawman argument is flawed, as Mr. Henon began his employment with and began receiving a salary from Local 98 in 1998.

[2] As noted above, Mr. Dougherty did not give Mr. Henon a Local 98 salary; Local 98 did. Nevertheless, setting that fact aside for sake of argument, the Government still has not factually alleged a *quid pro quo*.

2

talismanic statutory language. The standard the Government's allegations must meet on a motion to dismiss is not meaningless: Illogical and factually and legally untenable theories of criminal liability such as what the Government proffers here should not, as a matter of law, go to a jury. Counts 97 to 109 of the Indictment should be dismissed.

## II. DISCUSSION

### A. *The Appropriate Standard of Review*

The Government's overarching argument is that the Indictment is sufficient to survive a motion to dismiss because it summarily alleges that Mr. Dougherty engaged in a scheme to bribe Mr. Henon. As the Government repeats throughout its Opposition, the Indictment alleges:

(1) "Dougherty, through Local 98, provided defendant Robert Henon with a stream of personal benefits," which "include a salary from Local 98 and tickets to sporting events";

(2) "Dougherty gave Henon the stream of benefits with the intent to influence Henon in Henon's capacity as a member of Philadelphia City Council . . . and in exchange for Henon acting on behalf of Dougherty, in his capacity as a member of Philadelphia City Council, and performing official acts as directed by and on behalf of Dougherty"; and

(3) Henon accepted the stream of personal benefits from defendant John Dougherty, knowing the benefits were given in exchange for Henon's performance of official act at the direction of and on behalf of defendant Dougherty."

(*See, e.g.*, Gov't Resp. at 7). According to the Government, it need only state that a defendant "gave a stream of benefits" to "influence [a public official] in [his] capacity as a [public official]" to survive a motion to dismiss, essentially a regurgitation of the law, and the Court need not and may not look past these legal conclusions to the actual facts purportedly underlying them. If that were true, the Court's function as an arbiter and check on prosecutorial power would be meaningless.

"An indictment is an accusation only, and its purpose is to identify the defendant's alleged offense . . . and fully inform the accused of the nature of the charges so as to enable him to prepare

3

any defense he might have." *United States v. Stansfiled*, 171 F.3d 806, 812 (3d Cir. 1999). An indictment is sufficient "if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." *Hamling v. United States*, 418 U.S. 87, 117 (1974). An indictment "***fails*** to state an offense if ***the specific facts*** alleged in the charging document fall beyond the scope of the relevant criminal statute." *United States v. Panarella*, 277 F.3d 678, 685 (3d Cir. 2002) (emphasis added). "In deciding a motion to dismiss, [the court] must accept factual allegations [in the Indictment as true] and ***disregard legal conclusions*** to determine whether the alleged facts constitute a crime." *United States v. Harder*, 168 F. Supp. 2d 732, 737 (E.D. Pa. 2016) (emphasis added) (citing *United States v. Zauber*, 857 F.2d 137, 144 (3d Cir. 1988)).

The Government's formulation of the legal standard, the premise from which its specific arguments spring, is wrong. It is not enough for the Government to allege that Mr. Dougherty "through Local 98" "gave a stream of benefits" "with the intent to influence Henon in Henon's capacity as a member of Philadelphia City Council." Indeed, the Court is required to "disregard" such "legal conclusions." *Harder*, 168 F. Supp. 2d at 737. Instead, the Court must analyze the facts set forth in the Indictment and determine whether those facts establish the elements: (i) that Mr. Dougherty himself "gave" or "offered" (as those words are legally defined in the bribery context) to Mr. Henon "a Local 98 salary"; and (ii) that at the time the decision to give Mr. Henon a salary was made, the purpose was to influence his performance of official action. United States v. Lynch, 807 F. Supp. 2d 224, 231-32 (E.D. Pa. 2011). The facts alleged fail to meet these elements.

### B. *The Indictment Does Not Allege that Mr. Dougherty Gave Mr. Henon a Bribe*

Two irrefutable principles underlie Mr. Dougherty's argument that the Government has failed to adequately allege he gave, offered or promised Mr. Henon a bribe. First, "[t]he critical event in the commission of the crime [of bribery] is the actual giving or offer to give or transfer money or other things of value, absent which no offense is committed under the statute." *United States v. O'Donnell*, 501 F.2d 1190, 1194 (6th Cir. 1975). Second, "an individual may not be convicted on the basis of another person's acts which he neither authorized nor adopted." *United States v. Cryan*, 490 F. Supp. 1234, 1242 (D.N.J. 1980). Applied here, these principles yield the uncontroversial conclusion that to charge an individual with bribing a public official and survive a motion to dismiss, the Government must allege that the defendant himself offered or made a corrupt bribe. Or, if the Government is attempting to demonstrate the culpability of a defendant for a bribe made by another, the Government must allege that the defendant "authorized" or "adopted" or "caused" the payment or otherwise demonstrated the "authority," "ability" and "desire" to bring about the payment. *See United States v. Jacobs*, 431 F.2d 754, 760 (2d Cir. 1970). Critically, the Indictment meets neither of these requirements and the Government ignores both in its Opposition.

In its Opposition, the Government sets forth only an excerpt of its allegations directed toward the "give, offer or promise" element of the bribery charge. The full allegation reads:

> Defendant, John Dougherty, ***through Local 98***, provided defendant Robert Henon with a stream of personal benefits during the time that Henon was a member of the Philadelphia City Council. The benefits given to Henon by Dougherty include a salary from Local 98 and tickets to sporting events. ***Specifically: Local 98 paid*** Robert Henon a salary during the time he served as a City Councilman, totaling $70,649 in 2015 and $73,131 in 2016.

(Indictment pg. 111 ¶ 11.a) (emphasis added). Building from its incomplete recitation of its own allegations, the Government makes two disingenuous arguments. First, citing its allegations that

5

"Defendant John Dougherty, through Local 98, provided defendant Robert Henon with a stream of personal benefits" and "the benefits given to Henon by Dougherty include a salary from Local 98," (Gov't Resp. at 9), the Government argues "the Indictment alleges that Dougherty gave Henon bribes," (*id*.). As shown above, this is not a faithful representation of the Indictment.[3] Yet, even if it were, the allegation reads: "John Dougherty, ***through Local 98***, provided." Thus, even if the allegations were what the Government presented them to be in its opposition, they still state that Local 98 made the actual alleged bribe payments, thus the Government would be required to make some allegations that Mr. Dougherty authorized or adopted those payments. There are none. But, the Court need not resort to logic, reason or interpretation to arrive at the meaning of the Governments allegations; it explains them unequivocally in the same paragraph the Government excerpts where the Government states that by "through Local 98," it means "specifically, Local 98 paid Robert Henon a salary."

    The Government could attempt to address this infirmity in a Superseding Indictment if it had any evidence whatsoever that Mr. Dougherty played any role in securing Mr. Henon's employment with Local 98. The fact that the Government is fighting so hard to support faulty allegations strongly suggests that the government lacks the evidence it would need to secure a lawful indictment *and* conviction.

---

[3]     Doubling-down on it misrepresentation of the allegations in its Indictment, the Government takes issue with Mr. Dougherty pointing out that, while the Indictment in its introductory paragraphs alleges Mr. Dougherty provided Mr. Henon with tickets to multiple sporting events over a period of time, the substantive paragraphs of the Counts at issue allege that Mr. Henon received tickets to a *single* Philadelphia Eagles game in November 2015. (*See* Indictment at 115 ¶ 14). For some reason, the Government continues to press an inaccuracy that the facts of its own Indictment clearly and unequivocally fail to support.

Second, with no elaboration, the Government contrasts "offering" a bribe with "giving" a bribe, and argues "the Indictment does not allege that the defendant 'offered' Henon a bribe." This appears to be a semantics argument that has no bearing on what the Government is required to allege or its failure to do so. Whether a defendant is charged with offering, promising, or giving a bribe, the defendant himself must perform the operative action or authorize or adopt it if performed by another party. The absence of those allegations demands dismissal of Counts 97-109 of the Indictment.

> **C.** *The Government Has Not and Cannot Allege Mr. Dougherty Possessed the Requisite Intent*

The Government's counter to Mr. Dougherty's argument that the factual scenario charged renders proof of corrupt intent impossible is to state that "the intent of both parties may be proved by circumstantial evidence." (Gov't Resp. pg. 12). The Government apparently misapprehends Mr. Dougherty's argument. Whether proven by direct or circumstantial evidence, corrupt intent must exist at the consummation of a *quid pro quo*. *United States v. Lynch*, 807 F. Supp. 2d 224, 233 (E.D. Pa. 2011). Here, as an initial matter, this means that because the alleged *quid* is Mr. Henon's Local 98 salary, Mr. Dougherty must have possessed the intent to influence his performance of an official act at the time Mr. Henon was given his salary. Proof of this is not possible, however, because Local 98 gave Mr. Henon the salary, and not John Dougherty, *and* Local 98 began providing Mr. Henon this salary at least 8 years before he took office.

In proffering its theory, the Government is attempting sleight of hand, ignoring Mr. Henon's past salary history and arguing that the salary payments he received in 2015 and 2016 are stand-alone, rather than pre-existing, benefits that somehow converted to corrupt bribe payments once Mr. Henon began taking official actions that they allege benefitted Mr. Dougherty. To complete the fallacy, the Government attempts to relieve itself of proving any associated mental

7

state by arguing that intent can be "implied" and "proved by circumstantial evidence." Thus, faced with the question of what changed from the day prior to Mr. Henon assuming office to the day after Mr. Henon assumed office to convert his lawful salary into an unlawful bribe, the Government answers: "nothing." The Government is not free to criminalize lawful employment arrangements for public officials.

The Supreme Court's decision in *McCormick v. United States* illustrates the critical flaw in the Government's theory here. *McCormick* addressed the question of what proof is required for the Government to establish that a campaign contribution constituted an unlawful payment to a public official. 500 U.S. 257, 325 (1991). The Government urged, and the Fourth Circuit held (before it was reversed), that a campaign contribution can form the basis of an illegal *quid pro quo* "without proof of an explicit *quid pro quo*" where the government offers evidence that "the payments were never intended to be legitimate campaign contributions." *Id.* The Supreme Court rejected this formulation, instead holding that campaign contributions constitute unlawful payments to a public official "only if the payments are made in return for an explicit promise or undertaking by the official to perform or not to perform an official act." *Id.* at 326. The *quid pro quo* has to be clear from the sequence of events – not selectively cobbled together through whim arising from a desire to prosecute someone.

The Court grounded its decision in practical political realities and in the interest of curbing prosecutions for lawful political conduct. The Court explained that "[s]erving constituents and supporting legislation that will benefit the district and individuals and groups therein is the business of a legislator." *Id.* at 325. At the same time, "[m]oney is constantly being solicited on behalf of candidates, who run on platforms and who claim support on the basis of their views and what they intend to do or have done." *Id.* Under those circumstances, the Court held that

"[w]hatever ethical considerations and appearances may indicate, to hold that legislators commit the federal crime of extortion when they act for the benefit of constituents or support legislation furthering the interests of some of their constituents, shortly before or after campaign contributions are solicited and received from those beneficiaries, is an unrealistic assessment of what Congress could have meant" in enacting the Hobbs Act. *Id. See also*, *McDonnell v. United States*, __ U.S. __, 136 S. Ct. 2355, 2373 (2016) (limiting definition of "official act" in federal bribery statute because Government's expansive interpretation "raises significant federalism concerns explaining "[a] state defines itself as a sovereign through the structure of its government, and the character of those who exercise government authority. That includes the prerogative to regulate the permissible scope of interactions between state officials and their constituents").

While this case does not involve campaign contributions, the Government's efforts to criminalize private employment permitted by the Commonwealth of Pennsylvania in the absence of proof of a *quid pro quo* raises identical concerns to those in *McCormick*. Mr. Henon is one of eight sitting Philadelphia City Councilpersons who maintains private employment. At any time those Councilpersons could take official action that incidentally or directly benefits his or her outside employer and, under the Government's theory, that Councilperson could be charged with bribery because "circumstantially" a salary payment could coincide with the official action. As applied where the Commonwealth of Pennsylvania permits elected officials to hold private employment, the Government's position that a *quid pro quo* can be inferred from circumstantial evidence (such as a pattern of payments coinciding with official action) would eliminate the intent requirement from the charge. Further, even if the Government were free to cherry-pick otherwise lawful salary payments and charge them as illicit bribes, it would still be necessary for the Government to allege an explicit *quid pro quo*.

### III. CONCLUSION

Because the Government has failed to adequately allege the bribery theory of honest services fraud, Counts 97 to 109 of the Indictment should be dismissed.

Dated:  April 30, 2019

Respectfully submitted,

*/s/ Henry E. Hockeimer, Jr.                    .*
Henry E. Hockeimer, Jr. (I.D. No. 86768)
David L. Axelrod (I.D. No. 323729)
Terence M. Grugan (I.D. No. 307211)
Emilia McKee Vassallo (I.D. No. 318428)
BALLARD SPAHR LLP
1735 Market Street, 51st Floor
Philadelphia, PA  19103-7599
T: 215.665.8500
F: 215.864.8999

*Attorneys for Defendant John Dougherty*