# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA | : |
| v. | : CRIMINAL NO. 19 - 64 |
| JOHN DOUGHERTY | : |
| ROBERT HENON | |
| BRIAN BURROWS | : |
| MICHAEL NEILL | |
| MARITA CRAWFORD | : |
| NIKO RODRIGUEZ | |
| BRIAN FIOCCA | : |
| ANTHONY MASSA | |

## GOVERNMENT'S MOTION FOR A SUPPLEMENTAL CONFLICT COLLOQUY

The United States of America, by and through its attorneys, Jennifer A. Williams, Attorney for the United States, Acting Under Authority Conferred by 28 U.S.C. § 515, and the undersigned Assistant United States Attorneys, moves for a hearing concerning the current and additional potential conflicts of interest faced by counsel for defendants Robert Henon and Marita Crawford, raised by their current representation of these codefendants and the past representation of government witnesses, as well as defendant Michael Neill, in a prior matter.[1]  Henon is represented by Brian McMonagle; Crawford is represented by Fortunato Perri.  Counsel are partners in the law firm of McMonagle, Perri, McHugh, Mischak & Davis.

---

[1] The government does not allege or believe that attorneys Perri and McMonagle have acted improperly in any way.  *Cf. United States v. Cooper*, 672 F. Supp. 155, 156–61 (D. Del. 1987) ("a decision to disqualify Mr. Potter as the defendants' joint counsel in no way implies that he has acted unethically or illegally in undertaking the joint representation").

**Background**

On March 8, 2019, the government filed a Memorandum Regarding a Potential Conflict of Interest. At that time, the government took no position concerning disqualification.

On March 25, 2019, the Court held a hearing on the motion, and advised the defendants that: 1) the fact that their attorneys were partners in the same law firm presented a conflict of interest because they had a right to conflict-free representation and the loyalty of counsel; 2) during the course of a trial, the defendants' interests could diverge [the transcript reflects that the Court said "converge", which the parties agree was either a transcription mistake or inadvertent misstatement] 3) they were recorded during conversations with each other; 4) trial strategies between two defendants could be opposite; and 5) joint representation could present a serious problem. Both defendants informed the Court that they were willing to waive these potential conflicts and wanted to continue to be represented by their attorneys.

Since the motion and hearing, the government has become aware of the following potential conflicts:

1. David Mischak, a partner of Perri and McMonagle, represented a Local 98 employee in 2007 and 2008, during a prior investigation. This employee will be called by the government as an immunized witness to testify at trial concerning the embezzlement. The prior representation by the law firm of a government witness central to the government's case, by itself, raises a potential for a conflict of interest. Current counsel for this witness has confirmed that the witness had an attorney-client relationship with Mr. Mischak in approximately 2007-2008 and that

the witness does not and will not waive the privileges and obligations of confidentiality and loyalty to which the witness is entitled. [2]

    2.    Brian McMonagle represented defendant Michael Neill in 2007, and was present at an interview conducted by agents from the FBI and the IRS during a prior investigation. Neill is charged in the embezzlement conspiracy count and related substantive counts**.** Current counsel for Neill has informed the government that Neill will not assert any privileges pertaining to the prior representation, and will waive any conflicts that might arise.

    3.    Brian McMonagle also represented a second Local 98 employee and was present at an interview of the employee conducted by agents from the FBI and the IRS in 2007 during a prior investigation.[3] This witness may be called by the government to testify at trial concerning Henon and the corruption charges, but the anticipated testimony would be brief.

Because the prior representations of Neill and this witness appear to have been limited, and if called by the government, the witness's testimony will not be central to the government's case, the government does not believe that the prior representations of Neill and the second Local 98 employee by the law firm constitute a serious potential for conflict at this time. They do, however, raise the possibility that attorneys Perri and McMonagle may have to act in a way that is adverse to these former clients to effectively represent their present clients.

---

    [2]    In this case, the witness is and has been represented by an attorney with no ties to the law firm of Perri and McMonagle, and will be testifying under an immunity agreement that was negotiated by the current attorney.

    [3]    Memoranda of the interviews described above have been produced in discovery.

**Potential Conflicts Raised by the Current Joint Representation.**

As previously noted, the Indictment charges defendant Marita Crawford with conspiracy to embezzle and related substantive counts. Defendant Robert Henon is charged with conspiracy to commit honest services fraud and federal program bribery, and related substantive counts.

Although Crawford is not named as a defendant in any of the honest services or bribery counts, the government intends to introduce tape-recorded conversations Crawford had with John Dougherty and with Henon that constitute evidence of the honest services charges against Dougherty and Henon, some of which are described in the Indictment.

Additionally, the allegations in Count 97 reflect that Crawford was a participant in some of the Overt Acts alleged in the honest services conspiracy count against Henon, including the following:

> 49. On or about June 16, 2016, defendant JOHN DOUGHERTY told defendant MARITA CRAWFORD (charged elsewhere in this Indictment) to make sure defendant ROBERT HENON "shoots it [Comcast Franchise Agreement with City of Philadelphia] down," so that PPA Official No. 2 and his allies remain on their side.
>
> 64. On about June 26, 2015, defendant JOHN DOUGHERTY instructed Local 98's political director, defendant MARITA CRAWFORD (charged elsewhere in this Indictment), to reprimand defendant ROBERT HENON about an editorial that appeared in the Philadelphia Daily News on June 25, 2015, criticizing L&I for not citing Local 98 for Philadelphia City Code violations and for being afraid to stand up to DOUGHERTY. Believing that HENON had failed adequately to handle the circumstances giving rise to the critical editorial, DOUGHERTY instructed CRAWFORD to remind HENON that DOUGHERTY is the reason HENON is paid by the union, stating, "I am the f***ing guy saving him [HENON] in the f***ing union."

For these reasons, it is possible that both defendants are in a position to provide inculpatory information about the other, making it difficult for attorneys Perri and McMonagle to properly and

independently advise either defendant concerning the possibility of cooperation, even if both defendants claim at this time that they have no interest in cooperating.

As noted in the Government's March 8, 2019 submission, and reflected in the decisions cited below, "district courts' decisions on disqualification are highly fact-driven." *United States v. Roland*, 2016 WL 820951, at *7–15 (D.N.J. Mar. 1, 2016) (citations omitted) (court disqualified defense counsel who had previously negotiated a cooperation plea agreement for a testifying codefendant). *See, e.g., United States v. Jones*, 2011 WL 4923415, at *2–5 (E.D.Pa. Oct. 17, 2011) (Schiller, J.) (court rejected waivers by defendants, a married couple who were represented by the same attorney, in part, because the attorney could not offer uncompromised advice to one defendant about whether to cooperate and plead guilty, because to do so would implicate his other client, and the course of the trial was impossible to predict); *United States v. Joyce*, 330 F. Supp. 2d 527, 531 (E.D.Pa. 2004) (Robreno, J.) (court granted motion to disqualify attorneys from same firm who represented the only two defendants charged, who were living together as a couple); *United States v. Albert*, 1997 WL 773155, at *1–5 (E.D.Pa. Dec. 12, 1997) (Reed, J.) (attorney who represented two codefendants, one of whom was also facing similar charges in a separate matter pending in California, disqualified because of serious potential for conflict); *United States v. Cooper*, 672 F. Supp. 155, 156–61 (D.Del. 1987) (attorney representing three codefendants from same family disqualified).

For this reason, the government respectfully requests, in addition to questions concerning the potential conflicts raised by the newly discovered prior representations, the Court also make additional inquiries concerning the joint representation to supplement the questions posed to the defendants on March 25, 2019.

**<u>The Law Firm's Prior Representation of a Government Witness Creates a Potential Conflict.</u>**

The law firm of Perri and McMonagle previously represented a Local 98 employee whom the government intends to call at trial. The Third Circuit has recognized that conflicts also arise where a defendant's counsel of choice may have divided loyalties due to the prior representation of another client who will be called as a government witness. *United States v. Stewart*, 185 F.3d 112, 121 (3d Cir. 1999); *United States v. Moscony*, 927 F.2d 742, 749 (3d Cir. 1991).

In 2007, attorney David Mischak, a partner of Perri and McMonagle, represented the witness during a prior investigation. The witness was interviewed on two occasions, primarily about matters which are closely related to the subjects about which the witness will testify at trial. Although the period in question was prior to the period charged in the indictment, the subject matter of the prior representation is closely related to the subject matter of the anticipated testimony at trial.

The allegations about which the witness will testify at trial include the falsely claimed business purpose of certain expenditures that defendants John Dougherty and Marita Crawford made with Local 98 credit cards. Some of the expenditures involving Crawford are alleged in Count One:

> d. On or about May 2, 2015, at the Old Homestead restaurant, in Atlantic City, New Jersey, defendants JOHN DOUGHERTY and MARITA CRAWFORD used a Local 98 American Express credit card, in the name of defendant CRAWFORD, to spend approximately $1,378.88 on a birthday dinner for DOUGHERTY that was attended by family members and friends who were not employees or members of Local 98. CRAWFORD falsely reported to Local 98 that the birthday dinner was a "Political Campaign Meeting Hosted by John Dougherty." Indictment, Count One, Overt Act 13d.
>
> a. On or about December 13, 2013, at Guerlain Boutique at The Waldorf Astoria, in New York, New York, defendant MARITA CRAWFORD used a Local 98 American Express credit card, in the name of

   CRAWFORD, to spend approximately $261.25 on beauty and makeup services for CRAWFORD and Family Member No. 6. *Id.*, Overt Act 14a.

   b. On or about December 12, 2014, at Guerlain Boutique at The Waldorf Astoria, in New York, New York, defendant MARITA CRAWFORD used a Local 98 American Express credit card, in the name of CRAWFORD, to spend approximately $245 on beauty and makeup services for CRAWFORD and the girlfriend of Individual No. 1. CRAWFORD later reported to Local 98 that the expense for this purchase was for "PA Society." *Id.*, Overt Act 14b.

   c. On or about June 4, 2015, at the Sheraton JFK Airport Hotel in New York, New York, defendant MARITA CRAWFORD used a Local 98 American Express credit card, in the name of CRAWFORD, to spend approximately $335.13 on a hotel room during a personal trip to attend the Belmont Stakes horse race. When submitting the expense report for her expenditure of these Local 98 funds, CRAWFORD failed to provide a justification for the expenditure. *Id.*, Overt Act 14c.

   d. On or about June 4, 2015, at the Sheraton JFK Airport Hotel in New York, New York, defendant MARITA CRAWFORD used a Local 98 American Express credit card, in the name of CRAWFORD, to spend approximately $335.13 on a hotel room during a personal trip to attend the Belmont Stakes horse race. When submitting the expense report for her expenditure of these Local 98 funds, CRAWFORD failed to provide a justification for the expenditure. *Id.*, Overt Act 14d.

Additionally, the witness will testify about a request John Dougherty made of the witness to expedite the payment of consulting fees to Crawford in late 2011, before Crawford became a Local 98 employee. Although the payment of the consulting fees is not alleged as an Overt Act, this evidence will be presented as proof of the charged conspiracy to embezzle Local 98 funds.

The testimony of the witness will be, in part, directly adverse to Crawford. The subject matter of the prior representation was substantially related to that of the anticipated trial testimony. Because Mischak is a partner of Perri and McMonagle, defendants Crawford, Henon, Neill and the two witnesses described in this Motion are or were represented by the same law firm, which is considered one attorney for the purposes of the conflict analysis.

Like decisions pertaining to joint representation, rulings on potential conflicts arising from prior representation are fact-dependent. *See, e.g., United States v. Moscony*, 927 F.2d 742, 748–49 (3d Cir. 1991) (disqualified attorney had previously represented three government witnesses and two defendants during grand jury investigation); *United States v. Kadomsky*, 2002 U.S. Dist. LEXIS 20319 (E.D.Pa. Oct. 15, 2002) (Surrick, J.) (court granted the government's motion disqualify defense counsel who had previously represented three essential government witnesses on unrelated matters). *But see United States v. Massimino*, 832 F. Supp. 2d 510, 518–19 (E.D.Pa. 2011) (Robreno, J.) (court declined to disqualify attorney who previously represented government witness and codefendant because even though the subject matter of the prior representations were closely related to the events alleged in the indictment, the prior representations were limited in nature and subject matter, and the defendant had a long-standing relationship the attorney, who had expended a considerable amount of time and effort on behalf of the defendant).

To determine the nature of the potential conflict regarding the law firm's prior representation of this witness, the Court should consider the duration of and the subject matter covered by the prior representation, and whether the current attorneys were privy to confidential communications. If attorneys Perri or McMonagle are potentially in a position to use privileged information obtained during prior representation of the witness in their defense, a potential conflict exists. *See, e.g., United States v. O'Malley*, 786 F.2d 786, 790-93 (7th Cir. 1986).

In *United States v. Moscony*, 927 F.2d 742, 749 (3d Cir. 1991), the Third Circuit held that the district court did not erroneously disqualify Moscony's attorney, who had previously represented a codefendant who pleaded guilty and testified for the government, and during most of the grand jury investigation, represented Moscony, the codefendant, and employees from his company. The court of appeals found that cross-examination of the attorney's former clients

would have deprived Moscony of his Sixth Amendment right to effective assistance of counsel, and would have violated ethical standards regarding privileged communications. *Id.* at 748. The Court of Appeals recognized that "[c]onflicts of interest arise whenever an attorney's loyalties are divided, and an attorney who cross-examines former clients inherently encounters divided loyalties." *Id.* at 750.[4]

Courts have disqualified counsel who previously represented government witnesses who will testify against their present clients. *See, e.g., See United States v. Moses,* 58 Fed. Appx. 549, 553-55 (3d Cir. 2003) (district court's dismissal of attorney who had previously represented a defendant and witness who was to testify against the defendant was not an abuse of discretion); *United States v. Bradford*, 121 F.Supp. 2d 454, 456 (W.D.Pa. 2000) (disqualifying counsel where the government planned to call a former client charged in an unrelated case); *United States v. Winter*, 1998 WL 669932, at *3 (E.D.Pa. Sept. 29, 1998) (Padova, J.) (attorney for defendant, who previously represented cooperating witness, disqualified because attorney had represented cooperating witness in at least two prior cases, and former client would be testifying against current client); *United States v. Traboscia*, 1994 WL 59357 (E.D.Pa. Feb. 25, 1994) (Hutton, J.) (disqualifying attorney where former client, and unindicted coconspirator, would be called as government witness against current client of attorney); *United States v. Montevecchio*, 645 F. Supp. 497, 499–501 (W.D.Pa. 1986), *aff'd*, 829 F.2d 33 (3d Cir. 1987) (court disqualified attorney,

---

[4] Rule 1.7 of the Pennsylvania Rules of Professional Conduct prohibits attorneys from representing a client when the representation will be directly adverse to another client, or when there is a significant risk that the representation will be materially limited by the lawyer's responsibilities to another current or former client, but allows for a waiver by the client under certain circumstances. Rule 1.9 contains similar prohibitions pertaining to former clients, as well as a prohibition on the use of privileged information.

finding that defendant was not capable of making a valid waiver of the potential conflict where attorney previously represented two government witnesses in unrelated matters).

Courts have also denied motions to disqualify counsel because of a prior representation, for example, where the government witnesses who were previously represented by defense counsel were not critical to the government's case. *See United States v. Hawkins*, 2004 WL 2102017, at *6-8 (E.D. Pa. Aug. 26, 2004) (Baylson, J.) (counsel who had previously represented a government witness during grand jury proceedings not disqualified, because witness was not critical to government's case, and co-counsel, who was not privy to any confidential information from the prior representation, would cross-examine witness); *United States v. Mazzone*, 2000 WL 1790115, at *2-3 (E.D.Pa. Dec. 7, 2000) (Hutton, J.) (denying motion for disqualification where the government's witness, whom defense counsel also represented, would testify only to background facts and court accepted defendant's waiver).

**Suggested Colloquy**

For all of the reasons set forth above, the government respectfully requests that the Court hold a hearing to inform the defendants of these new potential conflicts, as well as specific conflicts that could occur as a result of the joint and prior representations, inquire whether the defendants and their counsel wish to present any information to address these potential conflicts, and determine whether the defendants can knowingly and intelligently waive the potential conflicts.

The government, therefore, respectfully requests that the defendants be advised of the following potential conflicts:

1. Because you and your codefendant are represented by members of the same law firm, and therefore, in effect, by the same attorney, the outcome of many

potential decisions by you, which may be in your best interest, may be adverse to your codefendant. Similarly, the outcome of many potential decisions by your codefendant, which may be in his or her best interest, may be adverse to you.

2. Because you may be able to provide information about your codefendant that may support the government's case against him or her, as well as information about some other codefendants, one of the decisions with which you are faced is whether to plead guilty and cooperate. That decision, which may be in your best interest, could adversely affect your codefendant. Similarly, because your codefendant may be able to provide information about you that may support the government's case against you, as well as information about some other codefendants, one of the decisions with which your codefendant is faced is whether to plead guilty and cooperate. That decision could adversely affect you. Likewise, you may need to call a witness who may be helpful to you, but harmful to your codefendant, or your codefendant may need to call a witness who may be helpful to him or her, but harmful to you.

3. For these reasons, it may be difficult, or even impossible, for your attorney to independently advise you concerning the possibility of cooperation, even if you have no interest in cooperating at this time.

4. Your attorney may have difficulty arguing that you are less culpable than your codefendant without compromising the defense of your codefendant. Similarly, the attorney for your codefendant may have difficulty arguing that he or she is less culpable than you are without compromising your defense.

5. You may have made or may make statements to your attorney that support your defense, while weakening the defense of your codefendant. Similarly, your codefendant may have made or may make statements to his or her attorney that support his or her defense, while weakening your defense. The attorney for your codefendant may have to cross-examine you to support his or her defense.

6. Therefore, in this case, your attorney cannot advise you concerning these decisions without the potential for a conflict because of the adverse impact they could have on your codefendant. Similarly, your codefendant's attorney cannot advise him or her concerning these decisions without the potential for a conflict because of the adverse impact they could have on you. In sum, neither attorney may be able to give you or your codefendant independent advice that would not be potentially adverse to the interests of one of you.

7. The basis for any decision you make concerning your choice of attorney at this time may change, because trials are not predictable, and your current trial strategy and planned defenses may change over time.

8. When the government calls a witness who has been previously represented by your attorney, or a member of the same law firm as your attorney, a potential conflict of interest arises because your attorney will be faced with conflicting loyalties. Your attorney has a duty to vigorously cross-examine the witness to properly represent you, which may reveal confidential information, in violation of the Rules of Professional Responsibility. In the alternative, your attorney may breach his duty to vigorously represent you, in violation of the Rules of Professional Responsibility, to prevent divulging confidential information the

witness shared with him or his law partner.  Furthermore, your attorney has a continuing obligation not to act against the interest of a former client.

For all of the reasons set forth above, the Government's respectfully requests that this Court hold a hearing to address the potential conflicts described above.

        Respectfully submitted,

        JENNIFER ARBITTIER WILLIAMS
        Attorney for the United States, Acting Under
        Authority Conferred by 28 U.S.C. § 515

        RICHARD P. BARRETT
        Assistant United States Attorney
        Chief, Corruption and Labor Racketeering Section

        <u>/s/ Frank R. Costello, Jr.</u>
        FRANK R. COSTELLO, JR.
        PAUL L. GRAY
        BEA WITZLEBEN
        Assistant United States Attorneys

Dated: February 7, 2020

# CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this date, I electronically filed the foregoing pleading with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the attorneys of record for the defendants, who are identified below.

Henry Hockeimer and David Axelrod
Counsel for Defendant John Dougherty

Brian McMonagle
Counsel for Defendant Robert Henon

Thomas Bergstrom
Counsel for Defendant Brian Burrows

Joseph Capone
Counsel for Defendant Michael Neill

Fortunato Perri
Counsel for Defendant Marita Crawford

Paul Hetznecker
Counsel for Defendant Niko Rodriguez

Nina Spizer
Counsel for Defendant Brian Fiocca

William Brennan
Counsel for Defendant Anthony Massa

/s/Frank R. Costello, Jr.
FRANK R. COSTELLO
Assistant United States Attorney

Dated: February 7, 2020