# Ballard Spahr
LLP

—————————
1735 Market Street, 51st Floor
Philadelphia, PA 19103-7599
TEL 215.665.8500
FAX 215.864.8999
www.ballardspahr.com

David L. Axelrod
Tel: 215.864.8639
Fax: 215.864.8999
axelrodd@ballardspahr.com

June 4, 2020

*Via E-mail*

Honorable Paul S. Diamond
United States District Judge for the Eastern District of
Pennsylvania
James A. Byrne U.S. Courthouse
601 Market Street
Philadelphia, PA 19106

Re: <u>*United States v. John Dougherty, et al.*, Case No. 2:19-cr-00064-JLS</u>

Dear Judge Diamond:

We write in response to the government's letter of June 3, 2020, in which it contends that Mr. Dougherty is not entitled to an evidentiary hearing.

The government's letter misstates Mr. Dougherty's position. Mr. Dougherty is not seeking an evidentiary hearing to challenge the sufficiency of Agent Blake's affidavit. Rather, Mr. Dougherty is seeking an evidentiary hearing in support of its argument that the government did not satisfy the "necessity" element to justify a Title III intercept, as required by 18 U.S.C. § 2518(3)(c). *See United States v. Hendricks*, 395 F.3d 173, 180 (3d Cir. 2005).

The government contends that a defendant is not entitled to an evidentiary hearing in challenging necessity "unless he . . . makes a 'substantial preliminary showing that a false statement knowing and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause." There is no binding precedent in the Third Circuit supporting the government's position. Rather, *United States v. Heilman*, 377 F. App'x 157, 177 (3d Cir. 2010), a non-precedential opinion, intentionally side-steps such a ruling, stating, "[w]e need not decide today, however, whether a defendant is entitled to a *Franks* hearing to challenge misstatement or omissions related to a necessity finding in a wiretap application . . . ." Contrary to the government's letter, *United States v. Pavulak*, 700 F.3d 651, 665 (3d Cir. 2012) does not speak to evidentiary hearings regarding necessity or wiretaps.

Instead, the proper analysis should focus on whether Mr. Dougherty has raised an "issue[] of fact material to the resolution of [his] constitutional claim." *United States v. Hines*, 628 F.3d 101, 105 (3d Cir. 2010). An evidentiary hearing on a motion to suppress is required if "the

motion is sufficiently specific, non-conjectural, and detailed to enable the court to conclude that (1) the defendant has presented a colorable constitutional claim, and (2) there are disputed issues of material fact that will affect the outcome of the motion to suppress." *Id.* Mr. Dougherty's motion readily meets this burden as he has established that traditional investigative techniques would have been effective, and there is a disputed issue of material fact regarding what efforts the government undertook to employ those techniques.

Moreover, even assuming, for the sake of argument, that the requirements of *Franks v. Delaware*, 438 U.S. 154, 155-56 (1978), *do apply* in the context of a Title III necessity challenge, Mr. Dougherty has satisfied this preliminary showing. The lynchpin of Agent Blake's affidavit was that obtaining the communications between Mr. Dougherty and his alleged co-conspirators was "necessary" to investigate his alleged embezzlement. To support that conclusion, Agent Blake affirmed that "a search warrant cannot be used to obtain [Mr. Dougherty's] text messages." Blake Aff. ¶ 64. This statement was demonstrably wrong. Moreover, Agent Blake, an experienced FBI agent with years of experience working on high profile public corruption investigations, Blake Aff. ¶ 2, knew or should have known that Mr. Dougherty's text messages could have been obtained through a two-step process of sending AT&T a preservation letter, pursuant to 18 U.S.C. § 2703(f), followed by a search warrant for the content of these communications. Agent Blake's omission of the FBI's failure to send preservation letters to AT&T was made with reckless disregard for the truth, as surely an agent with Agent Blake's experience was aware that "any reasonable person would have known that was the kind of thing the judge would wish to know." *United States v. Romeu*, No. 3:18-CR-114, 2020 U.S. Dist. LEXIS 3837, at *19 (M.D. Pa. Jan. 9, 2020) (quoting *Wilson v. Russo*, 212 F.3d 781, 788 (3d Cir. 2000) (quotation marks omitted)).

There is no argument that this omitted information was material to both Agent Blake's conclusion regarding necessity and the Court's assessment. Had the government obtained the text messages identified in paragraph 31 of Agent Blake's affidavit, it would have had no need for a Title III intercept to investigate the TARGET OFFENSE of embezzlement; it would have already had these communications. The government would not have met the "necessity" requirement had it either (a) obtained the text messages from AT&T or (b) accurately described the process by which it could obtain Mr. Dougherty's text messages from AT&T.

However, this is just one reason Mr. Dougherty's motion should be granted. As Mr. Dougherty's motion set out, the government's entire "necessity" justification was flawed. The government's Title III application set forth an advanced investigation that had already purportedly developed substantial evidence of the TARGET OFFENSES. Based on credit card records, the government alleged that the majority of purchases made on Dougherty's three Local 98 credit cards were "personal in nature." Blake Aff. ¶ 29. Video surveillance allegedly showed that Brian Fiocca, Niko Rodriguez, and Thomas Rodriguez "routinely" used Dougherty's Local 98 credit card to make such purchases, often at a Target store near Dougherty's home, and that they would then deliver the items to Dougherty's home (and

sometimes to Fiocca's, next door). *Id.* ¶ 29–30. This, by the government's telling corroborated agents' own observations from outside Dougherty's home. *Id.* ¶ 30. In addition, to retail surveillance cameras, pole cameras, credit card records, and agent surveillance, *id.* ¶ 29–30, the government examined pen register records, *id.* ¶ 31. These records allegedly demonstrated many instances where Mr. Dougherty communicated by phone calls and/or text messages with the phones of the other target interceptees immediately prior to the purchases of personal items on Dougherty's Local 98 credit cards. *Id.* For example:

> On May 2, 2014, at 9:04 A.M. and 9:46 A.M., DOUGHERTY and FIOCCA had voice communications on TARGET TELEPHONE #1. At 9:50 A.M., $42.90 was charged at the Target, using one of the Local 98 American Express credit cards assigned to DOUGHERTY, for bottled water, paper towels, and diapers. At 9:54 A.M., a black Ford F150 matching the description of the one owned by the union arrived at the DOUGHERTY residence. Two individuals matching the description of FIOCCA and NIKO RODRIGUEZ, left the F150 and carried items from the vehicle into the DOUGHERTY residence. Investigators have learned that, at the time, NIKO RODRIGUEZ and FIOCCA's brother Greg Fiocca, who also resided at 1931 E. Moyamensing Street, had infant children.

*Id.*

The government's wiretap application makes clear that the government has resorted to wiretapping though "traditional investigative techniques would suffice" to prove or disprove the target offenses. *United States v. Vento*, 533 F.2d 838, 849 (3d Cir. 1976) (quoting *United States v. Kahn*, 415 U.S. 143, 153 n.12 (1974)). The government sought to sure-up its case the easy way rather than by way of traditional, painstaking-but-effective methods—perhaps doubling-down on technique where it lacked substance beyond small alleged transactions for items like diapers and vitamins, *see, e.g.*, *id.* ¶ 31. The target offenses allegedly took place via payments recorded in the course of their commission. While a wiretap would perhaps serve as a more efficient method of investigation, efficiency is not the Title III standard—necessity is. "Congress legislated in considerable detail in providing for applications and orders authorizing wiretapping and evinced the clear intent to make doubly sure that the statutory authority be used with restraint and only where the circumstances warrant the surreptitious interception of wire and oral communications." *United States v. Giordano*, 416 U.S. 505, 515 (1974).

The government routinely investigates and prosecutes embezzlement without Title III intercepts. The government's wiretap application appears to be driven by the government's desire to fish for evidence of additional crimes, rather than the need to prove the TARGET OFFFENSES. The courts must police necessity and limit the use of wiretap interceptions where traditional investigatory methods would be effective at proving or disproving the

target offenses. For these reasons and all the other reasons in Mr. Dougherty's motion, the evidence derived from the Title III wiretap should be suppressed.

Respectfully yours,

David L. Axelrod

DLA


cc: AUSA Frank R. Costello
      AUSA Paul L. Gray
      AUSA Richard P. Barrett
      All Defense Counsel of Record