## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | **Crim. No. 19-64-JLS** |
| | : | |
| JOHN DOUGHERTY ET AL. | : | |

---

### MEMORANDUM

**Diamond, J.**                                                    **July 1, 2020**

The grand jury has charged labor leader John Dougherty with directing a years long conspiracy to steal vast amounts of union money, commit tax fraud, corrupt Philadelphia government, and conceal his crimes.  Dougherty's indictment was preceded by an eighteen-month Title III wiretap investigation based on the warrant and supporting affidavit of FBI Special Agent Jason Blake. Joined by two Codefendants, Dougherty moves to suppress telephonic intercept evidence, arguing that the Government violated Title III's "necessity requirement."  (Doc. No. 97; see Doc. Nos. 99–100); 18 U.S.C. § 2518(3)(c).  He requests an evidentiary hearing at which he "anticipates calling . . . Agent Blake to testify."  (Dougherty June 1, 2020 Hr'g Request, Doc. No. 130.) Through Blake, Dougherty seeks to explore whether: (1) the Government demonstrated "necessity"; and (2) a purported omission in the Blake Affidavit undermines the Government's necessity representations.  (See Doc. Nos. 130, 131, 133.)  I will deny the hearing request.  I will address the Suppression Motion itself in a separate Memorandum.

## I.       BACKGROUND

While leading the International Brotherhood of Electrical Workers Local Union 98, Dougherty became the target of a federal investigation into embezzlement of Local 98's funds. After using various investigative tools with limited success, the Government obtained a Title III warrant to wiretap Dougherty's cellphone from April 2015 through August 2016.  On January 29,

2019, the grand jury returned a 116 Count Indictment, charging Dougherty and seven others (including a Philadelphia City Councilman) with myriad crimes, including conspiracy to embezzle and embezzlement of labor union assets, wire fraud, making false statements on his federal income tax returns, and honest services fraud.  (See Doc. No. 1.)  Dougherty moved to suppress the Government's Title III wiretap evidence on August 6, 2019.  (Doc. No. 97.)  The Government opposes his Motion.  (Doc. No. 106.)  Trial is presently set for September 14, 2020 before Judge Schmehl.

Under this District's Local Rules, as the Judge who issued the wiretap warrant, I must rule on Dougherty's Suppression Motion.  See Local. R. Crim. P. 41.1(b).  Because Dougherty neither identified factual disputes nor requested an evidentiary hearing, I asked the Parties whether a hearing is needed to decide the Suppression Motion.  Dougherty then explicitly requested a hearing, which the Government opposes.  (See Doc. Nos. 131–34.)

## II.     NECESSITY AVERMENTS

Agent Blake has explained that the Government collected video surveillance footage—obtained from retail security cameras and pole cameras placed by agents—showing that Dougherty and others used his Local 98 credit card to make personal purchases.  Agents used pen registers, cell site data, and banking and telephone toll records, which also suggest that Dougherty directed his confidants to spend union funds on personal items for Dougherty.  Although surveillance uncovered incriminating information, it could not reveal the scope of the conspiracy, the roles of all participants, or the actual directions Dougherty allegedly gave.   As I discuss below, investigators considered, but declined to employ, other investigative techniques: undercover agents, confidential sources, arrests and/or interviews of co-conspirators, grand jury subpoenas, search warrants, and trash searches.

III.    DISCUSSION

Although Dougherty seeks "an evidentiary hearing in support of his argument that the government did not satisfy" Title III's "necessity" requirement, he also denies that he wants a hearing to challenge the "sufficiency" of the Blake Affidavit—surely a distinction without a difference.  (Dougherty June 4, 2020 Reply Letter 1, Doc. No. 133.)  Similarly, Dougherty alleges that the Blake Affidavit includes a deliberate omission, yet disputes the suggestion that he seeks a *Franks* hearing, while also arguing that he is entitled to a *Franks* hearing.  (Id. 2–3.)  Finally, although in his publicly filed Motion Dougherty quotes extensively from the sealed Blake Affidavit and now seeks a public hearing concerning the Affidavit's adequacy, he urges me to keep the Affidavit under seal.  (See Dougherty Mem. in Support of Continuing Seal, Doc. No. 135.)

I will begin by considering Dougherty's "sword and shield" treatment of the Blake Affidavit.

A.      The Sealed Affidavit

On April 29, 2015, I reviewed, approved, and sealed the application, warrant, and affidavit authorizing the Government to intercept Dougherty's cell phone calls.  18 U.S.C. § 2518(8)(b).  Those materials remain under seal and may be unsealed "only upon a showing of good cause." Id.; see In re N.Y. Times Co., 577 F.3d 401, 408 (2d Cir. 2009).  That stricture notwithstanding— and without asking me to unseal the materials—Dougherty publicly challenges the adequacy of the Blake Affidavit, quoting extensively from the document, and urges that he is entitled to a public hearing on his challenge.  (See Def.'s Mot. to Suppress 9, 10, 11, 13, 14, 16, 18, 19, 20.) In its response to Dougherty's Suppression Motion, the Government also quotes extensively from the sealed Affidavit—again without first asking me to unseal the document.  (See Gov't Opp'n 2, 4,

5, 6, 7, 8, 9,10, 11, 12, 13, 15, 16, 17, 18, 21, 22, Doc. No. 106.)

I asked the Parties to address whether the Blake Affidavit should remain under seal in light of the disclosures that had occurred and inevitably would occur at the requested hearing. Dougherty opposes unsealing, arguing vigorously that the "irrelevant and salacious details" thus disclosed would harm Dougherty and numerous others named. (Dougherty Mem. ISO Continuing Seal 4, 5.) In seeking to explain his own unauthorized disclosures, Dougherty notes that these "only reference portions of the Affidavit that pertain to the investigatory efforts undertaken by the government." (Id. 6.) With this casual wave of the hand, Dougherty asks me to ignore that an analysis of the Government's "investigation efforts" is at the heart of the Title III inquiry he urges. A close review of the Government's "necessity" contentions would inevitably require disclosure and discussion of the very information Dougherty wants to keep sealed. Such disclosure and discussion would certainly occur at the public hearing Dougherty asks me to conduct.

For instance, Agent Blake sets out precisely what other investigative means the Government had employed and considered, the individuals involved, and why those available means were insufficient to uncover substantial information of Dougherty's criminal activities. Dougherty limited his dealings to a trusted few individuals, who were "also participants in the crimes," and so likely would "communicat[e] to Dougherty" that he was the target of an investigation were they approached by law enforcement. (Blake Aff. ¶ 65.) Because Dougherty had been the subject or target of prior investigations, he was already highly cautious. Were Dougherty to learn of this new investigation, he "would take additional precautionary steps to avoid the collection of evidence." (Id.) Moreover, given Dougherty's control of Local 98, investigators feared he would retaliate against anyone providing information to the Government. (Id. ¶¶ 67, 71.) The hearing Defendant requests on these necessity averments would certainly

require a detailed, public exploration of the evidence the Government obtained before the wiretaps, including the identities of all involved—information Dougherty vigorously urges should remain under seal.

Remarkably, in asking me to maintain the seal, Dougherty relies on the provision he ignored in drafting his Suppression Motion, Title III's requirement that

> [a]pplications made and orders granted under this chapter shall be sealed by the judge. Custody of the applications and orders shall be wherever the judge directs. Such applications and orders shall be disclosed only upon a showing of good cause before a judge of competent jurisdiction.

18 U.S.C. § 2518(8)(b). Dougherty apparently took it upon himself to decide which portions of the Affidavit could be disclosed publicly and which should remain under seal. Obviously, what information should be publicly disclosed is not properly determined by the Government or by the principal target of the Government's investigation. See Application of Kansas City Star, 666 F.2d 1168, 1175 (8th Cir. 1981) ("[E]ven in the absence of a government claim to confidentiality there must still be good cause for unsealing and disclosing orders and applications for electronic surveillance because the 'protection of privacy was an overriding congressional concern' in the enactment of Title III.") (quoting Gelbard v. United States, 408 U.S. 41, 48 (1972)).

As I discuss below, Dougherty's confusing, contradictory positions confirm that his hearing request has little to do with a purported need to test the Blake Affidavit's adequacy. Moreover, the Government persuasively contends that unsealing would unfairly prejudice uncharged individuals named in the document. In these circumstances, I will not unseal the Affidavit.

### B. Defendant Is Not Entitled to a "Necessity" Hearing

Dougherty bases his hearing request on his contention that the Blake "affidavit, though it states key Title III language in cursory fashion, fails to 'lay a factual predicate' as to why a wiretap

was necessary." (Dougherty 6/2/2020 Letter 1, Doc. No. 131; <u>see</u> Dougherty Reply 1.)

The necessity requirement is satisfied when the Government provides "evidence that 'normal investigative techniques . . . reasonably appear to be unlikely to succeed if tried.'" <u>United States v. Williams</u>, 124 F.3d 411, 418 (3d Cir. 1997) (quoting 18 U.S.C § 2518(3)(c)) (alteration in original). The Government need not "exhaust all other investigative procedures." <u>Id.</u> Rather, it "need only lay a 'factual predicate' sufficient to inform the judge why other methods of investigation are not sufficient.'" <u>United States v. McGlory</u>, 968 F.2d 309, 345 (3d Cir. 1992) (quoting <u>United States v. Armocida</u>, 515 F.2d 29, 38 (3d Cir. 1975)). In assessing the Government's showing "in a practical and commonsense fashion," I may consider that its representations rely "in part upon the experience of specially trained agents." <u>Williams</u>, 124 F.3d at 418 (first quoting <u>McGlory</u>, 968 F.2d at 345, then quoting <u>United States v. Ashley</u>, 876 F.2d 1069, 1072 (1st Cir. 1989)).

I have summarized Blake's factual predicate for seeking a Title III warrant. Dougherty's suggestion that his challenge to these averments entitles him to an evidentiary hearing has no basis in law. The Third Circuit has "never recognized a necessity hearing, separate from a *Franks* hearing" (which I address below) "to assess whether a wiretap affidavit contained factual misstatements or omissions material to a necessity finding." <u>United States v. Heilman</u>, 377 F. App'x 157, 177 (3d. Cir. 2010). The court's necessity determination will generally turn on "whether the government provided a 'full and complete' statement to the issuing judge" and whether that statement supports the conclusion that "a wiretap was necessary." <u>See</u> <u>United States v. Oregon-Cortez</u>, 244 F. Supp. 2d 1167, (D. Colo. 2003). If the wiretap application leaves doubt, the reviewing judge "may require the applicant to furnish additional testimony or documentary evidence in support of the application." 18 U.S.C. § 2518(2).

Dougherty largely ignores this authority, arguing that he is entitled to a hearing on his Motion under Rule 12(b)(3)(C), which requires the Court to hold a "suppression hearing":

> only if the motion is sufficiently specific, non-conjectural, and detailed to enable the court to conclude that (1) the defendant has presented a colorable constitutional claim, ***and*** (2) there are disputed issues of material fact that will affect the outcome of the motion to suppress.

United States v. Hines, 628 F.3d 101, 105 (3d Cir. 2010) (emphasis added).   Rule 12 is inapposite, however, because Dougherty raises not a constitutional claim, but one arising from Title III itself, which requires suppression of wiretap evidence in three circumstances:

> (i)      the communication was unlawfully intercepted;
> (ii)     the order of authorization or approval under which it was intercepted is insufficient on its face; or
> (iii)    the interception was not made in conformity with the order of authorization or approval.

18 U.S.C. § 2510(10)(a).

Dougherty invokes only the second basis for suppression.   This triggers the very argument Dougherty disclaims: that the Blake Affidavit's statement of necessity is insufficient.   (See Dougherty Reply 1 ("Mr. Dougherty is not seeking an evidentiary hearing to challenge the sufficiency of Agent Blake's affidavit.").)   Because such a facial challenge does not create factual questions, an evidentiary hearing would be pointless.   See United States v. Gordon, 871 F.3d 35, 50 (1st Cir. 2017) ("[A] general evidentiary hearing is only warranted if the party seeking suppression makes a sufficient threshold showing that material facts are in doubt or dispute, and that such facts cannot reliably be resolved on a paper record.") (internal quotation marks omitted); see Hines, 628 F.3d at 105 (evidentiary hearing warranted only if "there are disputed issues of material fact").

### C.      Defendant Is Not Entitled to a *Franks* Hearing

"[F]or the sake of argument," Dougherty states that he is entitled to a *Franks* hearing.

(Dougherty Reply 2–3.)  I do not agree.

In *Franks v. Delaware*, the Supreme Court ruled that a criminal defendant has a right to a hearing where he can test the veracity of a probable cause affidavit if: (1) he makes "allegations of deliberate falsehood or of reckless disregard for the truth"; (2) supports those allegations with "an offer of proof"; and (3) shows that the affidavit without the allegedly false statements is insufficient to establish probable cause.  See 438 U.S. 154, 171 (1978).  The *Franks* rule also applies to deliberate or reckless material *omissions*.  See United States v. Yusuf, 461 F.3d 374, 383–84 (3d Cir. 2006).  Although the Third Circuit has yet to resolve the question, "most appellate courts have held that *Franks* hearings are . . . appropriate when a defendant is challenging whether there are false statements or omissions in an affidavit for a wiretap application that speak to the necessity requirement."  Heilman, 377 F. App'x at 177; see id. (collecting cases).

Dougherty alleges that although Agent Blake averred that Dougherty's cell phone carrier, AT&T, does not retain text messages, Blake failed to mention that under 18 U.S.C. § 2703(f), the Government could have asked AT&T to preserve Dougherty's text messages, which agents could have then obtained with a search warrant.  (Dougherty 6/2/20 Letter 2; see Dougherty Reply 3.)  This "omission" is hardly the substantial showing that warrants a *Franks* hearing.   438 U.S. at 155.

First, Dougherty waived the argument by failing to raise it in his Suppression Motion.  Judge Schmehl ordered the Parties to file pretrial motions by February 15, 2019.  (Doc. No. 21.)  Although Dougherty urges in his Suppression Motion a failure to meet Title III's necessity requirement, he nowhere mentions this "omission" as a suppression ground.  To the contrary, Dougherty does not even hint that Blake was dishonest is preparing the wiretap application.  When I asked if I should hold an evidentiary hearing, I obviously did not alter Judge Schmehl's Case

Management Order and invite Dougherty to add new suppression theories a year and a half after pretrial motions were due. Dougherty's request for a *Franks* hearing based on an argument not raised in his Motion is thus waived. See United States v. Trancheff, 633 F.3d 696, 697 (8th Cir. 2011) (per curiam) ("[I]f a party fails to file a pretrial motion by the deadline set by the court, the party waives that issue.").

In the alternative, I decline to hold a *Franks* hearing because Dougherty has not made a remotely sufficient showing. The "omission" he raises is not material. The Blake Affidavit includes references to the Government's monitoring of Dougherty's text messages. (See, e.g., Blake Aff. ¶ 31.) "Reconstruct[ing]" the Affidavit to include the Government's authority to ask AT&T to retrieve and save text messages would not alter my analysis of necessity. Dempsey v. Bucknell Univ., 834 F.3d 457, 470 (3d Cir. 2016) ("Where there are improperly omitted or included facts, we have previously instructed district courts to perform literal, word-by-word reconstructions of challenged affidavits."). Moreover, the necessity standard does not require the Government to chronicle "exhaustively" every investigative technique available to it before seeking a wiretap. See Williams, 124 F.3d at 418. This is especially true as the Affidavit sets out Dougherty's frequent exchange of text messages *and* cell phone calls. (Blake Aff. ¶ 31 (cataloguing cell phone calls and text messages observed on pen registers placed proximate to suspicious transactions).) Blake's "misrepresentation" thus is not material. See United States v. Gordon, 664 F. App'x 242, 246 (3d Cir. 2016).

Even assuming materiality *arguendo*, Dougherty has made no showing that Agent Blake acted knowingly, intentionally, or with reckless disregard for the truth. See Franks, 438 U.S. at 171; Yusuf, 461 F.3d at 384. Once again, Blake's references to Dougherty's text communications with co-conspirators—which the Government monitored through pen register records—suggest

strongly that Blake was unaware that the Government could compel AT&T to retain Dougherty's texts. "Allegations of negligence or innocent mistake are insufficient." Franks, 438 U.S. at 171. "[O]missions are made with reckless disregard if an officer withholds a fact in his ken that '[a]ny reasonable person would have known that this was the kind of thing the judge would wish to know.'" Wilson v. Russo, 212 F.3d 781, 788 (3d Cir. 2000) (quoting United States v. Jacobs, 986 F.2d 1231, 1235 (8th Cir. 1993)). Although Dougherty alleges that Blake is an experienced FBI agent and so should have known of alternative methods for obtaining text messages, this is not the "reasonable person" standard the Third Circuit embraced in *Wilson*. Moreover, because Title III necessity is not an "exhaustive" standard, even an experienced agent need not chronicle *every* possible investigatory technique. See Williams, 124 F.3d at 418. There is thus no evidence from which to conclude Agent Blake's "omission" was deliberate or reckless.

In sum, because Dougherty has made no showing that the Blake Affidavit includes intentional or reckless material misrepresentations or omissions, I will not conduct a *Franks* hearing. 438 U.S. at 155–56 (defendant must make "a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of" necessity to require a hearing); see also Heilman, 377 F. App'x at 177; Yusuf, 461 F.3d at 383 n.8.

## IV.     CONCLUSION

Dougherty has offered no good reason to hold an evidentiary hearing on his Motion challenging the Blake Affidavit.  Indeed, Dougherty's insistence on keeping the Affidavit sealed even if I were to hold a public hearing suggests that he really is not concerned with the Affidavit's sufficiency.  Rather, Dougherty simply seeks the opportunity to cross-examine the Government's Case Agent before trial.  I will not hold a hearing to afford Dougherty the opportunity to take Blake's pretrial deposition.

An appropriate Order follows.

**AND IT IS SO ORDERED.**

*/s/ Paul S. Diamond*
_____

Paul S. Diamond, J.