## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | **CRIMINAL NO. 2:19-0064** |
| **v.** | : | |
| | : | |
| **JOHN DOUGHERTY** | : | |
| | : | |
| | : | |
| | : | |

## DEFENDANT JOHN DOUGHERTY'S MOTION FOR
## A CONTINUANCE OF TRIAL DATE

Defendant John Dougherty ("Defendant") through his undersigned counsel, hereby respectfully moves this Court to continue his trial date currently set for October 4, 2021 should the Court grant the government's Motion to Admit. (Dkt. No. 190.)  In support of this Motion, counsel states the following:

1.    At 4 p.m. on September 30, 2021, with just one business day before jury selection is to begin in this criminal proceeding, the government for the first time identified troves of information that it seeks to admit pursuant to its outstanding Motion to Admit certain 404(b) evidence.

2.    Trial is currently scheduled on the honest services counts to begin on Monday, October 4, 2021.  Counsel is prepared to try those counts, as contemplated in the Court's November 2020 severance order.

3.    Since November 2, 2020, when the Court severed the Indictment and ordered that trial on the honest services counts (Counts 97-116) would proceed to trial first, counsel for Dougherty has dutifully prepared for an honest services trial.

4.      The government's newly proffered evidence relates solely to three

categories of evidence from counts that were severed from the Indictment

ten months prior in November 2020.  (*See* Dkt. Nos. 167 & 168.)

**MJK- Related Evidence**

5.      The government now seeks to admit evidence regarding a "transactional

relationship with the owner of an electrical company," George Peltz.

(Dkt. No. 190 at 1.)

6.      In its letter to the Court, dated September 30, 2021, the government for the

first time states, without naming, that this evidence will consist of

"testimony from four employees of MJK about four projects that benefited

Dougherty, his family, or close associates."  (F. Costello Ltr. dated Sept.

30, 2021).

7.      Additionally, the government states that it will "play twenty recorded

conversations about the work performed," as well as surveillance

photographs allegedly depicting MJK employees "arriving at some of the

sites, performing the work, or delivering products connected to the

projects."  (*Id.*)

8.      To adequately defend Dougherty against these allegations – all of which

relate to the charges contained in severed Counts 88-96 of the Indictment

– his counsel would be required to:

- Investigate each of the four alleged jobs to determine what work, if any, was actually conducted, when the work was performed and why the work was performed, and whether Dougherty or others (if necessary) paid for the work;

- Review documents associated with the jobs;

- Review surveillance footage from the five hard drives (totaling 32 TB of data) obtained from the use of pole cameras throughout the course of the government's investigation;

- Review additional recorded conversations; and

- Determine the alleged value of the work.

**Previous Hiring Decisions**

9.    The government also seeks to introduce evidence related to "Dougherty's control of hiring, paying, and supervising Local 98 employees" during the honest services trial.  (Dkt. No. 190 at 1.)

10.   As an offer of proof, the government identified in its September 30 letter nine additional witnesses whose testimony it seeks to offer during the honest services trial.  Their testimony would be wholly unrelated to the honest services fraud and used solely to establish Dougherty's hiring decisions.

11.   In advance of trial, undersigned counsel would be required to investigate the full work history and performance of each individual identified, including:

- Whether the individual was actually employed by Local 98;

- Their dates of employment;

- The role and duties that they were hired to perform; and

- What duties were actually performed and work product provided.

12.   This would require not only countless interviews, but the review of the relevant HR files for each individual whose employment is placed at issue.

13.   None of the documents required to conduct this investigation are in Dougherty's custody or control.  Rather, these documents would require

that Dougherty issue additional subpoenas, receive response thereto, and review any relevant documents in the 72 hours prior to trial in order to adequately prepare for trial.

14. In short, each individual hiring decision as well analysis of their work history would require an individualized defense for each employee.

15. Given that these allegations related solely to the severed Counts of the Indictment, he will be prejudiced should this evidence be permitted at trial, as it was only on the eve of trial that Dougherty has been given notice of the need to defend against these allegations.

16. And, the preparation necessary to adequately defend Dougherty against these Counts cannot be done in just 72 hours.

**Evidence Relating to Benefits Acquired by Dougherty Paid for by Local 98**

17. Additionally, the government seeks to offer "evidence of benefits in the form of personal goods acquired by [Dougherty] that were paid (sic) by Local 98's General Fund."  (Dkt. No. 190 at 1.)

18. With just one business day to prepare for trial, the government identified "12 sample purchases" that it intends to "prove[] through FBI agent (and record custodians if necessary)" during the October 4 trial.

19. In a seven page document outlining the exhibits that it would use as evidence of these alleged "personal goods" that Dougherty received, the government identifies *at least 60 additional sessions* (both text messages and recorded conversations) that it would use as evidence of these alleged improper transactions.

20.     In addition to the additional sessions, the government also identifies the

following types of evidence that previously had no relevance to the honest

services trial:

- Financial statements and records from credit cards, for example, American Express;

- Pole camera footage;

- Receipts from various retail stores and restaurants;

- Reimbursement records from Local 98;

- Checks from Local 98; and

- A summary chart "showing these purchases were *several among many others in the same time period*," which totaled "approximately $20,000."  (List of Proposed Evidence at 7 (emphasis added)).

21.     Defending Dougherty against these 12 alleged transactions would require

that undersigned counsel engage in essentially a forensic investigation of

his and Local 98's financial records from the relevant time period to

determine whether:

- The expense was incurred;

- There was an legitimate and proper purpose for the expense;

- Dougherty ever reimbursed the union for these transactions; and

- Dougherty was entitled to an offset for any expenses he incurred on his personal cards for the Union;

22.     While Dougherty was aware that he would have to ultimately defend

against these allegations, since November 2020, he reasonably expected

that such preparation could be deferred until *after* the first severed trial.

23.     Moreover, these "12 sample purchases" implicate defendants that are

charged in the severed counts.  Admitting this evidence during the honest

services trial without allowing the opportunity for them to be heard will prejudice their defenses in the second trial.

24.     Dougherty is additionally prejudiced by the fact that the evidence that the government seeks to admit through its Motion to Admit was only identified 72 hours before a jury is set to be impaneled in this case.

25.     And, of the 72 hours that Dougherty has to prepare for the additional evidence and witnesses, 48 hours are over a weekend, when meeting with witnesses and gathering additional evidence to support his defense would be even more difficult.

26.     Therefore, in light of the extensive evidence – consisting of additional recorded conversations, text messages, pole camera footage, financial records – as well as the numerous additional witnesses that the government identified with just one business day before trial – 30 of whom have no 302s – undersigned counsel cannot adequately prepare for trial should the Court grant the government's 404(b) Motion and allow it to present this proffered evidence at the October 4 trial.

27.     Defense counsel has spoken with Defendant Dougherty, and he, too, believes that if this evidence were to be permitted and trial were to continued as scheduled, his counsel will not be able to mount an adequate defense.

28.     For all these reasons, the interests of justice served by granting the requested continuance outweigh the best interests of the Defendant and the public in a speedy trial.  18 U.S.C. § 3161(h)(7).  If the Court were to

permit the government to introduce this new evidence at this late hour, the

failure to grant this continuance would unreasonably deny counsel for

Defendant adequate time in which to effectively prepare for trial, even

taking into account the exercise of due diligence.  18 U.S.C. § 3161(h)(7).

WHEREFORE, Defendant respectfully requests that should the Court grant the

government's 404(b) Motion (Dkt. No. 190) in whole or in part, the Court continue trial in this

matter until a date to be set upon consultation with the parties.  Defendant also agrees that the

exclusion of the time between now and a later trial date from Speedy Trial Act calculations is

appropriate.

Respectfully submitted,

Date:  September 30, 2021

*/s/ Henry E. Hockeimer, Jr.*
Henry E. Hockeimer, Jr. (I.D. No. 86768)
Terence M. Grugan (I.D. No. 307211)
Emilia McKee Vassallo (I.D. No. 318428)
hockeimerh@ballardspahr.com
grugant@ballardspahr.com
mckeevassalloe@ballardspahr.com
BALLARD SPAHR LLP
1735 Market Street, 51st Floor
Philadelphia, PA  19103
(215) 665-8500

*Counsel for Defendant John Dougherty*