IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | CRIMINAL ACTION<br>No. 19-64 |
| JOHN DOUGHERTY and ROBERT HENON, | |

## MEMORANDUM OPINION

**SCHMEHL, J.** /s/ JLS                                                                            November 23, 2021

Before the Court are the defendants' Motion for Judgement of Acquittal of all counts pursuant to Federal Rule of Criminal Procedure 29. The Court grants in part and denies in part the Motions. The Court dismisses one count as to defendant John Dougherty, and finds that the Government has adequately pled and presented evidence of a *quid pro quo* agreement and federal program bribery for the remaining counts against both defendants.[1]

**I. THE GOVERNMENT ADEQUATELY PLED AND PRESENTED EVIDENCE OF THE ALLEGED AGREEMENT AND THE DEFENDANTS' INTENT – THE *QUID* AND *PRO*.**

Defendants make an abundance of similar arguments when they argue that it is not possible for the Government to prove the alleged *quid* and *pro* in this case. Defendants mainly base their arguments on the timeline of the alleged agreement. Defendant Dougherty begins with the premise that there has "**never**" been a case where a public official is prosecuted for "legally receiv[ing] a thing of value then, mid-stream and without any evidence or explanation for this

---

[1] The Court adjudicated the Motions for Judgement of Acquittal while the trial is ongoing, thus, the Court writes predominantly for the parties as to the evidence presented. *See* ECF #236, Court Order, dated 11/2/2021.

metamorphosis, that very same thing of value morphed into an illicit *quid* in a bribery scheme." (ECF #231, at 2.) Mr. Dougherty appears correct as to that point, and the Government never did point to any case where a presumedly legal benefit turned into an illegal bribe based upon the recipient being in public office and corresponding with the payor of the benefit. But just because a case does not exist based on similar facts does not mean that the Government can not prove that a crime was committed.

More specifically, defendants argue that the Government must prove that in 2012, when defendant Robert Henon first became a Philadelphia City Councilmember, he and Dougherty came to the corrupt agreement at that very moment. In other words, the Government must prove that in 2012, the defendants agreed that Councilmember Henon would retain his union salary while in office, and he will do so because he will use his official position corruptly and in favor Dougherty. Defendants state that the Government simply cannot prove this because they lack any evidence of what occurred in 2012, and have no evidence until the wiretaps began in 2015.[2] Defendants further argue that one cannot bribe someone with a "pre-existing lawful employment," "because Mr. Henon already has his employment, it could not have been the subject of a separate implicit agreement three years later, in 2015," "there is no temporal link between his authorization of those payments in 2012 and Henon's actions in 2015 and 2016," amongst others arguments. (ECF #231, at 2; 11/1/21 Trial Transcript, at 7; ECF #231 at 12.)

But these arguments ignore the Supreme Court's and Third Circuit's body of law on honest services fraud and the 'stream of benefits' *quid pro quo* theory. Equally as important, the arguments do not appropriately address the indictment's allegations.

---

[2] Wiretaps are the predominate type of evidence that the Government presented in its case-in-chief.

To prove honest services fraud, the Government must prove a *quid pro quo*, "that is, 'a specific intent to give or receive something of value *in exchange* for an official act.'" *United States v. Wright*, 665 F.3d 560, 567-68 (3d Cir. 2012) (quoting *United States v. Sun-Diamond Growers of Cal.*, 526 U.S. 398, 404-05 (1999) (emphasis in original)). An alleged "stream of benefits" scheme alters the typical *quid pro quo* standard just slightly. A stream of benefits scheme constitutes bribery when:

> "the parties intended for the benefit to be made in exchange for some official action; the government need not prove that each gift was provided with the intent to prompt a specific official act. Rather, the quid pro quo requirement is satisfied so long as the evidence shows a course of conduct of favors and gifts flowing to a public official in exchange for a pattern of official actions favorable to the donor. Thus, payments may be made with the intent to retain the official's services on an as needed basis, so that whenever the opportunity presents itself the official will take specific action on the payor's behalf."

*United States v. Kemp*, 500 F.3d 257, 282 (3d Cir. 2007) (citations omitted).

Supreme Court precedent and Third Circuit precedent does not hold that the Government must prove the very beginning of a stream of benefits theory. To the contrary, the law states that the Government may prove such a stream of benefits theory with "a course of conduct of favors and gifts flowing to a public official." *Id.* Such a course of conduct may prove the parties' corrupt intent through circumstantial evidence. *See Wright*, 665 F.3d at 568 ("First, it must conclude that the payor provided a benefit to a public official intending that he will thereby take favorable action that he would not otherwise take. Second, it must conclude that the official accepted those benefits intending, in exchange for the benefits, to take official acts to benefit the payor."). Justice Sotomayor, while sitting on the Second Circuit, rejected the very argument defendants make here: "benefits received must be directly linked to a particular act at the time of agreement, [defendant] overstates the law." *United States v. Ganim*, 510 F.3d 134, 145 (2d Cir. 2007). Additionally, our sister court in the District of New Jersey in *Menendez* recently held as

we do here—that a stream of benefits theory may be proven by circumstantial evidence showing benefits going to a public official, and the public official then committing "official acts" for the payor of the benefits. *See United States v. Menendez*, 291 F.Supp. 3d 606 (D.N.J. 2018).[3]

The Government does not need to prove that the stream of benefits began in 2012 when Henon joined City Council. The Government seeks to prove that Henon received a stream of benefits from Dougherty, through Local 98, while Henon was a Councilmember, and Henon committed "official acts" at Dougherty's behest given the benefits. That is precisely what the indictment alleges. The indictment alleges that from May 2015 to September 2016, Dougherty, through Local 98, paid Henon a salary and provided him with sporting event tickets for his "official acts," and all of which were allegedly performed with the corrupt intent to deprive the City of Philadelphia of the intangible right of Councilmember Henon's honest services.

---

[3]  With the law set out, noting the defendants' repeated objections to this case since its inception, after seeing the evidence in the Government's case-in-chief, and after reviewing numerous cases involving honest services fraud from the Supreme Court, Third Circuit, and other courts, this Court feels compelled to acknowledge the potential issues with the current state of honest services fraud law. The Supreme Court of the United States addressed the *quid* last in *Skilling v. United States*, 561 U.S. 358 (2010), and the Court addressed the *quo* last in *McDonnell v. United States*, 136 S.Ct. 2355 (2016). In both cases, the Court limited the conduct that the Government may prosecute under honest services fraud or related bribery statutes. The Court recognized that the statutes were used too broadly or vaguely in that they prosecuted conduct that was legal, and the Court ruled against the Government in both cases. *See Skilling*, 561 U.S. at 412 ("As to arbitrary prosecutions, we perceive no significant risk that the honest-services statute, as we interpret it today, will be stretched out of shape."); *McDonnell*, 136 S.Ct. at 2372-73 (recognizing the Government's interpretation as potentially "rais[ing] significant constitutional concerns."); *McCormick v. United States*, 500 U.S. 257, 272-73 (1991); *United States v. Silver*, 948 F.3d 538, 551, FN7, 577-78 (2d Cir. 2020) ("It remains an open question whether vagueness concerns further require that honest services fraud be defined . . . ."); *United States v. Percoco*, 13 F.4th 180, 197 (2d Cir. 2021).

  Although this Court has applied the current law of honest services fraud at this juncture, I recognize there are certain legal issues. What complicates this case is that the City of Philadelphia has determined that Philadelphia City Councilmembers may retain outside employment in addition to their City salary and benefits. Thus, Councilmember Henon's salary and benefits are legal under the Philadelphia City Charter. However, as per the Government's allegations, Councilmember Henon's Local 98 salary and benefits turn into an illegal stream of benefits when Henon communicates with his Local 98 boss, Dougherty, and then acts in relation to that communication with a corrupt intent. Under the Federal Government's prosecution, which I have held was properly brought under the law, every Philadelphia City Councilmember or any public official in the United States, who retains a salary from an outside employer, communicates with that outside employer, and then acts or agrees to act in relation to that communication are then susceptible to a honest services fraud prosecution with only the element of a "corrupt intent" separating them from conviction.

4

The Government presented evidence of Henon's Local 98 salary, and a stipulation that Dougherty has, in essence, complete control of the hiring and firing of Local 98 employees. On at least one occasion, Dougherty told Philadelphia Mayor Kenney that Henon is "on [his] payroll." (Gov. Ex. 1-46839A.) Dougherty told Henon "I got, I made a little adjustment in your [] stuff this month. So you got a little bit more money coming." (Gov. Ex. 1-76496.) Considering this evidence, along with more, and taking all reasonable inferences in favor of the Government on this Rule 29 motion, the Court finds that the Government has provided enough circumstantial evidence so that the jury could find that both the alleged *quid* and *pro* existed.

## II. THE GOVERNMENT HAS PRESENTED EVIDENCE FOR FIVE OF THE SIX ALLEGED OFFICIAL ACTS – THE QUOS.

The Government must also prove that Councilmember Henon committed official acts in accordance with *McDonnell*, or at least, that Henon agreed to commit such acts. *See McDonnell v. United States*, 136 S.Ct. 2355, 2370-73 (2016). The *quo* must be an "official act," which, is

> "a decision or action on a 'question, matter, cause, suit, proceeding or controversy.' The 'question, matter, cause, suit, proceeding or controversy' must involve a formal exercise of governmental power that is similar in nature to a lawsuit before a court, a determination before an agency, or a hearing before a committee. It must also be something specific and focused that is 'pending' or 'may by law be brought' before a public official. To qualify as an 'official act,' the public official must make a decision or take an action on that 'question, matter, cause, suit, proceeding or controversy,' or agree to do so. That decision or action may include using his official position to exert pressure on another official to perform an 'official act,' or to advise another official, knowing or intending that such advice will form the basis for an 'official act' by another official. Setting up a meeting, talking to another official, or organizing an event (or agreeing to do so)—without more—does not fit that definition of 'official act.'"

*Id.* at 2371-72.

The Government alleges Councilmember Henon committed official acts on Dougherty's behest on six topics: (1) an audit of the Philadelphia Parking Authority (PPA); (2) a license and inspection (L&I) issue at Children's Hospital of Pennsylvania (CHOP); (3) the Plumbing Code;

5

(4) the Comcast franchise agreement; (5) the Philadelphia Soda Tax; and (6) the draft towing resolution.

First, the audit of the Philadelphia Parking Authority is the only topic that the Court finds the Government has failed to provide evidence of an "official act" is it relates to defendant Dougherty.[4] The general theory of the PPA topic is that PPA officials called Henon to complain of a proposed Audit of the PPA that was circulating in City Council. The PPA officials were livid that they would be audited (again), and requested that Councilmember Henon vote down the audit. Henon did not immediately vote down the audit, but tabled it so that it would possibly be dealt with at a later City Council hearing. Months later, Henon did not vote in favor of the audit. But before the audit was tabled, Henon called Dougherty to discuss the situation. Henon told Dougherty that he planned on tabling or voting down the audit, and Dougherty essentially just left it up to Henon to decide. (Gov Ex. 4-26182.) Dougherty's communication in this scenario in no way changed, requested, demanded, or caused any official act from Councilmember Henon, therefore, the Court dismisses all PPA-related allegations against Dougherty.

For the remaining five alleged overt acts, while taking all reasonable inferences in favor of the Government, the Government has presented at least some circumstantial evidence where a reasonable juror could find that Councilmember Henon committed official acts at Dougherty's behest. The Court will briefly summarize the evidence for the remaining five acts that could support a jury's finding of official acts. *See Wright*, 665 F.3d at 569 ("Inferring mental state from circumstantial evidence is among the chief tasks of factfinders.").

---

[4] The Court only dismissed count 107 involving the PPA issue as to defendant Dougherty.

As for the L&I topic, the Government presented evidence that John Dougherty personally, and through his constituents, contacted Councilmember Henon about L&I issues at CHOP. Councilmember Henon later contacted the Commissioner of L&I, Carlton Williams, about these L&I complaints. Commissioner Williams then dispatched inspectors to CHOP to investigate the complaints. Taking all reasonable inferences in favor of the Government, a juror could find that Councilmember Henon committed an official act on Dougherty's behalf by pressuring another official, Carlton Williams, to commit an official act of dispatching L&I inspectors to investigate the complaints at CHOP. (Gov Ex. 1-19131.)

As for the Plumbing Code topic, Dougherty and Henon discussed the potential of changing Philadelphia's Plumbing Code and the impact that it could have on Dougherty's interests. Around the time Dougherty and Henon discussed the Plumbing Code, Dougherty was running for the coveted position of being the Business Manager of the Buildings Trades, and the new Plumbing Code could play a part in his election. Dougherty was of the belief that the plumbers union would not be voting in his favor for the Buildings Trades position, therefore, Dougherty wanted to use the new Plumbing Code against the plumbers since he believed the plumbers did not want the new code enacted. Dougherty asked Henon to delay the new code to hang it over the head of the plumbers union, and he specifically told Henon to "do it." Henon said he would do it, and stated this "is an us thing." (Gov. Ex. 4-270A.) Taking all reasonable inferences in favor of the Government, the Court finds that a juror could find that Councilmember Henon committed an official act or agreed to commit an official act at the behest of Dougherty, namely, to delay the new Plumbing Code.

As for the Comcast franchise agreement topic, defendants argue that Councilmember Henon simply hosted a meeting between himself, Dougherty, and Comcast executives, which

7

does not meet *McDonnell's* "official act" standard. On the other hand, the Government argues that Henon did not simply host a meeting, but inserted Dougherty into the negotiations of the overall pending Comcast franchise agreement. Taking all reasonable inferences in favor of the Government, the Court finds that a juror could find that Councilmember Henon did more than just host a meeting between Dougherty and Comcast.

      As for the Soda Tax topic, Dougherty and Councilmember Henon discussed the impact that a Soda Tax could have on another union who had an ongoing dispute with Dougherty and Local 98. While the Soda Tax was an ongoing topic of discussion within City Council before any actions between Dougherty and Henon, the Government alleges that Dougherty had Henon use the Soda Tax as a threat against the union who had an ongoing dispute with him. The Soda Tax was also an early focal point of newly elected Mayor James Kenney and his administration, which Dougherty has long supported. The Government then alleges that Henon voted in favor of the Soda Tax because of Dougherty's position on it. (Gov. Ex. 4044; 4061; 4062; 31-120; 4-67631; 4-23749.) Taking all reasonable inferences in favor of the Government, the Court finds that a juror could find that Councilmember Henon committed an official act or agreed to commit an official based upon Henon's and Dougherty's communications.

      As for the towing topic, the Government presented evidence that Dougherty called Henon after Dougherty had an issue with a towing company and its employee. In summation, Dougherty asked Henon to legislatively retaliate against the towing company. Dougherty specifically stated, "I think tomorrow we [] put in a bill . . . . through council . . . . just tell them you got . . . complaints." Henon replied "Yep. Yeah, I'll get something, I'll get something together." (Gov. Ex. 1-31252.) In short time thereafter, Henon had one of his employees, an intern, draft a resolution concerning the towing company. (Gov. Ex. 31-72.) Although the intern's drafted

resolution advanced no further than being just emailed within the office, the Court finds that this presents a factual question as to whether Councilmember Henon committed an official act at Dougherty's behest.

### III. THE FEDERAL PROGRAM BRIBERY COUNTS AGAINST DEFENDANT HENON ARE FOR THE JURY TO DECIDE.

As for Federal Program Bribery based upon campaign contributions, the standard the Government must prove is higher. The Supreme Court held that campaign contributions turn to bribes when they are "in return for an explicit promise or undertaking by the official to perform or not to perform an official act. In such situations the official asserts that his official conduct will be controlled by the terms of the promise or undertaking." *McCormick v. United States*, 500 U.S. 257, 273 (1991).

The Government alleges two incidents of Federal Program Bribery. First, Councilmember Henon solicited and accepted bribes from a member of the Communication Workers of America in return for acts relating to Philadelphia's dealings with Verizon. Second, Councilmember Henon accepted windows for his Chief of Staff from a PPA official in return for acting on the proposed PPA audit.

The Court finds that the Government has provided enough evidence so that a reasonable juror could find that Councilmember Henon committed official acts for campaign contributions. As for the CWA contribution, the communications requesting and accepting the CWA contributions were in the midst of Councilmember Henon and the CWA discussing the Verizon issue and what Henon could do to help. The same is true for the PPA contribution. Councilmember Henon requested help with getting new windows, and did so while in the midst of discussing the PPA audit with the window provider and how Henon could effect the PPA audit. These are issues for the jury to decide.

IV. **CONCLUSION.**

For all of these reasons, the Court dismissed defendant Dougherty from all PPA related counts, and left the remaining counts for the jury to decide.