IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | : : : | CRIMINAL NO. 2:19-cr-0064 |
| v. | : : |  |
| JOHN DOUGHERTY and ROBERT HENON | : : : |  |

**DEFENDANT JOHN DOUGHERTY'S REPLY IN FURTHER SUPPORT
OF HIS MOTION FOR JUDGMENT OF ACQUITTAL OR,
IN THE ALTERNATIVE, FOR A NEW TRIAL**

Defendant John Dougherty hereby submits this Reply in Further Support of His Motion for Judgment of Acquittal or, in the Alternative, for a New Trial (the "Motion") and, in support thereof, states as follows.

**INTRODUCTION**

The most telling feature of the Government's response is the complete absence of any affirmative legal support for any of the Government's arguments. The Government cannot point to a single case in the entire Federal Reporter that states its legal positions or illustrates their applications. Not one.[1] The Government's central thesis is that it can somehow prove a conspiracy to commit bribery *existed* even if it cannot prove that a conspiracy to commit bribery *was actually formed*. Predictably, the Government does not rely on a single legal authority for

---

[1] The Government promotes *United States v. Urban*, 404 F.3d 754, 775 (3d Cir. 2005) from a footnote in its initial brief to its central legal support here. However, defendants were not charged with conspiracy in that case, but rather with RICO and multiple acts of extortion. And, the portion of the decision relied upon by the Government only discussed that the Government may rely on old evidence in its application for a search warrant. It should go without saying that this decision provides no support whatsoever for the Government's novel positions here.

this specious proposition. Instead, it repeatedly proffers a *res ipsa loquitor* theory that because Robert Henon earned from Local 98 a salary at the same time he took actions beneficial to Local 98 that alone proves that John Dougherty bribed him. To get to this conclusion, the Government necessarily ignores the central tenant of every single federal bribery decision that payments and official action constitute a bribe only with proof that they were intended to be bribes. This is because, as the Second Circuit explained,

> [a]n official who merely accepts a thing of value in an otherwise legal manner (*e.g.* client referrals, as permitted under New York law) has not committed a crime. If that official later acts to the benefit of the payor, she still has not committed a crime. It is only upon a showing that, *at the time the official accepted the payment*, she understood it to be a payment in exchange for official influence on some specific, focused, and concrete matter involving the formal exercise of governmental power that the Government has met its burden.

*United States v. Silver*, 948 F.3d 538, 577 (2d Cir. 2020) (emphasis added).

The Government cannot plausibly argue its case met this standard and so it make no effort to do so, instead attempting to argue its burden away. Indeed, the Government does not even bother substantively addressing the most salient and directly on point cases applicable to this case, and which prove their premise wrong: *United States v. McDonnell*, *United States v. Silver*, *United States v. Bryant*, and *United State v. Urciuoli*.[2] Our analysis of these cases goes completely unrebutted.

---

[2]   Buried in a footnote 36 pages into its brief, the Government pretends to "distinguish" *Bryant* and *Urciuoli* on the grounds that in those cases "the circumstances of the beginning of the financial relationship that was the basis of the bribes was relevant." (Gov't Resp. at 36 n.15). Obviously, the "circumstances of the beginning of the financial relationship that was the basis of the bribes was relevant" for the exact reason the circumstances of the beginning of the financial relationship between Local 98 and Mr. Henon are relevant here: because those "circumstances" are determinative as to whether a *quid pro quo* existed. As it does throughout its brief, the Government inadvertently proves our point.

The Motion put the questions to the Government directly: If the Government doesn't know when the conspiracy was formed, how can it prove the conspirators agreed to commit bribery?  If the Government doesn't know when the *quid pro quo* was formed, how can it prove that the relevant *mens rea* existed at the time the *quid pro quo* was formed?  Indeed, while it exalts the opinion in *United States v. Menendez*, how can the Government harmonize its position with that Court's statement that "the relevant timing in a bribery case is that of the agreement (and not any resulting exchange)"?  291 F. Supp. 3d 606, 620 (D.N.J. 2018).  If the Government doesn't know when the *quid pro quo* agreement was formed, how can it prove that a *quid pro quo*, as opposed to purely parallel conduct, existed?  If the Government doesn't know when the *quid pro quo* was formed, how can it prove that the defendants contemplated "official action" at the time of the alleged *quid pro quo*?  The Government comes up empty.  It does not acknowledge let alone address these dispositive questions because the Supreme Court, various Circuit Courts – including the Third – and various District Courts – including in the Eastern District of Pennsylvania – have already answered them: It can't.

In his Motion, Mr. Dougherty laid out in detail the various ways the law contradicts and directly undermines the Government's position and the convictions in this case.  The Government responded with strawmen, false equivalencies, circular reasoning and slippery slopes.  As set forth in the Motion and herein, this conviction cannot be sustained where it is so plainly contrary to the law.

## ARGUMENT

The entirety of the federal honest services fraud jurisprudence makes definitively clear that by charging a conspiracy to commit honest services fraud through bribery from May 2015 through September 2016, the Government was required to prove that the Defendants entered into

an agreement during the time-frame of the charged conspiracy to commit the substantive offense of honest services fraud. The Government must prove the relevant intent existed at the time the conspiracy was formed. That is the charge handed down by the Grand Jury:

> In or about May 2015, to in or about September 2016, in the Eastern District of Pennsylvania and elsewhere, defendants John Dougherty and Robert Henon **conspired and agreed** . . . to commit offenses against the United States, that is, to **[k]knowingly devise** and engage in a scheme with the intent to defraud the City of Philadelphia and its citizens of the right of defendant Robert Henon's honest services in the affairs of the City of Philadelphia. . . .

Indictment, pg. 109-110 (emphasis added).

And, that is how the Court instructed the jury.

> Although Count One of the indictment charges that the conspiracy existed from at least May 2015 to on or about September 2016, it is not essential that the government prove that the conspiracy started or ended on or about those specific dates. **It is sufficient if you find that the charged conspiracy was formed and existed for some time within the period set forth in the indictment**.³

(Tr. Trans. 39:20-25 (Nov. 20, 2021)).

The Government's burden arises from foundational principles of federal criminal law. It is blackletter law that the *actus reus* of the crime of conspiracy is the agreement itself, and the *actus reus* of the crime of bribery is the agreement to enter a *quid pro quo*. For an action to constitute a crime, the *actus reus* of the offense must be committed with a *mens rea* (requisite intent). Thus, to prove an honest services fraud conspiracy, the Government must prove that the conspirators formed the conspiratorial agreement possessing ***at the time the conspiratorial***

---

³ The Government's attempts to reinterpret the plain English in the Court's jury instruction arguing, without pointing to anything to support its interpretation, that "for some time within the period set forth in the indictment" modifies only "existed" and not "formed." The Government doesn't explain how that interpretation is consistent with the Indictment itself, which alleges the Defendants "conspired and agreed" during the conspiratorial timeframe. It is plainly the more logical and accurate reading of the jury instruction that it was consistent with the Indictment. If the Government's interpretation was correct, then the jury instruction improperly expanded the charge from what the Grand Jury handed down.

*agreement was formed* the specific intent to commit honest services fraud, which, in turn, must arise from an agreement specifically intending to enter into a *quid pro quo* **at the time the quid pro quo** *was formed*.  In other words, what the Government repeatedly fails to grasp (and what distinguishes the offenses charged here from those described in the Government's slippery slope argument), is that a conspiracy to commit honest services fraud through bribery is an agreement (the conspiracy) to reach an agreement (the *quid pro quo*).[4]  Just as the *mens rea* requirement generally distinguishes lawful from unlawful conduct, the specific intent required to prove the charges here distinguishes permissible honest services fraud prosecutions based on bribery from honest services fraud prosecutions impermissibly predicated upon undisclosed conflicts of interest.[5]

The Government's factual theory was equally straightforward: John Dougherty gave Robert Henon employment at Local 98 as a bribe.  Because action must be accompanied by intent to constitute a crime, the Government was obligated to prove that Mr. Dougherty gave Mr. Henon his Local 98 employment intending it to influence his official action.  This is why the timing of Mr. Henon's employment is dispositive.  It is undisputed that Mr. Henon received his job at Local 98 in December 2011.  It is also undisputed that nothing changed with respect to his

---

[4]   "Co-workers pilfering the accounts of their employers," "drug traffickers peddling narcotics," "sworn members of the most sophisticated and pernicious organized crime enterprises" (Gov't Resp. at 10) are not conspiring, *i.e.*, agreeing, to enter an agreement that is illegal only if formed with specific intent.  They are in the Government's hypotheticals conspiring to take other specific actions – steal, deal drugs, commit other acts of racketeering – that are illegal in themselves.  Obviously, the Government has to prove when those specific actions (the substantive offense underlying a criminal conspiracy) occurred and that they occurred during the course of the hypothetical charged conspiracy.  Just as obviously, the Government in none of those examples could or would argue one could simply infer that money was embezzled, drugs were dealt, racketeering was performed without offering proof of those crimes occurring.  The Government's argument here is no less ludicrous than it would be in those cases.

[5]   Another question the Government cannot address: what factually distinguishes this case from one presenting only a conflict of interest?

employment up through the conspiratorial timeframe and, indeed to the present.  The Government even concedes that there is no suggestion let alone evidence that a conversation in sum or substance of "you will keep this job if you start performing official acts in return," (Response. at 17), occurred at any time.  Therefore, the only affirmative actions taken by Mr. Dougherty concerning Mr. Henon's employment occurred in December 2011.  And because (as the Government will be quick to point out when convenient and quick to ignore when not) intent is inferred from conduct, the only conduct of Mr. Dougherty from which a jury could plausibly infer intent is the initial decision to continue employing Mr. Henon.  Thus, because the Government admits it has no evidence of the Defendants' intent at the time of that decision, it has no evidence of the Defendants' intent during the timeframe charged.  To repeat: the Government presented no evidence whatsoever from which the jury could infer Mr. Dougherty's intent with respect to Mr. Henon's employment during the timeframe of the charged conspiracy.  Critically, we are not arguing and have never argued that the Government must prove the conspiracy existed in 2011.  We are arguing that because Mr. Henon's employment agreement was formed in 2011, the Government cannot prove the charge set forth in the Indictment: That Mr. Dougherty bribed Mr. Henon with a job at Local 98 during the timeframe of the charged conspiracy.

The Government oddly argues that "Dougherty attempts to establish a classic Catch-22." (Response. at 11).  We made no such "attempt."  Instead, we directly stated that the Government's myopic determination to bring charges against Mr. Dougherty no matter what created for itself the Catch-22:

> [w]hen deciding to bring this case, the Government faced a dilemma: charge the conspiracy as of the date when Mr. Henon received his employment in 2012 or charge the conspiracy as of when the Government went up on the wire in 2015.  If the Government elected the former, it would have no evidence that Mr. Henon

took official action in exchange for his job from 2012 through the time it went up of the wiretap. But, by choosing the latter, the Government has no evidence that Mr. Henon's employment was given to him with the requisite intent. This lose-lose scenario is the product of the Government's decision to bring charges against Mr. Dougherty no matter what the law says. That their theory is legally untenable is the Government's problem; not the Court's and not the Defendants'.

True to form, the Government addresses this conundrum not with law and facts or even consistent logic but with theatrics: "[i]n other words, he posits, if there is no available proof regarding the defendants' acts at the beginning of their scheme, the defendants may continue their corrupt arrangement unhindered for the rest of time." (Gov't Resp. at 11 n.4.) This is a telling insight into the Government's conviction that it can regulate local officials through the fiat of prosecutors, though. However, unfortunately for the Government, under the law, an arrangement is "corrupt" only if it was formed "at the beginning of their scheme" with corrupt intent. It is startling that the Government cannot seem to understand it cannot simply assume conduct is criminal because it doesn't like it; that, instead, the law demands proof of intent. But, it does. And, here, the Government cannot prove that an "arrangement" is "corrupt" if it doesn't prove it was formed with corrupt intent "at the beginning of the[] scheme."[6]

The Government's response is littered with such flawed reasoning.

---

[6] It bears emphasis that the entirety of the Government's case is predicated on an assumption that the relationship was "corrupt" and, once you already assume a relationship is corrupt, the other elements fall into place. Over and over again, the Government laments that "corrupt" relationships will go unchecked if the Government is required to offer proof of the circumstances surrounding their inception. It ignores, of course, that a relationship is "corrupt" only if the Government has the very proof it disclaims – that intent existed at its inception. Otherwise, it's just a relationship the Government doesn't like. Fortunately, the law, as the Supreme Court has made clear, doesn't bake such assumptions into its analysis but it does empower the Court to restrain the Government when it over-reaches as it has here.

### A.     The Government Proved Neither a Conspiracy Nor a *Quid Pro Quo*.

The Government leads with a facially absurd argument unsupported by a single legal citation: it can prove a conspiracy and a *quid pro quo* existed even if it can't prove that a conspiracy and *a quid pro quo* were formed. The Government's position is absurd not only because it lacks any legal support; it is absurd because it disclaims proving any crime occurred at all. "Conspiracy is an inchoate offense, the essence of which is an agreement to commit an unlawful act." *Iannelli v. United States*, 420 U.S. 770, 777 (1975); *see also United States v. Shabani*, 513 U.S. 10, 16 (1994) ("The prohibition against criminal conspiracy, however, does not punish mere thought; the criminal agreement itself is the *actus reus* and has been so viewed since *Regina v. Bass*, 11 Mod. 55, 88 Eng. Rep. 881, 882 (K. B. 1705)"). Unsurprisingly, the Third Circuit is in accord with over three centuries of common law. *See United States v. Salahuddin*, 765 F.3d 329, 342 (3d Cir. 2014) ("It is the illegal agreement that is criminalized in Hobbs Act conspiracy"). Likewise, the criminal conduct at the heart of a bribery scheme is the *quid pro quo* agreement. *Evans v. United States*, 504 U.S. 255, 268 (1992) ("[T]he offense is completed at the time when the public official receives a payment in return for his agreement to perform specific official acts; fulfillment of the *quid pro quo* is not an element of the offense."); *Menendez*, 291 F. Supp. 3d at 620 ("the relevant timing in a bribery case is that of the agreement (and not any resulting exchange)") (citing *United States v. Young*, 651 F. App'x 202, 204 (4th Cir. 2016) ("[T]he timing of the payment in relation to the official act for which it is made is (in theory) irrelevant." (quoting *United States v. Jennings*, 160 F.3d 1006, 1014 (4th Cir. 1998)); *see also United States v. Fernandez*, 722 F.3d 1, 19 (1st Cir. 2013) (emphasizing that the timing of the agreement is the pertinent inquiry, not the timing of the payment); *Silver*, 948 F.3d at 577 ("It is only upon a showing that, at the time the official accepted the payment, she understood it to be a payment in exchange for official influence on some specific, focused, and concrete matter

involving the formal exercise of governmental power that the Government has met its burden."). Relatedly, the Government must prove that the relevant *mens rea* – intent to influence and be influenced – existed at the time the *quid pro quo* was formed. *United States v. Ciavarella*, 716 F.3d 705, 729 (3d Cir. 2013) ("The bribery-and-kickback theory of honest services fraud requires a *quid pro quo*, that is, a specific intent to give or receive something of value in exchange for an official act.") (internal quotations marks omitted)).

Local 98's payments to Robert Henon would be illegal only if they were made pursuant to a *quid pro quo* agreement. Robert Henon's official actions would be illegal only if they were taken pursuant to a *quid pro quo* agreement. Robert Henon taking official action beneficial to Local 98 while earning a salary from Local 98 would be illegal only if occurring pursuant to a *quid pro quo* agreement. In the face of the overwhelming body of law undermining its case, the Government weakly offers a feint:

> "**The Indictment thus explicitly charges** that Henon took official actions in exchange for the IBEW 98 salary, as well as sports tickets. **The salary, the government proved**, was paid on a weekly basis during the period of the scheme, totaling over $70,000 in each year. There is no reason in law or logic that the government was required to prove anything more than these allegations, including whether the defendants acted corruptly in earlier years." (Gov't Resp. at 9.)

In other words, the Government argues that it "charged" a *quid pro quo*, but proved only that payments were made and that somehow (without explanation) this is enough. It's not, which is precisely our point. While the Government took nearly seven weeks to "prove" what was in both Local 98 and Robert Henon's public disclosures – that Local 98 paid him an annual salary – it merely charged ***but failed to prove*** "that Henon took official actions ***in exchange*** for the IBEW 98 salary." That proof, as we have repeated, requires proof of a *quid pro quo* agreement, the *actus reus* of the crime of bribery that the Government wanly contends has no basis "in law or logic."

From there, the Government lengthens its sidestep through a number of fallacies. First, the Government attacks with incredulity a strawman. In the Motion, we predicted the Government would misstate our argument to avoid addressing it:

> Mr. Dougherty's principle argument is that because Mr. Henon possessed his employment since 2012, his employment cannot be the foundation for a corrupt agreement in 2015. This is not a "gotcha" argument that the Government is required to prove an exact date when the corrupt agreement was formed and because it cannot do so it cannot prove a *quid pro quo*. (Motion at 12).

The Government did not disappoint, spending seven pages arguing: "[t]he government is never required to prove the exact beginning date of a criminal conspiracy," (Gov't Resp. at 9); "crimes that span a period of time would be immune from prosecution simply because the government did not know about, or have the evidence to prove, the precise moment that the first part of the crime began," (*id.* at 10); "that the government cannot prosecute a criminal conspiracy unless it can identify and prove the moment at which that conspiracy began," (*id*).

Continuing to avoid citation to legal authority, the Government next pivots to a slippery slope based on false equivalencies. It contends:

> Taken to its logical extent, this notion would also apply to any crime involving an ongoing scheme or continuing course of conduct. This would mean that any conspirators, ranging from co-workers pilfering the accounts of their employers, to drug traffickers peddling narcotics, to sworn members of the most sophisticated and pernicious organized crime enterprises, as off the hook so long as the government, even as it has gathered evidence of current criminality, cannot prove when the conspiracy began and for how long it continued. (Gov't Resp. at 10.)

Like all such arguments, the Government's premise is easily disproved if it would bother to follow the law. In each of these instances, the hypothetical conspirators conspired to perform actions that are unlawful in themselves: embezzling funds, dealing drugs, committing racketeering. Therefore, the law permits the inference of an agreement where two or more people together perform criminal acts – stealing, dealing drugs, etc. Obviously, two people coordinating efforts to steal money have agreed to steal money. And, as a conspiracy

contemplates performing illegal actions in the future, the Government can plainly charge individuals with conspiring to, for instance, deal 1kg of cocaine if they prove that those individuals together later dealt 1 kg of cocaine.  For purposes of proving that crime, what came before is irrelevant (though the Government would readily cite any conceivable evidence of earlier wrongdoing as relevant conduct at sentencing).

Bribery, as the federal courts have recognized at every level, is fundamentally different because it criminalizes otherwise legal actions that were taken pursuant to an earlier corrupt agreement – the *quid pro quo*.  Unlike stealing from a company and unlike dealing drugs, a labor union agreeing to pay a salary is not a crime nor is it a crime for a public official to take official action that benefits his private employer.  What is criminal is doing one for the other – the *quid pro quo* – and proving the *quid pro quo* requires the Government prove the agreement was formed with specific intent.

From there, the Government merely demonstrates its disconnect from legal reality:

> [t]he gravamen of the crime is not the initial "consummation" of their corrupt relationship.  The gravamen of the crime is that Dougherty repeatedly paid Henon, and during the period he was being paid, Henon repeatedly agreed to take official acts on Dougherty's behalf.  (Gov't Resp. at 12.)

Of course this isn't the law and it is surprising the Government would make such a baldly inaccurate statement considering its repeated reliance on *Menendez*.  As we have noted multiple times (and the Government has ignored each time), Judge Walls stated explicitly (and accurately) "the relevant timing in a bribery case is that of the agreement (and not any resulting exchange)." *Menendez*, 291 F. Supp. 3d at 620.  Robert Henon's salary was lawful.  Robert Henon's official action was lawful.  Robert Henon can accept a salary from Local 98 while still taking official actions to benefit it.  What makes those actions unlawful is if Mr. Henon was given his job

specifically intending it to be a bribe and he understood it to be so, which the Government must prove occurred.

Nor are these the facts. John Dougherty did not pay Robert Henon in 2015 and 2016; Local 98 did. To attribute those payments to John Dougherty, the Government (despite its insistence that the initial 2011 employment agreement is irrelevant) necessarily reaches back to 2011, arguing that because John Dougherty authorized Mr. Henon's employment in 2011 he is personally responsible for those payments in 2015 and 2016.[7] But, this merely highlights the failure of the Government's case because action must be accompanied by specific intent to constitute a crime. Thus, because the only personal action Mr. Dougherty took was authorizing Mr. Henon's employment in 2011 and because the Government by its own admission (1) has no proof that Mr. Dougherty took that action with specific intent; and (2) has no proof that Mr. Dougherty took any actions with respect to Mr. Henon's employment in 2015 and 2016, the Government cannot prove he possessed specific intent for those payments to constitute bribes in 2015 and 2016.

The Government seems to recognize this critical flaw in its reasoning because it trots out another brand new theory of criminal prosecution: that Mr. Dougherty's intent in 2015 and 2016 can somehow be inferred from the fact that he didn't fire Mr. Henon. Obviously, the law does not permit an adverse inference of specific criminal intent from an individual not taking an action. In any event, in its next breath, the Government torpedoes its own case illustrating exactly our point: "If the employer says to the public official, 'you will keep this job if you start performing official acts in return,' and the official agrees, then of course a job that might earlier

---

[7] The Government wants it both ways. It needs to reply on 2011 conduct to make its case but needs to disclaim the relevance of that same conduct to evade Mr. Dougherty's arguments.

have been legitimate then becomes a bribe. The evidence here does not suggest any such development in Dougherty and Henon's relationship." (Gov't Resp. at 17.) That is precisely what we have argued from the time the Indictment was handed-down by the Grand Jury. There is no evidence of any change in Mr. Henon's employment from the time he first received it. Therefore, there are no facts from which a jury could infer the Defendants' intent with respect to those payments in 2015 and 2016. Unable to grasp this, the Government incredibly continues to assume criminality in the absence of proof of it, but again inadvertently disproves its case:

> [g]iven that there is scant evidence that Henon, after 2011, ever did anything for Local 98 other than take official acts to benefit it, the rational conclusion is that the illegal agreement existed from the beginning, even if the government could not gather evidence of the official acts until later. But even if that is not so, there is no impediment whatsoever to the government showing that, by 2015, there was an ongoing conspiratorial agreement to exchange the job and its benefit for official acts. (Gov't Resp. at 18.)

According to the Government, because it lacks evidence from 2011 to 2015, the jury must simply assume criminal conduct occurred and, once it has made that assumption, it can assume criminal conduct occurred in 2015 and 2016. Obviously not. *United States v. Ordaz*, 119 F. App'x 407, 411 (3d Cir. 2005) (Evidence that permits only a jury to conclude that the defendant violated the law based upon mere speculation is not sufficient to meet the government's burden).

Finally, the Government tries to salvage part of its case by arguing that our challenge "applies only to the conspiracy charge in this case, not the eight substantive fraud counts of conviction." (*Id.*) It continues: "the government alleged and proved that a quid pro quo existed at the time of each charged offense, with Dougherty providing payments and Henon agreeing to take action at precisely the times charged in the individual counts." (*Id.*) The Government is wrong again. Because the Government has failed to prove that Mr. Henon's job was given to him as a bribe, it has failed to prove that his paychecks were given to him as a bribe. Proving

this point, as noted repeatedly, Mr. Dougherty did not give Mr. Henon his paychecks; Local 98 did. And the only way those paychecks could be ascribed to Mr. Dougherty is through the initial employment decision in 2011 which, as the Government admits, is the only affirmative action taken with respect to Mr. Henon's employment. Thus, because the Government has failed to prove Mr. Henon was given his employment with specific criminal intent, it has failed to prove he was given his individual paychecks with specific criminal intent. That is, without some evidence of some intentional changed circumstances that can lead to an inference of intent, the Government cannot and did not prove that Mr. Henon's paychecks, received since 2011, somehow morphed into bribe payments.

### B. The Government Continues to Misstate Our Stream of Benefits Argument

The Second Circuit's analysis of *McDonnell* in *Silver* thoroughly eviscerated the Government's theory of prosecution here. For that reason, the Government has continuously avoided addressing our *McDonnell* argument, repeating its tired misstatements that "Dougherty would like this Court to reject the Third Circuit's direction that honest services bribery may be premised on a 'stream of benefits'" and "Dougherty contends that the government was required to prove that each official act charged was contemplated and agreed at the time the quid pro quo agreement was first made. (*Id*. at 20.) The Government wastes the Court's time with its evasions.

> As stated in the motion:
>
> At no point have we argued that any specific official act must be linked to any specific payment. Nor did we argue that the specific actions the public official would ultimately take must be identified in advance at the time of the formation of the *quid pro quo*. **We did not make those arguments previously. We do not make those arguments here.**
>
> Instead, we argue that the Second Circuit in *Silver* (which analyzed *McDonnell's* effect on the Second Circuit's stream of benefits jurisprudence under *Ganim*) accurately applied *McDonnell* in determining that at the time the *quid pro quo*

was formed, the parties to the *quid pro quo* must have both contemplated the "specific and focused" questions, matter, suits, causes or controversies the public official would later act upon. We further argue that accurately applying *McDonnell* as explained by the Second Circuit here means the Government did not and could not prove that the Defendants contemplated "official action" at the time the *quid pro quo* was consummated. (Motion at 23).

We continued:

> Thus because, as the Supreme Court emphasized, the relevant time-period in a bribery prosecution is the moment the *quid pro quo* was formed, the Defendants must have contemplated "properly defined" "official action" at that moment, which involves some action on "specific and focused" questions or matters. *Id*. at 2374. This does not mean that the specific actions the public official would ultimately take on those questions or matters must have been considered in advance. *Silver*, 948 F.3d at 553 ("Even though the particular act of influence need not be identified at the time of the official's promise, the particular question or matter to be influenced must be."). Nor does this mean that any specific payment must be linked to a specific action. *Id*. at 552 ("Silver is therefore incorrect in arguing that honest services fraud requires evidence of a meeting of the minds.").[8] However, *McDonnell* **does** require that the particular question or matter upon which the public official would later act must be identified at the time of the *quid pro quo*. *Id*. at 553. (Motion at 24-25).

Finally, we explained: "*Menendez* adjudicated both of these issues. *Menendez* did not adjudicate whether the defendants are required to contemplate 'specific and focused' questions or matters at the time of the *quid pro quo*." (Motion at 25 n.12).

It is disappointing that the Government cannot muster a response to this argument in its response but it is not surprising because to do so results in either admitting it has failed to prove its case or arguing that the Third Circuit will split from the Second Circuit on this vital issue. The Court must require the Government to take a position. Is the following the law or not:

> An official who merely accepts a thing of value in an otherwise legal manner (*e.g.* client referrals, as permitted under New York law) has not committed a crime. If that official later acts to the benefit of the payor, she still has not committed a crime. It is only upon a showing that, at the time the official accepted the

---

[8] *Menendez* adjudicated both of these issues. *Menendez* did not adjudicate whether the defendants are required to contemplate "specific and focused" questions or matters at the time of the *quid pro quo*.

payment, she understood it to be a payment in exchange for official influence on some specific, focused, and concrete matter involving the formal exercise of governmental power that the Government has met its burden. *Silver,* 948 F.3d at 557.

The Government cannot continue to avoid addressing this argument with red herrings and strawmen.

### C. The Government's Case Is Nothing More than a Conflict of Interest

The Government circularly argues that it did not impermissibly bring a conflict of interest case because the conflict of interest it repeatedly argued to the jury was merely evidence of corrupt intent. That is, once again with no legal support, the Government claims that if it proves a conflict of interest existed, that proof is sufficient to prove a *quid pro quo*. Never mind that the law in the Third Circuit is clear that:

> The only difference between a public official who accepts a bribe and a public official who receives payments while taking discretionary action that benefits the payor, as Loeper did in this case, is the existence of a *quid pro quo* whereby the public official and the payor agree that the discretionary action taken by the public official is in exchange for the payment.

*United States v. Panarella*, 277 F.3d 678, 698 (3d Cir. 2002).

Thus, according to the Third Circuit, bribery requires proof of a *quid pro quo* in addition to the conflict of interest. Lacking proof of a *quid pro quo*, the government simply argues that a conflict of interest proves a *quid pro quo*. This is nothing more than classic bootstrapping, not legal reasoning supported by legal authority. But, once again, it is revealing as the Government admits it has proven only a conflict of interest and failed to prove the existence of a *quid pro quo*. That admission is dispositive.

### D. The Government Failed to Prove Mr. Henon Took Official Action in Exchange for his Local 98 Salary

We continue to assert our arguments that Mr. Henon did not perform "official action" on Mr. Dougherty's behalf. For its part, the Government repeats its insufficient arguments made on

Mr. Dougherty's initial Rule 29 motion. In addition to our previous arguments, we argued that the L&I charges cannot be sustained as a matter of law for the reason asserted by the First Circuit: "[u]nlike most conduct typically the subject of case law, urging local officials to obey state law is not easily described as a deprivation of honest services, actually or potentially harmful to the citizens." *United States v. Urciuoli*, 513 F.3d 290, 295 (1st Cir. 2008). Like in *Urciuoli*, Local 98 urging Mr. Henon to enforce the state building code cannot, as a matter of law, constitute a deprivation of honest services. Mr. Henon was obligated to respond to such complaints and obligated to enforce the law. He did nothing more than his position demanded. Like most of Mr. Dougherty's arguments, the Government does not respond to this one either.

## CONCLUSION

For the reasons set forth above and in the Motion, the Court must vacate Mr. Dougherty's conviction pursuant to Fed. R. Crim. P. 29 or, alternatively, grant a new trial pursuant to Fed. R. Crim. P. 33.

Date: January 18, 2022

                              Respectfully submitted,

                              /s/ *Terence M. Grugan*
                              Henry E. Hockeimer, Jr. (I.D. No. 86768)
                              hockeimerh@ballardspahr.com
                              Terence M. Grugan (I.D. No. 307211)
                              grugant@ballardspahr.com
                              Emilia McKee Vassallo (I.D. No. 318428)
                              mckeevassalloe@ballardspahr.com
                              Ballard Spahr LLP
                              1735 Market Street, 51st Floor
                              Philadelphia, PA 19103
                              (215) 665-8500