# Ballard Spahr
LLP

– – – – – – – – – – – – – – – – – – –
1735 Market Street, 51st Floor
Philadelphia, PA 19103-7599
TEL 215.665.8500
FAX 215.864.8999
www.ballardspahr.com

Henry E. Hockeimer, Jr.
Tel: 215.864.8204
Fax: 215.864.8999
hockeimerh@ballardspahr.com

May 6, 2022

*Via ECF*

Honorable Jeffrey L. Schmehl
United States District Judge for the Eastern District of
Pennsylvania
James A. Byrne U.S. Courthouse
601 Market Street, Rm 5613
Philadelphia, PA 19106

Re:     *United States v. John Dougherty, et al., Case Nos. 2:21-cr-00064-JLS & 2:21-cr-00065-JLS*

Dear Judge Schmehl:

The Department of Justice Manual, which guides the conduct of federal prosecutors, speaks directly to discovery obligations, recognizing the need to not only fulfill statutory and constitutional discovery obligations, but also to view such obligations broadly:

> Providing broad and early discovery often promotes the truth-seeking mission of the Department and fosters a speedy resolution of many cases.  It also provides a margin of error in case the prosecutor's good faith determination of the scope of appropriate discovery is in error.  ***Prosecutors are encouraged to provide broad and early discovery consistent with any countervailing considerations.***

Justice Manual § 9-5.002 (emphasis added).  This is of course the case, as in criminal proceedings the ultimate issue is an individual's liberty.[1]

---

[1]     The Justice Manual further notes that "this policy encourages prosecutors to err on the side of disclosure in close questions of materiality and identifies standards that favor greater disclosure in advance of trial through the production of exculpatory information that is inconsistent with any element of any charged crime and impeachment information that casts a substantial doubt upon either the accuracy of any evidence the government intends to rely on to prove an element of any charged crime or that might

Honorable Jeffrey L. Schmehl
May 6, 2022
Page 2

The Government has numerous obligations to disclose evidence in advance of trial, all of which weigh in favor of disclosing the materials that the Confidential Informant ("CI") created during the course of the investigation of Mr. Dougherty.  These obligations stem from: (1) Rule 16 of the Federal Rules of Criminal Procedure; (2) *Brady v. Maryland*, 373 U.S. 83 (1963); (3) *Giglio v. United States*, 405 U.S. 150 (1972); and (4) the Jencks Act, 18 U.S.C. § 3500.  By withholding both the recordings that the CI created of Mr. Dougherty, as well as records of the interactions between the CI and the Government – at least one of which we learned only this week occurred ***while Mr. Dougherty was on trial*** – the Government has failed to meet these obligations.[2]

*First*, Rule 16 provides that "[u]pon a defendant's request, the government must disclose to the defendant . . . (i) any relevant written or recorded statement by the defendant if: [the] statement is within the government's possession, custody, or control; and the attorney for the government knows—or through due diligence could know—that the statement exists."  Fed. R. Crim. P. 16(a)(1)(B)(i).  And, it has long been recognized that "a defendant's access to his own statements in the possession of the government has generally been granted upon a minimal showing of relevance."  *United States v. Yunis*, 867 F.2d 617, 622 (D.C. Cir. 1989).

Relevance, as used in Rule 16, "is to be interpreted broadly."  *United States v. Parks*, No. 1:08-CR-58, 2009 U.S. Dist. LEXIS 48308, at *11 (E.D. Tenn. June 9, 2009).  The scope of "Federal Rule of Criminal Procedure 16 is broader in scope than *Brady*."  *United States v. Hammer*, No. 96-239, 2012 U.S. Dist. LEXIS 189464, at *13 (M.D. Pa. Nov. 2, 2012); *see also United States v. Noriega*, 764 F. Supp. 1480, 1494 (S.D. Fla. 1991) (quoting *United States v. Haldeman*, 559 F.2d 31, 74 n. 80 (D.C. Cir. 1976) (stating that Rule 16's "relevancy requirement is a relatively low hurdle to clear where a defendant seeks production of his own statements, with disclosure 'practically a matter of right even without a showing of materiality.'")).

Any time that Mr. Dougherty is discussing union business or positions like a steward, those statements are relevant to Mr. Dougherty's defense.  And certainly those statements, more broadly, as they discuss Union business, are relevant to the corruption and embezzlement cases.[3]  Moreover, if the majority of the CI's recordings are of Mr. Dougherty speaking to

---

have a significant bearing on the admissibility of prosecution evidence." *Id.* § 9-5.001(F).

[2]    The fact that these recordings were made not only post-indictment, but during trial, raises serious Sixth Amendment and Due Process concerns.

[3]    Mr. Dougherty is appreciative of the Court's efforts to review all thirty-five hours of recordings, as well as the "book" of CI reports, especially given that the CI's existence

Honorable Jeffrey L. Schmehl
May 6, 2022
Page 3

business agents about Union business, there is no prejudice to the Government in producing the recordings to defense counsel, especially because the Government has already produced one such recording in discovery.  The Government should not be permitted to cherry pick one sole recording from August 24, 2020 to produce from the approximately thirty-five hours of recordings, which could not only place the August 24th recording in context, but also provide Mr. Dougherty with evidence to contradict the Government's intended use of this one recording.[4]

*Second*, the Government has an obligation to disclose all evidence that is favorable to the accused and material either to guilt or punishment.  *Brady v. Maryland*, 373 U.S. 83, 87 (1963); *see also United States v. Suastegui*, 529 F. App'x 129, 131–32 (3d Cir. 2013).  "Evidence is 'material' if there is a reasonable probability that, 'had the evidence been disclosed to the defense, the result of the proceeding would have been different.'"  *United States v. Maury*, 695 F.3d 227, 249 (3d Cir. 2012)  (internal citations omitted); *see also United States v. Kubini*, No. 11-14, 2017 U.S. Dist. LEXIS 91293, at *67–79 (W.D. Pa. June 14, 2017) (finding government violated *Brady* when it withheld evidence that related to witness credibility and the reliability of the government's investigation); *United States v. Nejad*, 487 F. Supp. 3d 206, 213, 215–16  (S.D.N.Y. 2020) (finding government failed to produce material under *Brady* and Rule 16, and noting government failed to identify and timely produce exculpatory evidence because it thought the evidence was "wholly inculpatory").  The August 24, 2020 recording – which contains clear exculpatory language

---

was only revealed to the Court and defense counsel on the eve of trial.  We note that determining relevance is a difficult task without the extensive background that we, as counsel for Mr. Dougherty, have developed since the filing of the original Indictment.  There are likely references to relevant information or events that will not be apparent upon first blush to the Court and its staff, but only relevant to individuals with knowledge of the inner workings of the Union and who have familiarity with the discovery already produced.  We now know these recordings exist.  Keeping them from the defense could effectively block trial strategies and defenses that may be available to Mr. Dougherty.  Indeed, these recordings are necessary to ensure that we can adequately conduct our own investigation of the facts underlying the allegations contained in the Indictments.

[4]    We further note that the Government has generally taken a broad view with regard to discovery – ***producing over 40 terabytes of information***.  The Government produced every intercepted call containing statements by Mr. Dougherty.  Just as none of those were withheld from production, none of these recorded statements of Mr. Dougherty should be withheld.

Honorable Jeffrey L. Schmehl
May 6, 2022
Page 4

– was subject to *Brady*.[5]  Thus, any recordings or interview notes, for example, that indicate that Mr. Dougherty was engaged in actions to protect union members – other stewards, or others, would also be subject to *Brady.*

*Third*, the Government must also disclose any evidence that goes to the credibility of crucial prosecution witnesses.  *Giglio v. United States*, 405 U.S. 150, 154 (1972).  "Referred to as *Giglio* material, this evidence is a subset of *Brady* material insofar as it addresses situations in which certain evidence about a witness's credibility or motivation to testify exists, and where 'the reliability of a given witness may well be determinative of guilt or innocence.'" *Maury*, 695 F.3d at 249 (quoting *Giglio*, 405 U.S. at 154).[6]

*Fourth*, production of these materials may be required by the Jencks Act, which mandates that any time a Government witness testifies on direct examination, the defendant is entitled to a copy of "any statement . . . of the witness in the possession of the United States which relates to the subject matter as to which the witness has testified."  *Maury*, 695 F.3d at 247 (quoting 18 U.S.C. § 3500(b)(2)).

For all the foregoing reasons, it is of the utmost importance that Mr. Dougherty be provided with these materials in order to ensure that he is able to properly defend himself in this action.

Respectfully submitted,

*/s/ Henry E. Hockeimer, Jr.*

Henry E. Hockeimer, Jr.

cc:      All counsel of record (via ECF)

---

[5]   While the Government asserts that this recording is "fake *Brady*," contending that Mr. Dougherty was not being truthful in his statements – this is not an issue for the Government to determine.  Nor does this belief absolve the Government from its obligations pursuant to *Brady*.  Whether Mr. Dougherty was being truthful is ultimately a jury question.

[6]   There are several individuals who were present during the August 24, 2020 recording, who were listed on both the witness list for the corruption trial, as well as the witness list for the upcoming trial.  Moreover, during this week's hearing with the Court, the Government referenced "gossip" that the CI provided to the Government.  To the extent that the "gossip" relates to Government witnesses, it must be produced pursuant to *Gigilio.*