**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff | CRIMINAL NO. 2:19-CR-00064-JLS-3 |
| v. | |
| BRIAN BURROWS, | |
| Defendant. | |

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANT BRIAN BURROWS' MOTION TO SEVER DEFENDANTS
<u>JOHN DOUGHERTY AND MARITA CRAWFORD</u>**

Defendant Brian Burrows respectfully submits this Memorandum of Law in Support of his Motion to Sever Defendants John Dougherty and Marita Crawford pursuant to Rule 14 of the Federal Rules of Criminal Procedure.

## I. <u>INTRODUCTION</u>

Mr. Burrows is the President of the International Brotherhood of Electrical Workers Local Union 98 ("Local 98" or the "Union") and one of eight defendants charged by way of a 116-count indictment unsealed on January 29, 2019 (the "Indictment"). He is scheduled to stand trial beginning on October 13, 2022 for charges related to the alleged embezzlement of funds from Local 98. However, should he be required to stand trial with co-defendants John Dougherty and Marita Crawford, Mr. Burrows' right to a fair trial will be undermined.

In late 2021, John Dougherty, former Local 98 Business Manager, was convicted of numerous counts of honest services fraud. The honest services fraud trial was beset by negative publicity, which culminated, after verdict, with an article describing Mr. Dougherty as

"intimidate[ing]" and the kind of politics he represents to the jury as "appalling."[1] The Philadelphia Inquirer noted that Mr. Dougherty's "conviction reinforces negative stereotypes about unions[.]"[2] Both the media surrounding Mr. Dougherty, as well as evidence of his role in Philadelphia politics (which jurors view as inherently corrupt) will be unfairly prejudicial to Mr. Burrows and deprive him of his constitutional right to a fair trial.

Likewise, Defendant Burrows predicts that the Government will play numerous recordings that include Mr. Dougherty and Co-Defendant Marita Crawford. These recordings would not be admissible against Mr. Burrows in a trial against him alone and are unfairly prejudicial.

It is clear that Mr. Burrows cannot enjoy his right to a fair trial if he is required to stand trial with Mr. Dougherty and Ms. Crawford. Accordingly, Mr. Burrows respectfully requests that this Court sever defendants, Mr. Dougherty and Ms. Crawford, from the remaining defendants in this case.

## II.    FACTUAL AND PROCEDURAL HISTORY

The Indictment alleged two distinct conspiracies: (1) an honest services fraud bribery conspiracy involving Mr. Dougherty and Mr. Henon, and (2) an embezzlement conspiracy involving Mr. Burrows, Mr. Dougherty, and six other defendants, but not involving Mr. Henon. On April 9, 2019, Mr. Burrows moved to sever Counts 97 – 116 of the Indictment, which related

---

[1] Oona Goodin-Smith and Jeremy Roebuck, *A juror in the Dougherty-Henon trial says it was a lesson in Philly government – and it was 'appalling,'* THE PHILADELPHIA INQUIRER, Nov. 16, 2021, available at https://www.inquirer.com/news/john-dougherty-trial-jury-bobby-henon-convicted-charges-philadelphia-20211116.html. *See also* Larry Platt *You can't change a culture of corruption . . .*, THE PHILADELPHIA CITIZEN, Dec. 03, 2021, available at https://thephiladelphiacitizen.org/cant-change-culture-corruption/

[2] Ximena Conde, *All you need to know about the Bobby Henon and Johnny Doc convictions*, THE PHILADELPHIA INQUIRER, Nov. 16, 2021, available at https://www.inquirer.com/news/john-dougherty-bobby-henon-trial-philadelphia-guilty-verdict-20211116.html.

to the alleged bribery scheme and involved only Mr. Dougherty and Mr. Henon, for a separate trial. (Dkt. No. 72.) On July 9, 2020, this Court set all counts (including those related to the alleged bribery and conspiracy allegations) for trial on October 26, 2020. (Dkt. No. 152) On November 2, 2020, this Court granted the severance motion. (Dkt. No. 168.) Mr. Dougherty and Mr. Henon stood trial for the alleged bribery scheme in November of 2021. On December 13, 2021, this Court set jury selection in the trial on the embezzlement-related counts, including the counts alleged against Mr. Burrows, for September 12, 2022. (Dkt. No. 257.) Jury selection was subsequently moved to October 13, 2022. (Dkt. No. 328.)

## A.    ADVERSE PRETRIAL PUBLICITY

In November of 2021, Mr. Dougherty and Mr. Henon proceeded to trial on the bribery counts. Ultimately, a jury found Mr. Dougherty guilty of eight of the eleven counts he faced and Mr. Henon guilty on ten of the eighteen counts.

That trial and its aftermath were beset by a raft of negative publicity, directed primarily at Mr. Dougherty. By way of example only:

- An October 6, 2021 article on WHYY.org described Mr. Dougherty as vengeful and crass, swearing multiple times as he described to Ms. Crawford his victory in the election to lead the Building & Construction Trades Council. He also reportedly sought the introduction of legislation that would cost both the Teamsters and Plumbers Unions jobs in the City of Philadelphia due to perceived slights against him in the past.[3]

---

[3] Meir Rinde, *'Just John's little guy': FBI Wiretaps reveal power play between union leader, council member*, WHYY.COM, Oct. 6, 2021, available at https://whyy.org/articles/just-johns-little-guy-fbi-wiretaps-reveal-power-play-between-union-leader-council-member/.

- An October 15, 2021 article reported testimony in the bribery trial that painted Mr. Dougherty as in complete control of Philadelphia Mayor Jim Kenney, with Mr. Dougherty having been recorded saying that Mayor Kenney was "giving me whatever I want."[4]

- An October 12, 2021 article described testimony from former head of Licenses & Inspections in Philadelphia in which he described Mr. Dougherty as "threatening."[5]

This negative press culminated with a Philadelphia Inquirer story detailing that Mr. Dougherty's persona—more so than the facts of the case—made it difficult for jurors to acquit him. One juror stated the trial was "a real lesson in Philadelphia civics and how Philadelphia government works—and it was appalling."[6] The same juror said that many on the panel felt sympathy for Mr. Henon but stated, "It was harder to have that kind of sympathy for John Dougherty."[7] The same article described, "Dozens of phone calls played at trial showed Dougherty to be short-tempered, foulmouthed, and at times domineering in his discussions with

---

[4] Jeremy Roebuck, *Dougherty says on wiretap that Kenney was 'giving me whatever we want,'* THE PHILADELPHIA INQUIRER, Oct. 15, 2021, available at https://www.inquirer.com/news/live/johnny-doc-dougherty-trial-bobby-henon-philadelphia-live-updates-20211015.html#card-1574666841.

[5] Jeremy Roebuck and Oona Goodin-Smith, *Philly's ex-L&I chief described threatening behavior by John Dougherty as the labor leader's bribery trial continued*, THE PHILADELPHIA INQUIRER, Oct. 12, 2021, available at https://www.inquirer.com/news/johnny-doc-trial-john-dougherty-bobby-henon-carlton-williams-20211012.html.

[6] Oona Goodin-Smith and Jeremy Roebuck, *A juror in the Dougherty-Henon trial says it was a lesson in Philly government – and it was 'appalling,'* The Philadelphia Inquirer, Nov. 16, 2021, available at https://www.inquirer.com/news/john-dougherty-trial-jury-bobby-henon-convicted-charges-philadelphia-20211116.html.

[7] *Id.*

others."[8] The juror who spoke to The Inquirer noted that, "many on the panel were afraid of backlash once the decision was announced."[9] The juror stated, "The thing that was important to the jury was that we not let John Dougherty intimidate us. . . . That's part of the problem."[10]

On March 3, 2021, Mr. Dougherty and his nephew, defendant Brian Fiocca, were charged with eighteen (18) counts of extortion and one count of conspiracy to commit extortion related to threats they made to Mr. Fiocca's employer for reducing Mr. Fiocca's pay. The indictment in that matter alleges that Mr. Fiocca assaulted his project manager and Mr. Dougherty threatened economic sanctions. This the inflammatory details of this matter have also been widely reported. Many news outlets, including the Inquirer, reported the alleged actions of Mr. Dougherty's co-conspirator: "'You owe me 36 hours before I break your [expletive] jaw,' he purportedly told the manager in one exchange quoted in the indictment. 'There's nothing you can do to me. … You think you're untouchable? I'll break all of you. I'll [expletive] break your face and [Palmieri's] face.'"[11]

---

[8] *Id.*

[9] *Id.*

[10] *Id.*

[11] Jeremy Roebuck, *Philly labor leader Johnny Doc was indicted again, this time for threatening a contractor*, THE PHILADELPHIA INQUIRER (March 3, 2021), available at https://www.inquirer.com/news/johnny-doc-local-98-indicted-fiocca-20210303.html.

*See also* Joe Brandt, *'You Think You Are Untouchable?' Johnny Doc, Nephew Charged With Extortion*, NBC10PHILADELPHIA.COM (March 3, 2021), available at https://www.nbcphiladelphia.com/news/local/you-think-yous-are-untouchable-union-leader-nephew-charged-with-intimidation/2726533/.

Max Marin, *Feds arrest labor leader John Dougherty on extortion charges*, BILLY PENN (March 3, 2021), available at https://billypenn.com/2021/03/03/feds-arrest-labor-leader-john-dougherty-on-new-extortion-charges/.

On April 27, 2022, Mr. Burrows became aware that the FBI recorded approximately

thirty (3) conversations of Mr. Dougherty at various Union meetings where he clearly threatened

individuals who may consider cooperating with the government. The Inquirer reported on these

threats in detail:

> *[Mr. Dougherty] announced at a November 2019 gathering of business agents that he was close to figuring out who among them was providing the feds with information.*
>
> *. . .*
>
> *"You going to f— around with that mouth, I'm coming after everything you have and everything you f—ing own," he warned the room.*
>
> *He continued: "I'm going to make sure everybody, everywhere — everybody at your kids' school — knows that you're a punk and a rat and a creep. Your kids don't want to grow up knowing your daddy's a rat, daddy's a punk."*
>
> *And he signed off with a final suggestion that death might be a better option than waiting to incur his wrath. "Go right to the bridge," he added. "Jump right off the bridge. Make it easy."[12]*

The Inquirer report continued, quoting Mr. Dougherty at length:

> *And for the one person or whoever, is a f—ing p—y in the room who continues to sit here and eat at this table, and f— us by putting out little information, I'm getting close to you, baby. I'm getting close to you. You're never going to see it coming. I'm this close to you. . . . You'll never know when it's happening when it happens, OK?*

---

Hannah Kanik, *Union leader John Dougherty charged with extortion for alleged threats against contractor*, PHILLY VOICE, March 3, 2021, available at https://www.phillyvoice.com/john-dougherty-arrest-extortion-ibew-leader-nephew-gregory-fiocca/.

[12] Jeremy Roebuck and Oona Goodin-Smith, "An FBI informant recorded Johnny Doc threatening 'rats.' His lawyers say that violated his rights," The Philadelphia Inquirer (July 6, 2022), available at https://www.inquirer.com/news/john-dougherty-johnny-doc-trial-confidential-informant-local-98-tapes-20220706.html.

> *You going to f— around with that mouth I'm coming after everything you*
> *have, and everything you f—ing own. . . . And I want you to run to the*
> *[IBEW International]. I want you to run to the feds. I want you to go there.*
> *Because everything I'm going to do is by the book. But at the end of the*
> *day, . . . you won't be loving in this area, OK?[13]*

The Inquirer also reported that in August 2020, "Dougherty urged an associate during a meeting to 'choke' a member of the union he suspected of not supporting him, advising others to 'put him under the f—g water.'"[14]

More recently, the public has been exposed to an ongoing feud between Mr. Dougherty and his legal counsel.[15] This has resulted in his counsel's motion to withdraw, citing a total breakdown in communication between Mr. Dougherty and his lawyers. (Dkt. No. 345 (stating the Mr. Dougherty had ignored counsel's attempts to contact him and had refused to speak to counsel after a recent in-person conference).) The motion paints a dim picture of Mr. Dougherty as incorrigible and stubborn, refusing to listen to reason.

## B.   RECORDED CONVERSATIONS INVOVING MR. DOUGHERTY AND MS. CRAWFORD.

Over the course of the government's pre-indictment investigation, the government recorded hundreds of conversations of Local 98 employees and officers, including John Dougherty and Marita Crawford. Mr. Burrows is aware that the government will play many such conversations at the upcoming trial. These taped conversations are inadmissible against Mr.

---

[13] *Id.*

[14] *Id.*

[15] Jeremy Roebuck, *Johnny Doc's lawyers ask to quit his case as two trials loom*, THE PHILADELPHIA INQUIRER (Aug. 18, 2022), available at https://www.inquirer.com/news/john-dougherty-lawyer-henry-hockeimer-ballard-spahr-20220818.html.

Burrows, and, not withstanding a limiting instruction, would unfairly prejudice Mr. Burrows' defense and deprive him of a fair trial.

## III.   <u>ARGUMENT</u>

### A.   MR. DOUGHERTY'S CONDUCT AND ATTENDANT PUBLICITY WILL DEPRIVE MR. BURROWS OF A FAIR TRIAL.

A criminal defendant has a right to "a fair trial by a panel of impartial, 'indifferent' jurors. The failure to accord an accused a fair hearing violates even the minimal standards of due process." *Irvin v. Dowd*, 366 U.S. 717, 722 (1961).

Rule 14(a) of the Federal Rules of Criminal Procedure provides: "If the joinder of offenses or defendants in an indictment, an information, or a consolidation for trial appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires." Fed. R. Crim. P. 14(a). Severance is likely appropriate when codefendant's misconduct could (1) lead a jury to conclude that another defendant was guilty, (2) when defendants in complex cases have different degrees of culpability, and (3) when there is evidence that a jury should not consider against a defendant and might not be admissible if a defendant were tried alone, but is admitted against a codefendant. *Zafiro v. U.S.*, 506 U.S. 534, 539 (1993). Although a disparity in damaging evidence towards codefendants can suffice to sever defendants, "the primary consideration is whether the jury can reasonably be expected to compartmentalize the evidence as it relates to separate defendants in view of its volume and limited admissibility." *U.S. v. De Larosa*, 450 F.2d 1057, 1065 (3d Cir. 1971).

Prejudice can also arise from pretrial publicity. "Where media or other community reaction to a crime or a defendant engenders an atmosphere so hostile and pervasive as to

preclude a rational trial process, a court reviewing for constitutional error will presume prejudice to the defendant without reference to an examination of the attitudes of those who served as the defendant's jurors." *Rock v. Zimmerman*, 959 F.2d 1237, 1253 (3d Cir. 1992), *overruled on other grounds by Brecht v. Abrahamson*, 507 U.S. 619 (1993).

To determine whether pretrial publicity is sufficiently prejudicial to deprive a defendant from the right to a fair trial, courts consider the following factors:

> *(i) the size and characteristics of the community;*
>
> *(ii) the general content of the news coverage (including facts such as whether the stories referenced the defendant's confession or other similarly blatantly prejudicial information, whether the news account was factual and objective versus sensational, inflammatory, or slanted toward the prosecution, and whether the stories focus on the defendant personally as opposed to the crime itself);*
>
> *(iii) the timing of the media coverage relative to the commencement of the trial; and*
>
> *(iv) whether there was any media interference with actual courtroom proceedings.*

*United States v. Savage*, 2012 WL 2376680, at *3-4 (E.D. Pa. June 25, 2012) (quoting *United States v. Diehl–Armstrong*, 739 F. Supp. 2d 786, 793 (W.D. Pa. 2010)).

Here, both the volume of evidence against Mr. Dougherty as well as the publicity surrounding Mr. Dougherty's bribery case and other legal challenges will make it impossible for Mr. Burrows to receive a fair trial.

Prosecutors have accused Mr. Dougherty of leading a conspiracy that involved the embezzlement of hundreds of thousands of dollars from Local 98. The Government is likely to put on extensive evidence of Mr. Dougherty's purchases and alleged misuse of Union funds, both big and small, that dwarf the allegations against Mr. Burrows. For example, the government has alleged that Mr. Dougherty used Local 98 funds for his "personal and political interests,

without any relation to the business interests of Local 98." (Indictment, Dkt. No. 1 at p. 18.) The Government also alleges that Mr. Dougherty regularly provided concert and sporting event tickets paid for by Local 98 to family members and friends. (*Id.* at 16-17.) Mr. Dougherty also is alleged to have used Local 98 credit cards for personal expenses and travel. (*Id.* at 14-16.) Mr. Dougherty is alleged to have used Local 98 personnel for personal errands and construction at his and his family members' homes, and is alleged to have stolen petty cash from the Union. (*Id.* at ¶¶ 17-18.)

The overwhelming volume of evidence against Mr. Dougherty will unfairly paint Mr. Burrows with the same brush. This is true despite the fact that the government has alleged that Mr. Burrows conspired with Mr. Dougherty to embezzle from Local 98.

The publicity surrounding this case will also deprive Mr. Burrows of a fair trial. Here, publicity has been pervasive and highly critical of Mr. Dougherty. It has cast Mr. Dougherty as a political insider who defrauded the people of Philadelphia. Most recently, publicity has covered his conviction for honest services fraud as well as his recent disputes with his attorneys. Local media has, for decades, been preoccupied with Mr. Dougherty (and Mr. Dougherty has occasionally indulged this preoccupation). There can be no doubt that the publicity surrounding this case, and Mr. Dougherty in particular, will increase by several orders of magnitude as the trial gets closer.

Given the intense prejudicial publicity and the conduct of Mr. Dougherty at issue here, a severance under Rule 14(a) is appropriate.

**B.    RECORDED TELEPHONE CALLS BETWEEN MR. DOUGHERTY AND MS. CRAWFORD ARE INADMISSABLE AGAINST MR. BURROWS.**

The government is likely to play many incriminating telephone calls involving defendants Mr. Dougherty and Ms. Crawford, which are inadmissible against Mr. Burrows. A severance is necessary to remedy this issue.

The court may find grounds for severance when there is a risk that evidence that a jury should not consider and that would not be admissible if a defendant were tried alone is admitted against a codefendant. *See United States v. Blunt*, 930 F.3d 119 (3d Cir. 2019). Here, wiretaps involving Mr. Dougherty and Ms. Crawford would be inadmissible against Mr. Burrows alone.

First, the recordings are inadmissible hearsay when offered against Mr. Burrows. Federal Rule of Evidence 801(d)(2)(E) excepts co-conspirator statements from the hearsay rule, provided that district court finds " by a preponderance of the evidence that: (1) a conspiracy existed; (2) the declarant and the party against whom the statement is offered were members of the conspiracy; (3) the statement was made in the course of the conspiracy; and (4) the statement was made in furtherance of the conspiracy." *United States v. Ellis,* 156 F.3d 493, 496 (3d Cir.1998); *United States v. Vega,* 285 F.3d 256, 264 (3d Cir.2002). Not every conversation *about* a purported conspiracy is *in furtherance* of a purported conspiracy, however. *See United States v. Provenzano*, 620 F.2d 985, 1001 (3d Cir. 1980) ("Only if there was a reason for Hart or Abramowitz to know these things about the conspiracy could the statements have been 'in furtherance of' the conspiracy. At best, Hart and Abramowitz were Picardo's errand runners.").

Here, the recordings do not satisfy the requirements of the co-conspirator exception. First, the Government cannot demonstrate by a preponderance of the evidence that a conspiracy existed and Mr. Burrows was a part of it. To carry its burden, the Government will have to rely on the testimony of Anthony Massa, whose credibility is beyond repair and had been charged

with lying to the FBI in this investigation. (*See* Indictment at 83.) Nor can the Government demonstrate by a preponderance of the evidence that the statements were made in furtherance of the conspiracy. "[S]tatements by co-conspirators are not admissible if they amount to no more than 'mere narratives' of past events. Mere conversation between conspirators or merely narrative declarations are not admissible as declarations in furtherance of the conspiracy." *United States v. Davis*, 208 F. Supp. 3d 628, 633 (M.D. Pa. 2016) (citations and quotation marks omitted). The conversations between Mr. Dougherty and Ms. Crawford are largely narratives of past events. And therefore not subject to the exception.

Second, the overwhelming majority of the conversations are likely not relevant to the allegations against Mr. Burrows. The Indictment in this matter alleges that Mr. Burrows benefitted from the purported embezzlement in two ways.  First, he received certain repairs to his home. (Indictment at 21-23.) Second, he was a part-owner in two properties that received repair work: Doc's Union Pub (*id.* at 27-28) and a building referred to as the "Pennsport Building" (*id.* at 28-29). In contrast, Mr. Dougherty is alleged to have arranged for repairs or other tasks at his own home (*id*. at 19-21) and those of several friends and family members (*id.* at 24-27). He allegedly embezzled funds for personal goods and meals. (*Id.* at 30-57.) In addition, he allegedly embezzled petty cash and other funds to treat himself and his friends to concerts and sporting events. (*Id.* at 58-61.) The allegations in the Indictment are replete with examples of embezzlement of funds by Mr. Dougherty and Ms. Crawford, with no involvement of Mr. Burrows. Accordingly, any statements related to those acts are not relevant to Mr. Burrows and should not be admissible against him.

Because conversations between and involving Mr. Dougherty and Ms. Crawford are admissible against those two defendants, but inadmissible against Mr. Burrows, this court should sever Mr. Dougherty and Ms. Crawford from the upcoming trial.

IV.     **CONCLUSION**

Spillover evidence related to Mr. Dougherty's conduct as well as the incessant and damaging publicity surrounding this trial are sure to prejudice Mr. Burrows and deny him a fair trial. In addition, substantial evidence is admissible against Mr. Dougherty and Ms. Crawford, but not against Mr. Burrows. For the foregoing reasons, Defendant Brian Burrows respectfully requests that this Court enter an order severing defendants John Dougherty and Marita Crawford pursuant to Rule 14(a) of the Federal Rules of Criminal Procedure.

Dated:  September 1, 2022                    Respectfully submitted,


                                             _/s/ Thomas A. Bergstrom_
                                             Thomas A. Bergstrom (PA ID No. 21131)
                                             Mark A. Kasten (PA ID No. 316387)
                                             BUCHANAN INGERSOLL & ROONEY PC
                                             50 South 16th Street, Suite 3200
                                             Philadelphia PA 19102-2555
                                             Telephone: (215) 665-8700
                                             Facsimile: (215) 665-8760

                                             *Attorneys for Defendant Brian Burrows*