# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA | : |
| | : |
| v. | : CRIMINAL ACTION NO. 19-64 |
| | : |
| JOHN DOUGHERTY *et al.* | : |

## MEMORANDUM OPINION

**SCHMEHL, J.** /s/ <u>JLS</u>                                                                                                April 12, 2023

Before the Court is Defendant John Dougherty's *Motion to Dismiss the Indictment or, in the Alternative, Vacate the Convictions Returned on November 15, 2021 Due to the Violation of Mr. Dougherty's Sixth Amendment Right to Conflict Free Counsel* (ECF No. 429). Mr. Dougherty claims that his prior counsel defended him in the first trial in this case while, at the same time, being burdened by significant conflicts of interest. The Court agrees that it must hold an evidentiary hearing on these allegations. Mr. Dougherty argues further, however, that prior counsel's conflicts have also contaminated the future proceedings, including the forthcoming second trial, and therefore this Court should delay that trial until it assesses prior counsel's conflicts through the evidentiary hearing. For the reasons set forth below, the Court finds no basis to conclude that prior counsel's putative conflicts will have any effect on Mr. Dougherty's ability to prepare his defense for the second trial. Accordingly, the Court denies Mr. Dougherty's Motion without prejudice as to his conviction in the first trial; denies the Motion with prejudice as to the second trial; and holds that an evidentiary hearing will be scheduled sometime in the future after the conclusions of the remaining proceedings.

I.  **BACKGROUND**

After a grand jury indicted Mr. Dougherty on various counts relating to public corruption and embezzlement, Mr. Dougherty retained the Philadelphia-based law firm Ballard Spahr LLP for his defense. As relevant to Mr. Dougherty's present Motion, the allegations against him include that he misused funds belonging to the union he ran, the International Brotherhood of Electrical Workers Local Union 98 ("Local 98" or the "Union"), including by using them to make various personal purchases and to pay for construction work at personal properties. Mr. Dougherty, through his ties to Defendant Robert Henon, also influenced the City of Philadelphia's negotiations with Comcast to force Comcast to hire more expensive unionized contractors. At various Defendants' request, on November 2, 2020, the Court bifurcated the Indictment into two trials concerning public corruption and embezzlement. (ECF No. 168.) In November 2021, after trial on the public corruption charges, a jury found Mr. Dougherty guilty of eight counts, including those concerning the Comcast negotiations. (Jury Verdict Form, ECF No. 250.) Mr. Dougherty now faces trial for the embezzlement charges.

In August 2022, however, after the conclusion of the first trial, all Ballard Spahr attorneys sought to withdraw from the case, citing "significantly diverging opinions" between the attorneys and Mr. Dougherty regarding defense strategy for the upcoming embezzlement trial. (Mot. Withdraw as Counsel 2, ECF No. 345.) After holding a hearing, the Court granted the request. (ECF No. 355.) Mr. Dougherty then pursued other private counsel, but due to the estimated cost of preparing for the embezzlement trial and Mr. Dougherty's diminishing financial condition, private counsel proved unattainable. Accordingly, on November 2, 2022, the Court appointed Caroline Goldner Cinquanto as counsel under the Criminal Justice Act. (ECF No. 372.) At Ms.

Cinquanto's request, the Court also appointed Alan Tauber as co-counsel on January 9, 2023. (ECF No. 404.)

Mr. Dougherty, through his new defense team, now claims to have uncovered "significant conflicts of interest" in Ballard Spahr's representation of him that have "existed from the inception of this prosecution" and, accordingly, have "contaminated and rendered invalid" all proceedings up to this point. (Def.'s Br. 2, ECF No. 429.) The alleged conflicts take two shapes: first, Ballard Spahr stood on both sides of this prosecution by representing both Mr. Dougherty and certain victims of his alleged crimes (*id.* at 3–5, 7); and second, a Ballard Spahr attorney was implicated in Mr. Dougherty's alleged embezzlement by having construction work performed at the attorney's personal residence, allegedly at the Union's expense (*id.* at 5–7). Mr. Dougherty argues that these conflicts are so severe that they have denied him "his Sixth Amendment right to counsel and his Fifth Amendment right to due process," and the appropriate remedy would be to dismiss the Indictment or, at least, to vacate the convictions from the trial for public corruption. (*Id.* at 2.)

As to representing victims of Mr. Dougherty's alleged crimes, Mr. Dougherty points to Ballard Spahr's longtime representation of Comcast, "one of the alleged primary victims and source of critical witnesses against Mr. Dougherty at his [public corruption] trial." (*Id.* at 3.) First, one attorney allegedly represented "Comcast employees in 2017 during interviews regarding this case with the FBI." (*Id.* at 4.) At the time, that attorney worked for a law firm other than Ballard Spahr, but Mr. Dougherty claims that even after the attorney joined Ballard Spahr, the attorney continued to represent Comcast and even "attended the [public corruption] trial on behalf of Comcast when current and former Comcast employees testified at trial." (*Id.*) Second, Mr. Dougherty alleges that Ballard Spahr refused to subpoena a Comcast executive involved in the negotiations about hiring more unionized contractors, because that executive was a former partner

of Ballard Spahr. (*Id.*) Third, Mr. Dougherty alleges that the "side agreement" that resolved the unionized contractors issue was drafted on behalf of Comcast by Ballard Spahr attorneys. (*Id.*) Mr. Dougherty also claims that Ballard Spahr represented *another* victim of his alleged crimes, this time relating to the embezzlement portion of this case: Local 98 itself. (*Id.* at 7.) Although defense counsel acknowledges that they have not yet uncovered the full scope of this potential issue, they have purportedly found a "substantial volume of billing" charged to the Union "for work unrelated to Mr. Dougherty's defense." (*Id.*)

Turning to a Ballard Spahr attorney's potential involvement in the embezzlement scheme, Mr. Dougherty claims that this "circumstance . . . at a minimum would suggest the attorney could be a witness and, at worst, an unindicted co-conspirator." (*Id.* at 5.) Specifically, the attorney was allegedly billed "$105 for a service call" to the attorney's home, but the rest of the bill "was added in to a Local 98 bill and paid by Local 98." (*Id.* at 6 (quoting witness's out-of-court interview).) In subsequent correspondence to the Court concerning a request to continue the embezzlement trial, defense counsel further explained the "rather disturbing inferences" that could be drawn from the existence of these conflicts and the failure of Ballard Spahr and the Government to take them seriously:

> [T]he government developed evidence which implicated prior counsel in the investigation, that information was all but hidden from co-counsel, the circumstances were presented to the grand jury, but omitted from the Indictment. All of which raises the question of whether there were conversations, discussions, exchanges, and/or promises between the government and prior counsel or his firm about the potential exposure implicated by the investigation. If so, a hearing is required to determine the nature and timing of those discussions, including any representations or requests to confine the disclosure of the material to protect the reputation of counsel whose firm was involved in the 2015 negotiations and who continued to represent Comcast.

(Def.'s Reply Supp. Mot. Continue 2, ECF No. 468.)

Considering these conflicts, Mr. Dougherty asks the Court to dismiss the entire Indictment, including the untried embezzlement charges set to be tested in the forthcoming second trial. Mr. Dougherty believes that the effect of prior counsel's putative conflicts extends to the second trial because prior counsel, who represented Mr. Dougherty at the time that this Court decided to bifurcate the Indictment into two trials, could have "advocate[d] for a single, speedy trial where all of the charges could have been resolved." (Def.'s Br. 16.) Holding only one, consolidated trial, Mr. Dougherty argues, would have "carried some potential benefits including perhaps a more forgiving interpretation of the facts underlying the honest services charges." (*Id.*) Mr. Dougherty also alludes to an advantage that the Government has obtained because of the putatively defective first trial, but he does not specify the nature of that advantage. (*Id.* at 17, 19.)

## II. LEGAL STANDARD

The Third Circuit has reiterated that "the 'Sixth Amendment guarantee of effective assistance of counsel includes . . . the right to the attorney's undivided loyalty free of conflict of interest,'" because unconflicted counsel "is necessary" to "put[] the government to its proofs in an adversarial manner." *United States v. Moscony*, 927 F.2d 742, 748 (3d Cir. 1991) (quoting *United States v. Gambino*, 864 F.2d 1064, 1069 (3d Cir. 1988)). Where a defendant alleges an actual conflict of interest, the Third Circuit has provided different approaches for cases of joint representation of co-defendants in the same trial and multiple representation of defendants in different trials. *See United States v. Morelli*, 169 F.3d 798, 810 (3d Cir. 1999).

Joint representation is not an issue in this case. As to multiple representation, the Third Circuit has viewed it broadly, such that it includes not "only those factual situations where counsel simultaneously represents different defendants," but also those situations where counsel "actively represented conflicting interests" more generally—namely, where the "personal interests of

counsel . . . were 'inconsistent, diverse or otherwise discordant' with those of his client and . . . affected the exercise of his professional judgment on behalf of his client." *Gov't of Virgin Islands v. Zepp*, 748 F.2d 125, 135 (3d Cir. 1984) (first quoting *Cuyler v. Sullivan*, 446 U.S. 335, 350 (1980), and then quoting Model Code of Pro. Resp. EC 5-2, 5-14 (Am. Bar Ass'n 1980)). This scenario may arise when, as in *Zepp*, "trial counsel could have been indicted for the same charges on which he represented [the defendant]" and "was a witness for the prosecution." *Id.* at 136.

To succeed on a claim of conflicted multiple representation, a defendant must establish two prongs:

> First, he must demonstrate that some plausible alternative defense strategy or tactic might have been pursued. He need not show that the defense would necessarily have been successful if it had been used, but that it possessed sufficient substance to be a viable alternative. Second, he must establish that the alternative defense was inherently in conflict with or not undertaken due to the attorney's other loyalties or interests.

*Morelli*, 169 F.3d at 810. Upon satisfying both prongs, "the defendant is entitled to a reversal for inadequate assistance of counsel without demonstrating prejudice." *Id.* (citing *Strickland v. Washington*, 466 U.S. 668, 692 (1984)). A defendant unable to meet this standard "can still bring a conventional ineffective assistance claim under *Strickland*, but the defendant must then show prejudice." *Id.* at 810 n.15.

### III. ANALYSIS

The concerns raised by Mr. Dougherty are indeed serious. If true, his allegations—that the importance of Comcast as a client to Ballard Spahr compromised the latter's defense strategy, and that a Ballard Spahr attorney was implicated in the embezzlement scheme—suggest that the "personal interests of counsel . . . were 'inconsistent, diverse or otherwise discordant' with those of his client . . . ." *Zepp*, 748 F.2d at 135. Mr. Dougherty has identified potential strategies not taken by Ballard Spahr because of these conflicts: first, "the decision to not confront Comcast

witnesses as adversaries"; second, "the failure to interview and subpoena other Comcast employees who were involved in the 1999 and 2015 negotiations"; third, declining to pursue "a more aggressive or expansive defense, premised upon the anti-union perception, history of the entirety of the negotiations, inordinate difference in power and influence, and adversarial relationship with Comcast"; and fourth, "whether there were conversations, discussions, exchanges, and/or promises between the government and prior counsel or his firm about the potential exposure [to the firm] implicated by the investigation." (Def.'s Br. 16–17; Def.'s Reply Supp. Mot. Continue 2.) An evidentiary hearing and additional argument are required to test the veracity of these allegations, the Ballard Spahr team's motives for pursuing certain strategies, and whether the proposed alternative strategies would have been viable under *Morelli*.

The same is not true as to the effect of these alleged conflicts on the second trial, however. Since November 2, 2022, Mr. Dougherty has been represented by able, conflict-free counsel appointed by this Court. This new defense team has diligently prepared for the upcoming trial and has vigorously pursued its client's interests since the appointment. Further, Mr. Dougherty has identified only one alternative defense strategy relevant to the second trial—namely, whether Ballard Spahr could have more aggressively resisted the bifurcation of the Indictment into two trials. But as the Government correctly argues, "[t]he severance of the counts plainly benefitted Dougherty. It is inconceivable how adding the embezzlement evidence, depicting Dougherty's wide-ranging theft of his union's assets, would have caused 'perhaps a more forgiving interpretation of the facts underlying the honest services charges.'" (Gov.'s Br. 4 (quoting Def.'s Br. 16).) The Court also notes that it justified its decision to bifurcate these proceedings on the "undu[e] prejudice" that would befall Mr. Dougherty's *co-defendants*, not on Mr. Dougherty's supposed acquiescence to the idea. (*See* ECF No. 167 at 1 (Mr. Henon would suffer undue

prejudice from including embezzlement charges irrelevant to him; the remaining co-defendants would suffer the same from including public corruption charges irrelevant to them).)

Finally, Mr. Dougherty claims that through the allegedly defective first trial, the Government has "secured a distinct advantage" for the second trial. (Def.'s Br. 7.) Mr. Dougherty has not explained the nature of this advantage, and the Court cannot find one: a new jury, unfamiliar with and unprejudiced by the first trial, will decide the embezzlement charges, and the Court's recent evidentiary rulings for the second trial (*see* ECF No. 472) were not predicated on the inclusion or exclusion of that evidence at the first trial. Lacking any indication of an unfair advantage, the Court rejects Mr. Dougherty's position.[1]

## IV. CONCLUSION

Mr. Dougherty has raised serious concerns about the potentially conflicted nature of his prior counsel. The effect of these conflicts, however, bears only on the first trial in this case. Represented by conflict-free, Court-appointed counsel since early November 2022, Mr. Dougherty has not provided any basis to support dismissing the embezzlement charges or otherwise delaying the forthcoming trial on those charges.

---

[1] Mr. Dougherty also faults the Government for allegedly knowing of Ballard Spahr's conflicts but failing to bring them to the Court's attention. (Def.'s Br. 7.) The extent of this knowledge is not entirely clear yet. Although prudence may counsel disclosure to the Court, the Third Circuit has declined to impose such a duty on prosecutors. *See Morelli*, 169 F.3d at 812 ("[W]e do not hold[] that a prosecutor's . . . failure in this respect"—*i.e.,* advising the Court of a conflict—"is grounds for reversal.").