# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| | : | |
| v. | : | **CRIMINAL DOCKET NO.: 19-064 (JLS)** |
| | : | |
| | : | |
| **JOHN DOUGHERTY** | : | |

## ORDER

AND NOW ____ day of _____, 2023, upon consideration of Defendant John Dougherty's Amended Motion to Dismiss the Indictment in Light of the Government's Violations of his Fifth and Sixth Amendment Rights, and any response thereto, it is hereby ORDERED that the Motion is GRANTED, and the Indictment is DISMISSED.

BY THE COURT:

_____
HON. JEFFREY L. SCHMEHL
Judge, United States District Court

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| | : | |
| **v.** | : | **CRIMINAL DOCKET NO.: 19-064 (JLS)** |
| | : | |
| | : | **FILED UNDER SEAL** |
| **JOHN DOUGHERTY** | : | |

## DEFENDANT JOHN DOUGHERTY'S AMENDED MOTION TO DISMISS THE INDICTMENT OR, IN THE ALTERNATIVE, VACATE THE CONVICTIONS RETURNED ON NOVEMBER 15, 2021 DUE TO THE VIOLATION OF MR. DOUGHERTY'S SIXTH AMENDMENT RIGHT TO CONFLICT FREE COUNSEL

Defendant John Dougherty, by and through his undersigned counsel, hereby moves to amend a motion filed by prior counsel, namely, *Motion Dismiss The Indictment Or, In The Alternative, Vacate The Convictions Returned On November 15, 2021 Due To The Violation Of Mr. Dougherty's Sixth Amendment Right To Conflict Free Counsel,* (ECF 429 - hereinafter "Conflict Motion"):

### I.   INTRODUCTION

On February 22, 2023, the Defendant, John Dougherty, through prior counsel, filed the above referenced "Conflict Motion". On March 13, 2023, the Government filed a response. On March 23, 2023, a hearing was held before this Court. On April 12, 2023, this Court issued a written opinion directing that an evidentiary hearing be convened on the conflict allegations set forth in the motion. On April 24, 2023, a telephone conference was held to address present counsel entering an appearance and prior counsel request to withdraw and or continue a trial

scheduled for May 8, 2023. The Court continued the trial and a hearing was scheduled for May 4, 2023, to address current counsel's potential conflicts of interest due to his representing other witnesses in the case. During the May 4, 2023, hearing, current counsel was permitted to enter his appearance in this case. On June 7, 2023, an in-person hearing was held and the Court addressed another potential conflict issue due to present counsel interviewing a co-defendant, pre-indictment, and the scheduling of a new trial date. On June 15, 2023 this Honorable Court issued an order scheduling jury selection in this matter to begin on October 9, 2023, with trial beginning the next day and in the event present counsel's Chester County homicide jury trial proceeded on October 2, 2023, jury selection shall begin on October 30, 2023 with trial beginning the next day. On July 18, 2023, present counsel requested to supplement prior counsel's Conflict Motion. On August 1, 2023, this Honorable Court issued an order directing that supplemental motions be filed by August 18, 2023.

## II. CONFLICT WITHIN THE UNITED STATES ATTORNEY'S OFFICE

The United States Attorney's Office for the Eastern District of Pennsylvania failed to recuse itself despite an actual conflict and, or at a minimum, "the appearance of a loss of impartiality." Louis Lappen, former Acting U.S. Attorney when this case was investigated and indicted, is married to the Vice President, Chief Compliance Officer and Senior Deputy General Counsel of Comcast. Comcast was the victim in the honest services fraud trial which is part of this indictment[1]. As a result of the U.S. Attorney's Office failure to recuse itself, Mr. Doughtery was denied his Fifth Amendment Right to due process.

In 1999, Assistant U.S. Attorney Louis Lappen's wife was hired as an attorney for Comcast. In 2006 she became the Chief Compliance Officer, and by 2018 she was promoted to

---

[1] Comcast is also an important client and source of revenue of Trial Counsel's firm.

Vice President, Chief Compliance Officer and Senior Deputy General Counsel for Comcast Corporation. Mr. Lappen was the First Assistant U.S. Attorney for the Eastern District of Pennsylvania from 2010 to 2016. In 2016, Mr. Lappen became Acting U.S. Attorney for the Eastern District of Pennsylvania through April of 2018. He is currently employed as a Deputy U.S. Attorney.

Comcast is the largest cable television company in the United States, it was founded in Philadelphia, and its corporate headquarters are here as well.  Comcast has decades of history and deep roots in Philadelphia and the surrounding area.  During all relevant times in this case (the pendency of the investigation, the time of the indictment, and during the honest service fraud trial), Comcast was a client of trial counsel's law firm.  Comcast's former Senior Executive Vice President of Comcast, was appointed as U.S. ambassador to Canada by President Joseph Biden, and formerly chairman of trial counsel's law firm, is an individual possessing indisputable influence and importance in legal, political, commercial and academic communities locally and nationally.

In 2015, Comcast entered into a 15 year franchise agreement with the City of Philadelphia to provide cable service within the City limits and hired MJK Electric, a union electrical contractor.  In March of 2015, Comcast and IBEW Local 98 contract negotiations turned contentious. On April 29, 2015, while Louis Lappen was First Assistant U.S. Attorney, and married to Comcast's Vice President, the U.S Attorney's office applied for wire and electronic communications interceptions for Mr. Dougherty and others associated with IBEW Local 98's operations.  On August 5, 2016 search warrants were executed on nineteen locations including defendant's home, defendant's family members homes, the homes of several Local 98 officers and employees, and Local 98 offices.  On January 29, 2019, a grand jury issued a 116-

count indictment against Mr. Dougherty and seven co-defendants which charged Mr. Dougherty with honest services fraud related to his negotiations with Comcast and numerous other crimes. On October 5, 2021, trial commenced on Counts 97 through 116 of this indictment. On November 15, 2021, he was convicted of one count of conspiracy to commit honest services fraud and seven counts of honest services wire fraud.

The Department of Justice specifically addresses United States Attorney Recusals under Rule 3-1.140. The Rule states:

> When United States Attorneys, or their offices, become aware of an issue that could require a recusal in a criminal or civil matter or case as a result of an actual or apparent conflict of interest, they must contact EOUSA's General Counsel's Office (GCO). United States Attorneys cannot recuse themselves or their offices from cases or matters. They must be recused by the designated Associate Deputy Attorney General. The requirement of recusal does not arise in every instance, but only where a conflict of interest exists or there is an appearance of a loss of impartiality.
>
> A United States Attorney who becomes aware of circumstances that might necessitate his or her recusal or that of the entire office should promptly notify GCO to discuss whether a recusal is required. If recusal is appropriate, GCO will coordinate the recusal action, obtain necessary approvals for the recusal, and arrange for a transfer of responsibility to another office.

Trial counsel was aware of the potential conflict between Louis Lappen and the prosecution of Mr. Dougherty. Trial counsel requested discovery related to Mr. Lappen's involvement in the Dougherty case. On January 21, 2021, AUSA Frank Costello by way of a letter, responded to the discovery request, in which he states:

> AUSA Lou Lappen has never been involved in the investigation or prosecution of this case. I have been working on this matter since approximately December of 2014, almost exclusively since May of 2015, and have never had any discussion with AUSA Lappen about the substance of the case, nor have I received any information, suggestions, nor instructions from him about the case. I have also spoken with AUSA Richard Barrett, who has supervised this case until recently; he confirmed that AUSA Lappen never participated in the investigation or prosecution of this matter.

Despite AUSA Frank Costello's representation in the letter, the veracity of which is not being questioned, Mr. Lappen's name appears on documents produced in the investigation and prosecution of Mr. Dougherty (it is also noteworthy that AUSA Costello's letter does not contain the word "recusal"). Mr. Lappen's name appears on over twenty informal immunity and proffer letters addressed to attorneys for witnesses summoned to appear before the grand jury investigating the defendant Mr. Dougherty. Mr. Lappen's position at the office during this time period, and the impact and importance of immunity issues, suggests that Mr. Lappen would have been consulted about multiple witnesses in the case. There is discovery which demonstrates that Mr. Lappen was directly consulted during the investigation of this indictment on at least one occasion. A 302 provided in discovery reveals that on June 8, 2015, Mr. Lappen was consulted by SA Tara A. Bloesch with regards to an intercepted phone call related to John Dougherty.[2] Additionally, Mr. Lappen signed a letter dated July 24, 2017, in response to a *Touhy* request (*United States ex rel. Touhy v. Ragen*, 340 U.S. 462, 468 (1951)), Sprague & Sprague, Mr. Dougherty's attorney in *Dougherty v. Pepper Hamilton LLP, et al.* PCCP, February Term, 2013, No. 00848. At issue in that civil litigation was an FBI affidavit of probable cause in support of the issuance of a search warrant for John Dougherty's house in 2006. The affidavit of probable cause was filed under seal, but in February 2008, became publicly accessible by virtue of an exhibit attached to a government response to a motion to suppress in an unrelated criminal case. When Mr. Dougherty ran for a vacant seat in the Pennsylvania Senate in April of 2008, the Philadelphia Inquirer published several articles that implied that Mr. Dougherty had previously

---

[2] On June 8, 2015 at 16:37 an incoming call was intercepted on the Title III of subject John Dougherty's cell phone. A search of the phone number was conducted by SA Terrence Dupont and the phone number was a number for Ballard Spahr. Based on the content of the call it was strongly suggested that the caller was Dougherty's prior counsel. Upon being advised of the interception, SA Timothy Wright and SSA Tara Bloesch listened to the phone call, notified SAC Brosnan of the interception, and contacted then First Assistant Lou Lappen, Criminal Chief Pete Schenck and Chief of Public Corruption, Tax and Labor Racketeering Richard Barraet. They stated based on multiple factors, the call was not privileged and should not be marked as such.

engaged in criminal conduct based on the affidavit of probable cause. Mr. Lappen enclosed affidavits from two Assistant U.S. Attorneys (one of whom was assigned to the team of prosecutors assigned to this indictment) with the July 24th correspondence. The affidavits addressed questions regarding the public filing of the sealed affidavit of probable cause for Mr. Dougherty's home.

Mr. Lappen was involved in the investigation, indictment and prosecution of John Dougherty. The question which remains is to what extent and whether an actual conflict existed. At minimum, "the appearance of impartiality" existed based solely on the fact that shortly after negotiations between Comcast and IBEW Local 98 and Mr. Dougherty, the United States Attorney's Office, applied for a wire tape of Mr. Dougherty's communications.

### III.     PERSONAL INTERESTS OF TRIAL COUNSEL AS ADDITIONAL CONFLICTS OF INTEREST

Trial counsel was conflicted from representing Mr. Dougherty due to personal conflicts of interest. Trial counsel is a partner at one of the largest law firms in the United States. The law firm clients are large corporations and wealthy and influential individuals. Former partner and chairman of the firm (and former Senior Executive Vice President of Comcast) was appointed by the President of the United States as U.S. Ambassador to Canada. Trial counsel's current partner (and co-counsel in this case for a period of time) was said to be "on the short list" for Presidential appointment to the office of U.S. Attorney for the Eastern District of Pennsylvania.

It is a financial benefit for any law firm and its partners, if a partner is appointed by a U.S. President to the office of U.S. Attorney. It is a financial benefit for any law firm and its partners to have a client like Comcast, the largest cable company in the United States. It is

detrimental to the appointment to the office of U.S. Attorney if trial counsel takes an adversarial position with respect to the U.S. Attorney's Office in the Eastern District of Pennsylvania; or with Comcast given its connection to the U.S. Attorney's Office. For these reasons, trial counsel did not raise the conflict issues regarding Mr. Lappen and Comcast. Trial counsel's multiple conflicts of interests deprived Mr. Dougherty of his right to uncompromised counsel which resulted in violations of his Sixth Amendment right to Counsel and Fifth Amendment right to due process.

In the winter of January 2021, following the U.S. Presidential Election, Mr. Dougherty was contacted by trial counsel who requested a meeting at Misconduct Tavern located at 1801 John F. Kennedy Boulevard in Philadelphia. Trial counsel stated to Mr. Dougherty that he had a plea agreement to review and that a partner who was a former Deputy U.S. Attorney would be joining the meeting who was on the "shortlist" to be appointed United States Attorney for the Eastern District. Additionally, he stated that the partner would need the support of Comcast and the firm to secure the appointment. The partner asked Mr. Dougherty, "what he could live with" in regards to the plea. Mr. Dougherty did not sign the plea agreement and left the meeting.

Trial counsel's representation of Mr. Dougherty was materially limited by his allegiance to his law firm and his partners. Under *Pennsylvania Rules of Professional Conduct*, Rule 1.7, Conflict of Interest" Current Clients, the Rule states:

1. Except as provided in paragraph (b), a lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if:
    1. the representation of one client will be directly adverse to another client; or,
    2. there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer.

2. Notwithstanding the existence of a concurrent conflict of interest under paragraph (a), a lawyer may represent a client if:

1. the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client;
2. the representation is not prohibited by law;
3. the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal; and,
4. each affected client gives informed consent.

The meeting between Mr. Dougherty, trial counsel, and the partner raises concerns about trial counsel's loyalty to the firm and the partner as opposed to his client. It is seeming that trial counsel was interested in advancing the partner's appointment to the office U.S. Attorney at the cost of his own client.

## IV. LEGAL ETHICS EXPERT REPORT

Prior Counsel retained Abbe Smith, Professor of Law at Georgetown Law to examine various documents and render an expert opinion on the ethical issues raised in the instant case (Letter attached as Exhibit A). The letter addresses the following conflicts: (1) Mr. Dougherty's counsel was representing Comcast at the same time as counsel was representing Mr. Dougherty, notwithstanding directly opposing interests; (2) One of Mr. Dougherty's lawyers allegedly participated in the same embezzlement scheme as Mr. Dougherty, creating a "personal" conflict of interest as well as becoming both a witness (indeed, an unindicted co-conspirator) and a lawyer, which is prohibited by Rule 3.7 of the *Pennsylvania Rules of Professional Conduct*; and (3) Mr. Dougherty's lead attorney and the attorney's firm were representing IBEW Local 98, an alleged victim of Mr. Dougherty's conduct with regard to the embezzlement charge, at the same time as they were representing Mr. Dougherty. Ms. Smith's expert opinion regarding the various conflicts concludes that it is her "opinion that both the defense and prosecution failed to abide by their ethical responsibilities to Mr. Dougherty in this case, tainting the prosecution and raising

serious questions about basic fairness." Lastly, the report addresses not only the irreparable harm these conflicts caused Mr. Dougherty during the first trial, but also how the conflicts may have affected mindfulness of the record as it relates to the upcoming embezzlement trial.

### III.     CONCLUSION

For the foregoing reasons it is respectfully submitted dismissal of the indictment is required, or absent dismissal, the conviction in the honest services portion of the case must vacated.

Respectfully submitted,

/s/Gregory J. Pagano
Gregory J. Pagano, Esquire
Law Offices of Gregory J. Pagano
1315 Walnut St. 12th Floor
Philadelphia, PA 19107
(215) 636-0160; gpagano@paganolaw.net

Dated: August 18, 2023

CERTIFICATE OF SERVICE

I, Gregory J. Pagano, Esq., hereby certify that on this date I delivered by electronic means a true and correct copy of the foregoing Motion to the following counsel:

AUSA Frank Costello
AUSA Bea Witzlevin
615 Chestnut Street, Suite 1250
Philadelphia, PA 19106

/s/Gregory J. Pagano
Gregory J. Pagano, Esquire
Law Offices of Gregory J. Pagano
1315 Walnut St. 12th Floor
Philadelphia, PA 19107
(215) 636-0160; gpagano@paganolaw.net