

## GEORGETOWN LAW

Criminal Defense & Prisoner Advocacy Clinic
E. Barrett Prettyman Fellowship Program

March 12, 2023

Alan Tauber
2 Penn Center, Suite 900
1500 JFK Blvd.
Philadelphia, PA 19102

Caroline Cinquanto
1518 Walnut Street, Suite 800
Philadelphia, PA 19103

Dear Mr. Tauber and Ms. Cinquanto:

    At your request, I have examined various documents pertaining to the case of United States v. John Dougherty, Criminal No. 19-064 (JLS), and have had several telephone conversations with you, so that I might render an expert opinion on the ethical issues raised in the case.

    Upon reviewing materials related to the case and the relevant ethical rules and standards, it is my opinion that Mr. Dougherty's previous counsel violated the *Pennsylvania Rules of Professional Conduct* (2021) by not notifying Mr. Dougherty that counsel had a number of conflicts of interest related to other concurrent clients, not counseling Mr. Dougherty about his right to have conflict-free counsel, not providing Mr. Dougherty with an opportunity to obtain a neutral "second opinion" about the conflicts of interest, and not obtaining Mr. Dougherty's informed consent (either orally or in writing) to proceed with previous counsel. Indeed, in my view, this matter has been so tainted by previous counsel's conflicts of interest as to deprive Mr. Dougherty of his Sixth Amendment Right to Counsel and his right to Due Process of Law under the Fifth and Fourteenth Amendments.

Among the documents I have reviewed in formulating an opinion are the following:

- Indictment in U.S. v. John Dougherty, et al.
- Defendant John Dougherty's Motion to Dismiss the Indictment or vacate the Conviction Returned on November 15, 2021, Due to the Violation of Mr. Dougherty's Sixth Amendment Right to Conflict Free Counsel
- Transcript of FBI interview of Beth Dierks
- Ex Parte Order by Hon. Jeffrey Schmehl authorizing expenditure of CJA funds and attachments

My CV is attached, but let me briefly summarize my qualifications for providing this expert opinion:

I am a Professor of Law, Director of the Criminal Defense & Prisoner Advocacy Clinic, and Co-Director of the E. Barrett Prettyman Fellowship Program at Georgetown University Law Center, where I have taught since 1996. Prior to Georgetown, I was the Deputy Director of the Criminal Justice Institute, Clinical Instructor, and Lecturer at Law at Harvard Law School. I have also taught at the City University New York School of Law, Temple University School of Law, American University Washington College of Law, and the University of Melbourne Law School (Australia), where I was a Senior Fulbright Scholar. In addition to directing two criminal defense clinical programs at Georgetown—one for third-year law students and the other for post-law graduates, both of which emphasize professional responsibility as well as the skills and legal doctrine related to criminal law practice—I teach and write about lawyers' ethics. I am the author of two treatises on legal ethics: UNDERSTANDING LAWYERS' ETHICS (with Monroe H. Freedman) (Carolina Academic Press, 6th ed. forthcoming 2023, 5th ed. 2016; 4th ed. 2010; 3rd ed. 2014; 2nd ed. 2002) and LAWYERS' ETHICS (with Monroe H. Freedman and Alice Woolley) (Routledge, 2017). In addition to these treatises, my books, GUILTY PEOPLE (Rutgers University Press, 2020), HOW CAN YOU REPRESENT THOSE PEOPLE (Abbe Smith & Monroe H. Freedman, eds.) (Palgrave MacMillan/St. Martin's Press, 2013), and CASE OF A LIFETIME (Palgrave MacMillan/St. Martin's Press, 2008), focus on criminal defense ethics, as do most of my scholarly articles. I regularly present on criminal defense ethics at public defender and criminal defense lawyer trainings, continuing legal education programs, and academic meetings and conferences throughout the United States and abroad.

Criminal defense lawyers frequently seek my consultation regarding ethical issues—former students and fellows, state and federal public defenders, capital defenders, members of the American Board of Criminal Lawyers (of which I am a member), members of the National Association of Criminal Defense Lawyers (of which I am a member), and others. On approximately ten occasions, I have provided a formal expert opinion, and been qualified as an "expert." I am selective about offering my services as an expert because of the demands of my fulltime position at Georgetown, which includes classroom teaching, a busy court/trial schedule, and research and writing (as well as various institutional responsibilities). I have written expert letters and/or reports /both criminal and civil cases.

I am familiar with the ABA RULES OF PROFESSIONAL CONDUCT, THE ABA STANDARDS FOR CRIMINAL JUSTICE: THE DEFENSE FUNCTION, THE ABA GUIDELINES FOR THE APPOINTMENT AND PERFORMANCE OF DEFENSE COUNSEL IN DEATH PENALTY CASES, the ABA's Center for Professional Responsiblity's Ethics Opinions, the National Association of Criminal Defense Lawyers' Ethics

Advisory Committee's Ethics Opinions, and what I regard as the leading treatise on criminal defense practice, Anthony Amsterdam and Randy Hertz's TRIAL MANUAL FOR THE DEFENSE OF CRIMINAL CASES (American Law Institute, 6th ed., 2017). I have also reviewed the latest edition of the PENNSYLVANIA RULES OF PROFESSIONAL CONDUCT to consider the issues here.

### The Rules of Professional Conduct are Client-Centered

The PENNSYLVANIA RULES OF PROFESSIONAL CONDUCT (2021), which are derived from the American Bar Association's MODEL RULES OF PROFESSIONAL CONDUCT, first adopted in 1983, are "rules of reason" which should be "interpreted with reference to the purposes of legal representation and of the law itself." Scope [14]. The central purpose of legal representation is to assist a client in the resolution of a legal matter and advance the client's interests. The first sentence in the Preamble states: "A lawyer, as a member of the legal profession, is a *representative of clients*, an officer of the legal system and a public citizen having a special responsibility for the quality of justice." [emphasis added]. It is not coincidental that the first lawyerly responsibility listed in the Preamble relates to clients. The Rules are client-centered: a lawyer's competent, diligent, and "zealous" representation of clients is his/her primary professional responsibility. Preamble, [2], [4].

The Preamble to the RULES also states that "[m]any of a lawyer's professional responsibilities are prescribed in the Rules of Professional Conduct, as well as substantive and procedural law. However, a lawyer is also guided by personal conscience and the approbation of professional peers." Preamble [7]. The Preamble recognizes that, "[i]n the nature of law practice…conflicting responsibilities are encountered" and "many difficult issues of professional discretion can arise." Preamble [9]. Importantly, the Preamble instructs that "[s]uch issues must be resolved through the exercise of sensitive professional and moral judgment guided by the basic principles underlying the Rules," which include "the lawyer's obligation zealously to protect and pursue a client's legitimate interests, within the bounds of the law…." *Id*.

### Conflict of Interest

A. The facts here

For purposes of brevity, I will incorporate herein the more detailed factual description of the conflicts in this case as contained in the *Motion to Dismiss the Indictment or Vacate the Conviction* filed by counsel for Mr. Dougherty. The conflicts of interest are: (1) Mr. Dougherty's counsel was representing Comcast at the same time as counsel was representing Mr. Dougherty, notwithstanding directly opposing interests; (2) One of Mr. Dougherty's lawyers allegedly participated in the same embezzlement scheme as Mr. Dougherty, creating a "personal" conflict of interest as well as becoming both a witness (indeed, an unindicted co-conspirator) and a lawyer, which is prohibited by Rule 3.7 of the *Pennsylvania Rules of Professional Conduct*; and (3) Mr. Dougherty's lead attorney and the attorney's firm were representing IBEW Local 98, an alleged victim of Mr. Dougherty's conduct with regard to the embezzlement charge, at the same time as they were representing Mr. Dougherty.

B.  <u>The Relevant Rules of Professional Conduct</u>

Like the other rules in the *Pennsylvania Rules of Professional Conduct*, the rules relating to conflict of interest are client-centered. The central rule on conflict of interest—and the Rule that most applies here—is Rule 1.7, Conflict of Interest: Current Clients. The Rule states:

1. Except as provided in paragraph (b), a lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if:
    1. the representation of one client will be directly adverse to another client; or,
    2. there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer.
2. Notwithstanding the existence of a concurrent conflict of interest under paragraph (a), a lawyer may represent a client if:
    1. the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client;
    2. the representation is not prohibited by law;
    3. the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal; and,
    4. each affected client gives informed consent.

It is important to note that the language in Part 1 of the Rule is prohibitive, rather than a matter of attorney discretion: "A lawyer *shall not* represent a client if the representation involves a concurrent conflict of interest." [emphasis added] The language in Part 2 of the Rule is permissive—notwithstanding a concurrent conflict of interest, "a lawyer *may* represent a client"—under certain delineated circumstances, so long as "each affected client gives informed consent."

There was no informed consent in this case, nor to my knowledge was there any meaningful discussion with the client about any of the conflicts of interest, the client's right to have unconflicted counsel, or the client's right to seek a second opinion from counsel not involved in his representation (which is the preferred approach to effective counseling).

The key concern of conflict-of-interest rules is that the client has counsel who is *loyal* to the client and thus exercises *independent judgment*. As it states in the Comment to Rule 1.7, "Loyalty and independent judgment are essential elements in the lawyer's relationship to a client." PA. Rules of Prof'l Conduct, R. 1.7, Comment 1. If the lawyer has conflicted loyalties—either because of another client or the attorney's own interests—the lawyer should not undertake the representation of the client unless the client is fully informed of the conflict(s) and consents to it.

There are two ethical responsibilities that are compromised when there is a conflict of interest: lawyer-client confidentiality and the duty of diligence/zeal. *See* PA Rules of Prof'l Conduct Rules 1.6 (Confidentiality of Information); 1.3 (Diligence). The requirement of zealous advocacy is spelled out in the Comment to Rule 1.3: "A lawyer should pursue a matter on behalf

4

of a client despite opposition, obstruction or personal inconvenience to the lawyer, and take whatever lawful and ethical measures are required to vindicate a client's cause or endeavor. A lawyer must also act with commitment and dedication to the interests of the client and with zeal in advocacy upon the client's behalf." PA Rules of Prof'l Conduct, R. 1.3, Comment 1. Moreover, Rule 1.1 (Competence)—the most basic professional responsibility—may also be compromised when there is a conflict of interest.

The dilemma created by a conflict of interest invariably leads conflicted counsel to favor one client over another—or create a risk that this will happen. A lawyer representing more than one client in a matter of mutual interest will necessarily violate one client's right to confidentiality to be zealous on behalf of the other client, or will be less zealous on behalf of one client to maintain confidentiality on behalf of the other.

The Comments to Rule 1.7 require the lawyer to undertake a number of steps in the face of a conflict (which is defined as "a *significant risk* that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer" [emphasis added]).  PA Rules of Prof'l Conduct, R. 1.7.  In the face of a conflict of interest, Comment 2 of the Rule requires the lawyer to identify the affected client or clients, determine whether there is a risk of the representation being limited by competing responsibilities, decide whether the representation may be undertaken despite the conflict, consult with the client, and obtain the client's informed consent. PA Rules of Prof' Conduct, R. 1.7, Comment 2.

To my knowledge, none of these steps were taken by previous counsel in this case.  It is thus not surprising that Mr. Dougherty might feel betrayed by his previous counsel, and might feel that his interests were not fully defended thus undermining his right to counsel and due process of law was violated. As it states in Comment 6 to Rule 1.7:

> Loyalty to a current client prohibits undertaking representation directly adverse to that client without that client's informed consent. Thus, absent consent, a lawyer may not act as an advocate in one matter against a person the lawyer represents in some other matter, even when the matters are wholly unrelated. The client as to whom the representation is directly adverse is likely to feel betrayed, and the resulting damage to the client-lawyer relationship is likely to impair the lawyer's ability to represent the client effectively. In addition, the client on whose behalf the adverse representation is undertaken reasonably may fear that the lawyer will pursue that client's case less effectively out of deference to the other client, i.e., that the representation may be materially limited by the lawyer's interest in retaining the current client. Directly adverse conflicts can also arise in transactional matters. For example, if lawyer is asked to represent the seller of a business in negotiations with a buyer represented by the lawyer, not in the same transaction but in another, unrelated matter, the lawyer could not undertake the representation without the informed consent of each client.

C. Unwaivable conflicts of interest

Ordinarily, consistent with the client-centered nature of the *Rules of Professional Conduct*, clients may consent to representation notwithstanding a conflict. *See* Rule 1.7, Comment 14. However, under the *Pennsylvania Rules*, some conflicts are "nonconsentable," meaning that the lawyer involved cannot properly ask for such an agreement or provide representation even when a client consents. *Id.* Consentability is typically determined by considering whether the interests of the clients will be adequately protected if the clients are permitted to give their informed consent to representation burdened by a conflict of interest. PA Rule of Prof'l Conduct, Rule 1.7, Comment 15. Thus, representation is prohibited if in the circumstances the lawyer cannot reasonably conclude that the lawyer will be able to provide competent and diligent representation.

Although it is my view that most conflicts of interest can be waived with informed consent, in addition to the notion of "nonconsentability" in the Pennsylvania Rules, there is also the matter of prudence. Lawyers should exercise sound, prudential judgment in counseling a client to waive a conflict. It would simply not be prudent for a client to waive some conflicts of interest—perhaps especially in a criminal where a person's freedom and reputation are on the line—and counsel should advise the client accordingly.

This case is one such case. There were simply too many competing demands on the lawyer's loyalty to assure Mr. Dougherty that *his* legitimate interests would be pursued among all others, and his confidences preserved. Examples abound. For instance, Mark Reilly, the senior vice president for government at Comcast, testified about negotiations over the "side agreement" that was the subject of the claims against Mr. Dougherty involving Comcast during the negotiation to renew the franchise agreement with the city. IBEW Local 98 and Comcast were trying to put the side agreement in writing and Ballard was hired to draft the written agreement. Mr. Dougherty is charged with criminal activity related to those negotiations.

The conflict of interest is especially pernicious in previous counsel's firm representing IBEW Local 98, a prime victim of the alleged embezzlement in this case, at the same time counsel was representing Mr. Dougherty. In other words, Mr. Dougherty's counsel (which includes counsel's firm under Rule 1.10 of the *Pennsylvania Rules of Professional Conduct*) was representing both the alleged thief and the primary alleged victim of the theft.

These facts are similar to those in the case of United States v. Schwarz, 283 F.3d 76 (2d Cir. 2002), in which a lawyer representing a police union (which had interests separate and apart from any individual member, including defending against a civil lawsuit brought by the alleged victim in the criminal matter) simultaneously represented a member of the union in a serious and high-profile police brutality prosecution. The Second Circuit held that the conflict of interest in the Schwarz case was "actual," "unwaivable," and adversely affected counsel's performance creating a violation of the Sixth Amendment right to effective assistance of counsel.

It is important to note that the conviction was vacated and a new trial ordered in *Schwarz*, notwithstanding the defendant having executed a waiver of the conflict of interest in that case—which did not happen in the Dougherty case, because there was not even a conversation between lawyer and client about the various conflicts. The Court in *Schwarz* held that such a waiver was ineffective in view of the seriousness of the conflict. Importantly, the Court in *Schwarz* mentions the disturbing scenario that exists in the case at bar: that among the conflicts of interest faced by counsel is him being an unindicted co-conspirator. As the *Schwarz* Court notes, citing another case: "'[W]e must assume that counsel's fear of, and desire to avoid, criminal charges, or even the reputational damage from an unfounded but ostensibly plausible

6

accusation, will affect virtually every aspect of his or her representation of the defendant.'" The Court explains that when an attorney has a personal conflict of interest counsel's "'counsel's "[a]dvice as well as advocacy [are] permeated by counsel's self-interest, and no rational defendant would knowingly and intelligently be represented by a lawyer whose conduct was guided largely by a desire for self-preservation….'" *Id*.

Although the Court in *Schwarz* notes that specific alternative trial strategies were not employed because of trial counsel's conflict of interest in representing the police union as well as Mr. Schwarz, by my reading, it does not *require* a showing that specific alternative strategies were not undertaken because of a conflict.

It is my strong view as a matter of ethics, and in line with the Court's ruling in *Schwarz*, that Mr. Dougherty should not have gone to trial with such conflicted counsel.

**A Comment on Prosecutorial Ethics**

I note that, according to the defense motion on this matter, at least two of Mr. Dougherty's conflicts of interest were known to the Government prior to the prosecution. This, to me raises an additional ethical concern.

There are special ethical rules for prosecutors, because of their unique professional responsibility to ensure that "justice" is done. As it states in Comment 1 of Rule 3.8 of the *Pennsylvania Rules of Professional Conduct*, "A prosecutor has the responsibility of a minister of justice and not simply that of an advocate. This responsibility carries with it specific obligations to see that the defendant is accorded procedural justice…."

The right to counsel is essential to "procedural justice," as counsel is key to asserting every other right to which an accused is entitled. Although the text of Rule 3.8 does not specifically mention the prosecutor's duty to ensure that an accused has conflict-free counsel, it does note the prosecutor's duty with regard to the accused having *counsel* consistent with the Sixth Amendment: "The prosecutor in a criminal case shall…make reasonable efforts to assure that the accused has been advised of the right to, and the procedure for, obtaining counsel and has been given reasonable opportunity to obtain counsel." Pa. Rule of Prof'l Conduct, 3.8(b).

It is my opinion that both the defense and prosecution failed to abide by their ethical responsibilities to Mr. Dougherty in this case, tainting the prosecution and raising serious questions about basic fairness.

One further thought. The fact that Mr. Dougherty now has new counsel is heartening, but does not fully repair what has gone before. His first trial and the pending trial have a good deal in common. It is difficult to identify the ways in which Mr. Dougherty's counsel's conduct at the previous trial—the actions counsel took and did not take—might affect this next trial. Effective conflict-free counsel would certainly have been mindful of how the record in the first trial might be used in the second one.

If I can be of further assistance, please feel free to call upon me.

Sincerely,

*Abbe Smith*

Abbe Smith
Scott K. Ginsburg Professor of Law