# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| v. : | CRIMINAL ACTION NO. 19-64-1, -3 |
| : | |
| JOHN DOUGHERTY and : | |
| BRIAN BURROWS : | |

## MEMORANDUM OPINION

**SCHMEHL, J. /s/ JLS**                                                                                                   **August 1, 2024**

This Court sentenced Defendant Brian Burrows for, among other crimes, his part in a conspiracy to embezzle the assets of the union that he helped run, the International Brotherhood of Electrical Workers Local Union 98 ("Local 98" or the "Union"). (Judgment, ECF No. 762.) The Court later sentenced Defendant John Dougherty for similar crimes, as well as for public corruption charges that did not involve Mr. Burrows. (Judgment, ECF No. 778.)[1] Not long before Mr. Burrows's sentencing, counsel for Local 98 submitted a letter requesting that the Court impose upon Defendants[2] $1,525,288.75 in restitution for the legal and auditors' fees incurred by the Union in connection with the Government's investigation and prosecution. This claimed amount reflects loss additional to Defendants' restitution amounts for embezzlement of Union assets and underpayment of taxes. Defendants opposed this request, and given the factual and legal complexity of the issue, the Court reserved the issue for a later determination. On July 8, 2024,

---

[1] The Court assumes familiarity with the facts of this case. (*See, e.g.*, Mem. Op., ECF No. 439 (discussing public corruption trial); Mem. Op., ECF No. 747 (discussing embezzlement trial).)

[2] "Defendants" in this Memorandum refers to only Mr. Dougherty and Mr. Burrows. Their other co-Defendants, with the exception of Anthony Massa, were sentenced before the Union raised the present issue.

the Court held a restitution hearing and ordered additional information from certain parties. For the reasons set forth below, the Court now sets forth categories of professional fees that the Union may or may not recover and orders the parties to submit a revised request based on this guidance.

The Mandatory Victims Restitution Act ("MVRA") requires defendants convicted of certain crimes to pay victims restitution for "necessary child care, transportation, and other expenses incurred during participation in the investigation or prosecution of the offense or attendance at proceedings related to the offense." 18 U.S.C. § 3663A(b)(4). Courts in other circuits, and at least one sibling court within the Third Circuit, have held that this provision's use of "necessary . . . other expenses" includes, under the appropriate circumstances, attorneys' fees and other professional fees. *United States v. Dodd*, 978 F. Supp. 2d 404, 422–23 & n.15 (M.D. Pa. 2013) (gathering cases). As derived from section 3663A(b)(4), the appropriate circumstances are as follows: "(1) such expenses were necessary; (2) they were incurred while participating in the investigation, prosecution, or attendance at proceedings regarding the offense; (3) they were incurred by a victim as defined by the MVRA; and (4) they do not require unduly complicated determinations of fact." *Id.* at 423 (citing *United States v. Gupta*, 925 F. Supp. 2d 581, 584 (S.D.N.Y. 2013)). The Government bears the burden of establishing, by a preponderance of the evidence, the proper amount of restitution. 18 U.S.C. § 3664(e).

Many of the above considerations are not in dispute here. First, the Union represented to the Court (and, in support, provided over 1,000 pages of invoices) that the fees it seeks arose from the Government's investigation and prosecution of this criminal matter. Subject to a few exceptions discussed below, the Union's request therefore comports with the U.S. Supreme Court's narrow interpretation of the statute as only applying to "government investigations and

criminal proceedings." *Lagos v. United States*, 584 U.S. 577, 585 (2018). Second, the MVRA defines a "victim" as follows:

> [A] person directly and proximately harmed as a result of the commission of an offense for which restitution may be ordered including, in the case of an offense that involves as an element a scheme, conspiracy, or pattern of criminal activity, any person directly harmed by the defendant's criminal conduct in the course of the scheme, conspiracy, or pattern.

18 U.S.C. § 3663A(a)(2). The parties, in their letters and at the restitution hearing, did not appear to dispute that the Union is such a victim, and the Court would not find otherwise.[3] Third, the Court bears in mind that the restitution process should not be "unduly complicated," *Dodd*, 978 F. Supp. 2d at 423, especially given the U.S. Supreme Court's concern with the "significant administrative burdens" that arise from "invit[ing] disputes as to whether particular expenses . . . were in fact 'necessary,'" *Lagos*, 584 U.S. at 582.

What remains in dispute, then, is whether the fees submitted by the Union were "necessary." The Court finds that, in large part, they were. Courts differ slightly, however, when

---

[3]   The Third Circuit has favorably cited a two-pronged test to determine whether an entity was "directly and proximately harmed" for purposes of section 3663A(a)(2):

> *First*: Restitution should not be ordered in respect to a loss which would have occurred regardless of the defendant's conduct. . . .
>
> *Second*: Even if but for causation is acceptable in theory, limitless but for causation is not. Restitution should not lie if the conduct underlying the offense of conviction is too far removed, either factually or temporally, from the loss.

*United States v. Fallon*, 470 F.3d 542, 549 (3d Cir. 2006) (quoting *United States v. Vaknin*, 112 F.3d 579, 589 (1st Cir. 1997)). As this Court has explained elsewhere, Defendants misused Local 98's assets to engage in public corruption and embezzlement. This is a quintessential case of fees arising directly and necessarily from Defendants' conduct; but for their actions, the Union would not have had to hire attorneys and auditors to engage with federal criminal investigators. Nor were the Union's losses factually or temporally too far removed from Defendants' conduct, as the requested fees arose solely from the Government's investigation into that conduct.

parsing necessary expenses from unnecessary ones. Mr. Burrows cites to *United States v. Yu* for its holding that the following expenses, *inter alia*, were not necessary: "fees for analyses of insurance coverage"; "activities by counsel that predate contact with the Department of Justice"; "fees for attending and reporting on criminal proceedings"; and "witness preparation for trial," as this lattermost work was "the responsibility of the government prosecutor, not private counsel." *Yu*, 2024 WL 943913, at *2 (D. Mass. Mar. 5, 2024) (quoting and citing *United States v. Chan*, 2019 WL 3975579, at *5–8 (D. Mass. Aug. 22, 2019)), *aff'd*, 981 F.3d 39 (1st Cir. 2020). The *Yu* and *Chan* courts agreed, however, that fees incurred for the following work *were* necessary: "[c]ompiling and [p]roducing [d]ocuments to the Government"; "preparation for interviews by the government prosecutors"; and only 20 percent of the requested fees for seeking restitution, as "the government has the burden of seeking and establishing a claim for restitution." *Id.*

The Second Circuit has likewise held that restitution may include attorneys' fees for "work responding to subpoenas and document requests from the" U.S. Attorney's Office. *United States v. Afriyie*, 27 F.4th 161, 173 (2d Cir.), *cert. denied*, 143 S. Ct. 326 (2022). The *Afriyie* court differed from the *Yu* and *Chan* courts, however, when it also permitted fees for "the law firm's work preparing [victim] witnesses to testify at [the defendant's] criminal trial" and "the law firm's representation of [the victim] in connection with post-verdict restitution proceedings." *Id.* As to witness preparation for trial, the court found that this work fell within the limits set forth by section 3663A(b)(4) and *Lagos*, and the court upheld the district court's determination that this work was "necessary" to the victim's participation in the prosecution. *Id.* As to post-verdict restitution proceedings, the court found that because restitution "occurs during the sentencing phase of a federal criminal trial," expenses related to those proceedings "are 'incurred during participation in the . . . prosecution of the offense or attendance at proceedings related to the offense' and so may

be recovered to the extent the district court finds them necessary." *Id.* at 174 (quoting 18 U.S.C. § 3663A(b)(4)).  And because the law firm's "restitution recovery work for [the victim] was quite limited[,] . . . [t]he district court acted within its discretion in allowing [the victim] to recover for these expenses." *Id.*

Here, the parties appear to agree that the operative start date of the criminal investigation conducted by the Department of Justice is when Federal Bureau of Investigation agents executed search warrants on various Union and personal properties on August 5, 2016.  It was at that point that Defendants and the Union knew they were under investigation and needed to hire attorneys and other professionals to defend against or assist with the investigation.  Any professional fees incurred before that date are not recoverable.[4]

As set forth above, courts from various jurisdictions agree that fees incurred in preparing the victim's employees for interviews with federal authorities are generally necessary and, therefore, recoverable.  So, too, are fees related to responding to Government investigators' subpoenas.  The Court will modify the *Yu* and *Chan* courts' approach to the representation of individuals testifying at trial as Government witnesses, however.  The fact that Government attorneys should play a significant role in such witnesses' preparation does not render private representation wholly unnecessary—at least not according to *Afriyie*—but this is especially true where witnesses have not secured immunity in exchange for their testimony.  The Court therefore finds that the Union may recover fees for trial preparation for witnesses that testified without

---

[4]  The Court provides this instruction for completeness.  From the Court's review of the over 1,000 pages of invoices submitted by the Union, it does not appear that any fees arise from work before this date.

immunity.[5]  Conversely, the Union shall exclude from its request all fees for interviews, interview preparation, and trial preparation that postdate a client's receipt of immunity, as such fees are unnecessary under a narrow construction of the MVRA.[6]

Next, the Court notes that counsel for the Union claims to have declined to seek fees for the following work:  (1) responding to the October 2020 execution of search warrants, which led to charges in a criminal matter that did not involve Mr. Burrows (Decl. of William T. Josem ¶ 6, ECF No. 760-1); (2) conducting an internal investigation through Ernst & Young (*id.* ¶ 13); (3) investigating claims under the Union's insurance policy (*id.* ¶ 15); and (4) pursuing the present restitution claim (*id.* ¶ 28 n.2).  The Court acknowledges counsel for the Union's efforts in compiling voluminous invoices but notes that a few of the above items appear to have slipped in. For example, certain Post & Schell, P.C. invoices for work on behalf of David Clapcich and Lisa Ketterlinus indicate that the work concerned Ernst & Young's internal investigation.  (*See, e.g.*, ECF No. 758-8 at 44, 46, 48, 51; ECF No. 758-20 at 51–53, 55, 59, 61, 64.)  The *Lagos* court expressly excluded internal investigations from the ambit of the MVRA, 584 U.S. at 584–85, and

---

[5]     This holding applies in kind to witnesses who were called by the defense.  As discussed above, courts agree that victims may recover fees for employees' interviews with authorities, as such fees are "incurred during participation in the investigation or prosecution of the offense . . . ." 18 U.S.C. § 3663A(d)(4).  As far as this Court can tell, no court has grounded this rule on the extent to which the employee's information *benefits* the Government's case; fees are recoverable regardless of whether an employee becomes a key witness for the prosecution.  This Court therefore sees no basis to hold that simply because a Union employee was ultimately called by the defense, that employee was no longer "participat[ing] in the investigation or prosecution of the offense," especially given that all relevant defense witnesses here were also interviewed by the authorities at least once.  The Union may therefore recover fees for employees who became defense witnesses, with the partial exception of Tara Chupka, who is subject to the Court's additional ruling about certain fees that postdate her receipt of immunity.

[6]     Responding to Government document requests to a client, however, is not the responsibility of Government attorneys, and a grant of immunity does not remove the need to review document productions for privilege and other concerns.  Fees for this work, then, are recoverable regardless of a grant of immunity.

the Union should therefore eliminate all entries of this kind from its request. Similarly, a few entries appear to relate to investigating the Union's potential claims against its insurer. (*See, e.g.*, ECF No. 758-6 at 16, 75–80, 94–95.) Again, the *Lagos* court held that fees must relate to criminal proceedings, not civil ones, 584 U.S. at 581, and the Union should therefore eliminate all entries related to reviewing insurance policies, preparing potential civil claims against the Union's insurer, or any other work dealing with insurance coverage. Certain entries also reflect work done in preparation for the recent restitution proceedings. (*See, e.g.*, ECF No. 758-5 at 11.) As in *Chan*, although the Government bears the burden of establishing restitution, this Court permitted counsel for the Union to participate in these proceedings. The Court will therefore adopt the *Chan* court's approach of permitting 20 percent of fees for this work. The Union shall isolate all relevant entries so that this 80 percent reduction can be applied.

Finally, whatever the Court determines the ultimate amount to be, Defendants will bear a reduced portion of it. First, Mr. Burrows was not implicated in the public corruption charges, yet some of the presently requested fees appear to relate to work on that portion of this case. The Court finds that disentangling public corruption entries from embezzlement ones would be extremely burdensome to the parties, if not impossible given the existence of hybrid entries relating to both. Instead, the Court will start by reducing Mr. Burrow's restitution to 50 percent of the total allowable fees. Although 96 of the Indictment's 116 charges (roughly 83 percent) related to the embezzlement case that involved Mr. Burrows, those raw numbers do not reflect the full picture— namely, that significant effort (and therefore professional fees) was expended roughly equally on both portions of the Indictment. Indeed, the public corruption trial, though consisting of fewer counts, took longer to complete than the embezzlement trial. The Court, having presided over

both portions of the Indictment, finds that a 50–50 split appropriately approximates the fees attributable to the embezzlement case (and, therefore, to Mr. Burrows).

Second, both Defendants were acquitted on a limited number of charges, and at least some courts acknowledge that "to hold a defendant responsible for restitution related to offenses for which she was acquitted would essentially be to punish that defendant for acquitted conduct." *Yu*, 2024 WL 943913, at *4 (citing *United States v. Steward Healthcare Sys. LLC*, 2023 WL 6626547, at *2 (D. Mass. Oct. 11, 2023)). Of the Indictment's 116 counts, 91 applied directly to Mr. Dougherty. Across two trials, two juries convicted Mr. Dougherty of 74 counts and acquitted him of 6 counts; the Government voluntarily dismissed the remaining 11 counts. (Judgment, ECF No. 778.) Of the 116 total counts, 96 related to the embezzlement case involving Mr. Burrows, but only 24 were charged to him directly. A jury convicted him of 21 counts and acquitted him of 3 counts. (Judgment, ECF No. 762.)

Unlike the *Yu* court—which reduced the defendant's restitution to one-twelfth of the allowable fees in order to reflect the defendant's conviction on only one of twelve counts—this Court finds that determining an appropriate proportion is not as simple as dividing convictions by total charges. The *Yu* court was dealing with distinct, substantive charges of possession of stolen trade secrets. 2024 WL 943913, at *4. This case, by contrast, involves Defendants convicted of conspiracy. It is therefore inaccurate to say that only 24 of the 96 embezzlement counts applied to Mr. Burrows; rather, many of the ostensibly unrelated counts were, in fact, tied up in the conspiracy in which Mr. Burrows played a key role. The same is true of the 25 counts seemingly unrelated to Mr. Dougherty. On the other hand, Defendants' coconspirators did not plead guilty to every charge brought against them—yet another reason that simple division is unworkable here. The Court therefore finds that a 10 percent reduction for each Defendant appropriately

acknowledges their acquittal of a limited number of charges without unduly crediting them for charges that, though levied against other individuals, nonetheless arose from conspiracies for which Defendants were convicted. In the end, Mr. Dougherty will pay 90 percent of the total allowable fees, and Mr. Burrows will pay 40 percent (as a result of the initial 50 percent reduction and subsequent 10 percent reduction).[7]

To efficiently effectuate the foregoing, Counsel for Defendants and the Union shall meet and confer as to the classification of fees according to the Court's instructions. The Court summarizes its above holdings as follows:

    1.    The Union shall eliminate from its request any professional fees incurred before August 5, 2016;

    2.    The Union may recover fees related to responding to Government investigators' document requests;

---

[7] Throughout the parties' dispute as to the restitution issue, Defendants have raised concerns about the equity of imposing restitution for the Union's professional fees on just Defendants and not certain co-Defendants who pleaded guilty and were sentenced prior to the Union's request. The Court acknowledges this position but has been unable to find—and Defendants have not provided—authority supporting the position that if the Government or a victim failed to request restitution as to some defendants, they cannot request it as to others.

Similarly, Defendants argued that the Union was less-than-diligent in pursuing reimbursement from its insurer and, as a result, is now seeking to recover—improperly, in Defendants' view—from Defendants instead. It is not this Court's role to review the Union's litigation strategy in complicated proceedings before a different judge in a different forum. Even if Defendants were correct that the Union should have recovered more money from its insurer, however, that fact would not reduce the amount of restitution owed; Defendants would simply be paying a larger portion of that restitution amount to the insurer instead of the Union. *See* 18 U.S.C. § 3664(f)(1)(B) ("In no case shall the fact that a victim has received or is entitled to receive compensation with respect to a loss from insurance or any other source be considered in determining the amount of restitution."); *id.* § 3664(j)(1) ("If a victim has received compensation from insurance or any other source with respect to a loss, the court shall order that restitution be paid to the person who provided or is obligated to provide the compensation, but the restitution order shall provide that all restitution of victims required by the order be paid to the victims before any restitution is paid to such a provider of compensation.").

3.     The Union may recover fees related to interviewing (and preparing to interview) with the authorities, subject to paragraph 6 below;

4.     The Union may recover fees for trial preparation for employees that testified as Government witnesses, subject to paragraph 6 below;

5.     The Union may recover fees for trial preparation for employees that testified as defense witnesses, subject to paragraph 6 below;

6.     The Union shall exclude from its request all fees for interviews, interview preparation, and trial preparation that postdate a client's receipt of immunity;

7.     The Union shall exclude from its request all fees related to Ernst & Young's internal investigation;

8.     The Union shall exclude from its request all fees related to reviewing insurance policies, preparing potential civil claims against the Union's insurer, or any other work dealing with insurance coverage;

9.     The Union shall identify all fees related to litigating the present restitution dispute so that the Court can apply an 80 percent reduction;

10.     Counsel for Defendants and the Union shall meet and confer as to the classification of fees according to the above instructions so that any remaining disputes can be resolved with specificity; and

11.     Of the allowable fees that the above approach identifies, Mr. Burrows shall owe 40 percent as restitution, and Mr. Dougherty shall owe 90 percent as restitution.

A corresponding order accompanies this memorandum.