**UNITED STATES OF AMERICA,**

v.

**JOHN DOUGHERTY**

CRIMINAL NO: 2:19-cr-00064-JLS-1

## ORDER

**AND NOW**, this _____ day of _____, 2026, upon consideration of Defendant John Dougherty's Emergency Motion For Reconsideration of this Court's Denial of Defendant Doughtery's Motion For Compassionate Release pursuant to 18 U.S.C. § 3582(c)(1)(A), the response of the United States, and the record as a whole, the Motion is hereby **GRANTED**.

**IT IS FURTHERED ORDERED** that an Evidentiary Hearing will be conducted by this Court as soon as reasonably practicable based on transporting John Dougherty (Federal Inmate Number 77031-066) to Philadelphia for purposes of testifying.

BY THE COURT:

_____,
HONORABLE JEFFREY L. SCHMEHL

**UNITED STATES OF AMERICA,**

v.

**JOHN DOUGHERTY**

CRIMINAL NO: 2:19-cr-00064-JLS-1

## DEFENDANT'S EMERGENCY MOTION FOR RECONSIDERATION OF THE DENIAL OF DEFENDANT'S REQUEST FOR COMPASSIONATE RELEASE

Defendant John Dougherty, Inmate Number 77031-066, by and through undersigned counsel, hereby requests Emergency Reconsideration of and an Evidentiary Hearing regarding this Court's denial of Dougherty's Motion For Compassionate Release (the "Motion"), on the following grounds:

1.      In denying Doughtery's Motion, this Court cited four circumstances militating against granting the relief, as follows:

  a) **One basis was that the trust fund supporting Cecelia Dougherty's care has not yet been depleted.** *While that is correct, the trust funds have been substantially diminished and continue to deteriorate. As of June 2024, the trust fund had a balance of $641,741. At the time of filing of the Motion for Compassionate Release, there remained $294,877.95. As of this filing five months later, the balance remaining is $201,881.73. (See Exhibit "1" attached*

*hereto.) That the trust funds will be completely depleted is not speculative, it is a certainty.*

b) **Another basis of the Court's denial was that the coverage to be provided to Cecelia by government programs such as Medicare are speculative.** *Unfortunately, while the exact amount of such coverage may be uncertain, what is not speculative is that there is NO WAY Medicare will provide the same level of care that Cecelia now receives (and that John Dougherty is ideally suited to provide). Dougherty desperately urges this Court to allow counsel to present expert witness testimony (Dr. Tim Olson, whose initial report was attached to the original Motion as exhibit "C") on this very point demonstrating that a substantial shortfall of Medicare services is a certainty once the trust funds run out and that Cecelia will suffer greatly when that occurs.*

c) **A third basis of the Court's denial was that, while Cecelia's daughters may not be available on a full-time basis to care for her, the daughters can provide a meaningful degree of assistance.** *With all due respect, the only way to truly know what the daughters are in a position to do is to hear from the daughters themselves, with live testimony, subject to cross-examination by the Government and this Court. As reflected in their affidavits accompanying the Motion For Compassionate Release (exhibits "F" and "G") the daughters are completely stressed out because of overwhelming efforts extended to Cecelia for the past six years, have neglected their personal needs in meaningful ways, and physically and emotionally just simply cannot continue to do so. It is also important to bear in mind that, in years past, Cecelia's father (Joseph Conroy)*

*provided assistance, but he died on November 10, 2025, while the Motion was pending.*

d) **Finally, the Court noted the serious circumstances surrounding Dougherty's criminal convictions and the need for punishment that has been adjudged.** *On this issue, Counsel would respectfully make a few points*:

    i. *John Dougherty has already served 16 months of his sentence, and is NOT asking for the elimination of his punishment. Rather, Mr. Dougherty compassionately asks this Court to allow him to continue to be punished with home confinement with the imposition of any and all terms this Court deems appropriate so that, while still being punished, he can aide his wife. As such, home confinement is still "punishment."*

    ii. *Further, punishment comes in many forms beyond incarceration or home confinement. Psychological punishment can sometimes be the most severe form and may sometimes even rise to the level of inhumane. Dougherty's inability to be by his wife's side, knowing he can help her, care for her, extend whatever life she may have remaining, knowing her only contentment obtains when he is there, is more psychologically painful then any confinement will ever be in a minimum-security camp environment (Lewisburg) - - where most of the inmates sit around playing cards and figure out how to abscond with extra food from the mess hall. It is respectfully*

*submitted the psychological torture in this circumstance is "cruel and unusual."*

iii. *The Compassionate Release statute as amended by the <u>First Step Act</u> 18 U.S.C. § 3582 is a profound expression of the United States Congress to authorize Courts to prevent what otherwise could be considered inhumane circumstances. John Dougherty is not a mass murderer, rapist, or drug dealer killing innocent American youths. He is a first time, non-violent white-collar offender who got carried away when he sought to help others. (Much of his "piggy bank" offenses were for money conferred on others.) By virtue of experiencing the criminal justice process during the last 10 years, Dougerty's life has been ruined, he has been rendered penniless, has been humiliated on a nationwide basis, and is now and will remain altogether a cast-off from society. This is precisely where Congress wanted "compassion."*

2. Counsel respectfully urges in the strongest terms and therefore asserts that an evidentiary hearing will demonstrate---far more than simply words written on a page---the "extraordinary and compelling" basis upon which compassionate relief should be granted, and would like to present the Court (and the DOJ) with the following witnesses:

- William McSwain, Esquire - (Former U.S. Attorney and Prosecutor of John Dougherty.)

- John Dougerty - (Defendant/Inmate)

- Erin Dougherty - (Daughter)

- Tara Chupka - (Daughter)

- Dr. Tim Olson - (What Medicare will not provide)

- Donna Gentile O'Donnell Ph. D. - (an expert in compassionate release of prisoners to serve as care-takers of the disabled and author of *Providers of Last Resort*, Camino Books, 2005).

In this regard, Counsel submits as Exhibit 2 the handwritten message from John Dougherty directly to Judge Schmehl the reasons underlying his plea for reconsideration and an evidentiary hearing.

**WHEREFORE**, Counsel respectfully requests an immediate reconsideration of this Court's denial of Defendant Dougherty's Motion For Compassionate Release and urges the scheduling of a hearing at which the Court may consider live evidence as soon as inmate Dougherty can be transported from Lewisburg Federal Penitentiary to the Philadelphia Federal Detention Center.

<div style="margin-left: 50%;">

Respectfully submitted,

**BOCHETTO & LENTZ, P.C.**

</div>

Dated: <u>February 5, 2026</u>        By:    */s/ George Bochetto*
GEORGE BOCHETTO, ESQUIRE
PA ID No. 27783
gbochetto@bochettoandlentz.com
1524 Locust Street
Philadelphia, PA 19102
215-735-3900
215-735-2455 fax
*Attorney for Defendant, John Dougherty*

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | CRIMINAL NO: 2:19-cr-00064-JLS-1 |
| v. | |
| **JOHN DOUGHERTY** | |

## DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF EMERGENCY MOTION FOR RECONSIDERATION OF THE DENIAL OF DEFENDANT'S REQUEST FOR COMPASSIONATE RELEASE

Reconsideration of this Court's denial of Dougherty's Motion for Compassionate Release (ECF No. 871) ("Motion") and an evidentiary hearing is warranted because the factual circumstances underlying the Court's decision have materially evolved while the Motion was pending and because the existing record does not even begin to fully capture the present realities bearing on whether extraordinary and compelling reasons exist.

Since the Court's ruling, the trust funds supporting Cecelia Dougherty's care have continued to diminish at a rapid and unsustainable rate; the limitations of Medicare coverage have become increasingly concrete rather than speculative; and, critically, Joseph Conroy—who previously provided meaningful assistance in caring for Cecelia—passed away on November 10, 2025.

In addition, the extent to which Cecelia's daughters can continue to provide care cannot be adequately assessed without live testimony.

In light of these developments, and to prevent manifest injustice, Defendant respectfully requests that the Court grant reconsideration and conduct an evidentiary hearing to allow a complete and accurate assessment of the extraordinary and compelling circumstances now presented.

I.     **<u>LEGAL ARGUMENT</u>**

     a.   <u>Legal Standard</u>

"The purpose of a motion for reconsideration under Local Rule 7.1(g) is 'to correct manifest errors of law or fact or to present newly discovered evidence.'" *Shaw v. Parker Hannifin Corp.*, 2008 WL 2609827, at *2 (E.D. Pa. June 27, 2008) (quoting *Harsco Corp. v. Zlotnicki*, 779 F.2d 906, 909 (3d Cir. 1985), cert. denied, 476 U.S. 1171, 106 S. Ct. 2895, 90 L. Ed. 2d 982 (1986)); Local R. Civ. P. 7.1(g), Comment 6(c). "Under this standard, a party seeking reconsideration may prevail if it meets at least one of the following grounds for relief: '(1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court granted the motion for summary judgment; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice.'" *Shaw*, 2008 WL 2609827, at *2 (citing *Max's Seafood Café ex rel. Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999)); see also *Houston v. Easton Area Sch. Dist.*, 2008 WL 4646105, at *4 (E.D. Pa. Oct. 8, 2008).

While Defendant recognizes that reconsideration pursuant to Local Rule 7.1(g) is a sparingly used remedy, reconsideration is warranted here to prevent manifest injustice and to permit the Court to reassess its prior ruling in light of materially changed circumstances bearing directly on the extraordinary and compelling analysis under 18 U.S.C. § 3582(c)(1)(A). Specifically, developments that occurred while the Motion was pending—including the continued and rapid depletion of trust funds supporting Cecelia Dougherty's care and the death of Joseph

Conroy, who previously provided meaningful caregiving assistance—fundamentally alter the factual landscape underlying the Court's January 27, 2026 Order. Respectfully, these circumstances warrant reconsideration and further factual development through an evidentiary hearing.

b. <u>Reconsideration Is Warranted Because Materially Changed Caregiving Circumstances Now Establish Extraordinary and Compelling Reasons Under § 3582(c)(1)(A)</u>

As courts have repeatedly recognized, compassionate release determinations are inherently fact-intensive and turn on the real-world availability of caregiving, not theoretical or speculative alternatives. Courts therefore routinely look to persuasive authority from other jurisdictions when evaluating whether circumstances constitute extraordinary and compelling reasons. *See generally United States v. Spencer*, 519 F. Supp. 3d 237, 240 (E.D. Pa. 2021); *United States v. Briggs*, 524 F. Supp. 3d 419, 423 (E.D. Pa. 2021). That approach is especially appropriate here, where Eastern District precedent itself relied on out-of-district decisions addressing nearly identical caregiving breakdowns.

c. <u>*United States v. Kesoyan* Demonstrates That the Collapse of a Family Caregiving Network Constitutes an Extraordinary and Compelling Circumstance</u>

In *United States v. Kesoyan*, the court granted compassionate release where the defendant's adult son—though not a minor—was profoundly disabled and dependent on a fragile and deteriorating caregiving network. 2020 WL 2039028, at *4–6 (E.D. Cal. Apr. 28, 2020). The court conducted a detailed, practical assessment of who was actually capable of providing care. It found that although multiple family members nominally existed, none could realistically meet the son's daily needs due to serious medical issues, substance abuse, and competing caregiving obligations. *Id.* at *4–5. Critically, the court rejected the notion that the mere presence of other family members

defeated relief, focusing instead on whether those individuals could provide adequate, sustained care in reality. *Id.* [1]

The parallels to Mr. Dougherty's case are striking. As in *Kesoyan*, the issue is not whether other family members exist, but whether any can realistically provide the level of care required. Joseph Conroy's death removes a key caregiver, and the record reflects that Cecelia Dougherty's daughters, already physically and financially exhausted, cannot continue to provide the intensive, round-the-clock care Cecelia requires without severe personal consequence. *See* Def.'s Mot. for Compassionate Release Exs. F, G. As in *Kesoyan*, the caregiving structure has collapsed, leaving the defendant as the only person capable of preventing further deterioration. The *Seals* court explicitly cited *Kesoyan* for this very proposition, confirming its relevance and persuasive force in this District. 509 F. Supp. 3d at 262–63.

### d. *United States v. England* Confirms That Practical Incapacitation of Caregivers Supports Compassionate Release

Similarly, in *United States v. England*, the court granted compassionate release based on family circumstances where the existing caregiving arrangement for the defendant's medically fragile child had become untenable. 2020 WL 4004477, at \*2–3 (D. Mont. July 15, 2020). Although multiple caregivers technically existed, the court focused on the practical reality that those caregivers could not continue providing care without jeopardizing the child's health, their employment, or both. *Id.* The court concluded that these circumstances constituted an "incapacitation of the caregiver" within the meaning of the compassionate release framework. Id.

---

[1] *See also United States v. Seals* where the court granted compassionate release where the defendant demonstrated that the caregiver for her minor child had become incapacitated and no viable alternatives remained. 509 F. Supp. 3d 259, 261–63 (E.D. Pa. 2020). The court emphasized that extraordinary and compelling reasons exist where "family members … are in dire need of a defendant's caregiving, and no other caregivers are available." Id. at 263. Importantly, Seals did not confine its analysis to binding precedent; instead, it expressly relied on persuasive authority from other jurisdictions—specifically *United States v. Kesoyan* and *United States v. England*—to support its conclusion. Id. at 262–63. Those cases therefore carry particular persuasive weight here.

e. <u>Eastern District Precedent Confirms That These Circumstances Independently Warrant Reconsideration</u>

The Eastern District has further clarified there is no rigid test for determining extraordinary and compelling reasons and that compassionate release may be warranted where the defendant is the only viable caregiver. In *United States v. Fields*, the court emphasized that relief may be appropriate where a defendant is "the only available alternative caregiver," particularly when prior caregiving arrangements have failed. 569 F. Supp. 3d 231, 236–38 (E.D. Pa. 2021). The *Fields* court grounded its analysis in practical realities, rejecting hypothetical or speculative caregiving alternatives. *Id.*

f. <u>Failure to Reconsider Would Result in Manifest Injustice</u>

Finally, reconsideration is necessary to prevent manifest injustice. Congress amended § 3582(c)(1)(A) through the First Step Act to ensure that courts have the authority to prevent inhumane outcomes where extraordinary and compelling circumstances exist. *See* Def.'s Mot. for Compassionate Release. As Senate Judiciary Committee Chair Richard Durbin explained, the First Step Act was designed to recognize "the obvious—the vast majority of people who are incarcerated will someday be released," and to ensure that courts have the tools necessary to "reunite families and revitaliz[e] communities" where continued incarceration no longer serves justice.[2]

Senator Durbin further emphasized that the First Step Act has operated "safely and effectively," noting that of nearly 30,000 individuals released under its reforms, only 12.4 percent were arrested for new crimes—far below the Bureau of Prisons' overall recidivism rate.[3] In his words, Congress must continue to "build upon the proven successes of 'smart on crime' policies

---

[2] Statement of Sen. Richard Durbin, Chair, S. Judiciary Comm., *Five Years of the First Step Act* (Jan. 17, 2024); https://www.judiciary.senate.gov/press/releases/durbin-delivers-opening-statement-during-senate-judiciary-committee-hearing-on-the-fifth-anniversary-of-the-landmark-first-step-act.

[3] *See supra*.

like the First Step Act" and "provide more opportunities for those who are incarcerated to reenter society successfully [and] reunite with their families." *Id.* The continued depletion of the trust funds supporting Cecelia Dougherty's care, combined with the death of a key caregiver, transforms the Court's prior concerns from speculative to concrete. Without reconsideration and an evidentiary hearing, Defendant will remain unable to provide care that no governmental program or alternative family member can replace. Denial of reconsideration under these circumstances would undermine the very purpose Congress sought to advance in expanding compassionate release—namely, allowing courts to respond humanely and pragmatically when continued incarceration no longer serves the interests of justice.

Lastly, Dougherty understands that his trial and conviction were covered by the news media extensively and he expects that should he be released on compassionate grounds the news media would extensively cover that event. But the newsworthiness of the defendant has no bearing on the decision before the Court. Dougherty does not ask for special treatment, only to be treated similarly as the defendants in *Fields*, *England*, and *Kesoyan*, where district courts, when presented with similar circumstances, granted compassionate release.

## II.     CONCLUSION

This Court should reconsider its prior ruling and permit further factual development with an evidentiary hearing. The record, through an evidentiary hearing and additional testimony, will evidence extraordinary and compelling reasons warranting compassionate relief.

Respectfully submitted,

**BOCHETTO & LENTZ, P.C.**

Dated:  February 5, 2026          By:     */s/ George Bochetto*
                                        GEORGE BOCHETTO, ESQUIRE

6

<u>**CERTIFICATE OF SERVICE**</u>

I, *George Bochetto, Esquire*, hereby certify that a true and correct copy of the forgoing was filed electronically through this Court's ECF System and is available for viewing and downloading from this Court's ECF System. I further certify that an electronic copy of the foregoing was served upon all parties of record through this Court's ECF System.

**BOCHETTO & LENTZ, P.C.**

Dated:  <u>February 5, 2026</u>                By:     *<u>/s/ George Bochetto</u>*
                                                          GEORGE BOCHETTO, ESQUIRE

# Exhibit 1

# George Bochetto

| | |
|---|---|
| **From:** | Tara Chupka <tarachupka@gmail.com> on behalf of Tara Chupka |
| **Sent:** | Wednesday, January 28, 2026 2:26 PM |
| **To:** | George Bochetto |

**THE CECELIA DOUGHERTY TRUST** TARACHUPKA@GMAIL.COM

Last online session: **January 28, 2026**

View messages

## Accounts

Customize accounts

| Deposit | Available Balance | Current Balance |
|---|---|---|
| WSFS CORE CHECKING, *3878 | $201,881.73 | $201,881.73 |
| Total Deposit: | **$201,881.73** | **$201,881.73** |

--

Tara D. Chupka, Esq.
tarachupka@gmail.com

# Exhibit 2

HONORABLE JEFFREY L. SCHMEHL

THANK YOU YOUR HONOR FOR CONSIDERING THE EMERGENCY MOTION FOR RECONSIDERATION I ASKING FOR THE OPPURTUNITY TO TAKE THE STAND AT A EVIDENTIARY HEARING. I HAVE ONLY TAKEN THE STAND ONE OTHER TIME FOR 20 MINUTES OR SO IN ALL OUR HEARINGS I WILL TELL YOU WITH MY HAND ON THE BIBLE , that this REALLY IS A LIFE OR DEATH HEARING CEILIE IS totally ALIVE INSIDE A 75 PERCENT DEAD BODY, EVEN BEING A BRAIN DAMAGED parapalycic, CEILIE IS ABLE TO SMILE, LAUGH, SING, PRAY, ANSWER QUESTIONS FROM 1980. AFTER THE DEATH OF HER FATHER JOE CONROY, the GREATEST MAN I EVER MET (AND AS THE WHOLE REGION ALREADY KNOW HOW MUCH I LOVED MY FATHER).

CEILIE IS NOW SPENDING OVER 80 to 85 PERCENT OF HER DAYS WITH OUT ANY IMMEDIATE FAMILY; OUR MEDICAL STAFF AND FAMILY ARE REALLY STARTING to FEEL THE LOSS OF JOE, AS WELL AS THE MOST RECENT FRUSTRATION OF THE POSSIABILITY OF ME NOT BEING HOME FOR A LITTLE, MOST DAYS* HAVE ONLY 1 STAFF TAKING CARE

2

OF CEILIE, THEY ARE DOING A AMAZING JOB, BUT IT IS IMPOSSIABLE to GIVE CEILIE, the THERAPY AND OUTDOOR ACTIVITY that SHE REQUIRES AS WELL; IT HAS BECOME PART OF HER RECOVERY — AND YES CEILIE WAS MAKING SIGNIFICANT STRIDES. BUT NOW IT IS IMPOSSIABLE to GO OUT ANYWHERE OTHER than IN FRONT OF OUR BUILDING, CAN NOT TAKE the VAN without AtLEAST 2 AND MAYBE 3 SETS OF HANDS, IT IS ALSO OUT OF the QUESTION to DO CEILIE'S STANDING therapy which HAS WENT FROM AtLEAST 5 TIMES PER WEEK to 2 TIMES ON MOST WEEKS — YOGA HAS BEEN A NO GO with OUT HER DAD, EITHER IN PERSON OR MOST OF the time VIRTUAL YOGA; EVEN though CEILIE WAS A YOGA PRACTIONER EVER SINCE HER 1ST STROKE OVER 20 YEARS AGO AND AtLEAST 3x A WEEK FOR YEARS. IT IS TRYING FOR HER, WITH BODY MOVEMENTS, BREATHING EXERCISES, RELAXATIONS MOVEMENTS/ZEN. IT WAS SOMETHING AS WELL AS STAND that HER DAD ASSISTED IN SINCE I LEFT OVER 16 MONTHS AGO. YOU KNOW BETTER than ANYONE, I WILL BE 66

3.

YEARS OLD IN APRIL, (ONE of the oldest INMATES HERE, AND MOST CALL ME O.G. OR MR. JOHN) A 1ST TIME OFFENDER, SELF SURRENDER; NON VIOLENT AND MORE IMPORTANTLY; HAVE BEEN A EXEMPTPLANARY INMATE — I WILL BE ABLE TO TELL YOU ALL THE ACTIVITIES AS WELL AS LEADERSHIP ROLES I HAVE AND STILL AM PERFORMING — I COMPLETE THE NON RESIDENTIAL DRUG, Alcohol AND Psych 12 WK COURSE, ACTUALLY AM THE "go to guy FOR ALL CATHOLIC ACTIVITIES AND ALSO THE cLOSELY WORKING WITH THE JEWISH COMMUNITY" — THESE WERE 2 of the LEAST ACTIVE RELIGIOUS BELIEFS prior to myself, I HAVE BEEN A STEADY INFLUENCE IN THE GED CLASS SINCE MY 1ST WEEK AT LEWISBURG; AlMOST All INMATES WHO ATTEND ARE AlWAYS AT MY CUBE to get HELP WITH THEIR PREP + TESTING — WE HAVE GRADUATED RECORD NUMBERS IN MY TIME, (ENCLOSED A CIRCULAR FROM THIS YEARS GRADUATION that WAS THIS WEEK) I SPEND All MY SPARE TIME ON THE PHONE WITH CEILI, 510 MINUTES PER MONTH; EMAILING ALL DAY, AND 25 MULTI PAGE LETTERS / MAILING PER WEEK, THEY ARE / CONSIST of

4

Lots of TRIVIA, HAND MADE CARDS;
RIPPED OUT MAGAZINE ARTICLES (LIKE when I
WAS HOME AND I would READ everthing);
With the LITTLE RESOURCES I HAVE, I SEND
FLOWERS AND BALLOONS with LONG NOTES to CEILIE
I HAVE NO $1, MODEST PENSION that
JUST ABOUT PAYS the BILLS (JOE would HELP
with that) — I get NO SOCIAL SECURITY
while IN LEWISBURG — AND HAVE SPENT
OVER 1.2 MILLION IN DEFFERED INCOME; PROCEEDS

Sales of MY/OUR HOUSE, All SAVINGS, All LAWSUIT
RETURNS ON CEILIE'S CARE, As FOR the
GIRLS, ERIN + TARA HAVE BEEN AMAZING
this IS IMPOSSIABLE, the LITERALL 7/24
NATURE OF CEILIES NEEDS ARE Always there
. I AM the MOST RESTED I HAVE BEEN IN
the OVER 25 yrs of CEILIE HEALTH ISSUES
. LEWISBURG IN SOtimes EASIER than takins
CARE OF CEILIE, BUT I AM STIR CRAZY
KNOWING that I AM REALLY the ONLY ONE
who can get HER ENGAGED FOUR HOURS,
DO HER therapy; take All HER MEDS +
SHOWERS (LOL) — CEILIE HAS fought to
STAY NOT JUST ALIVE, BUT REALLY ALIVE.
ERIN + TARA Both HAVE JOB, CONCERNS,

5

HEALTH CONCERNS, AND IT HAS BECOME INCREASEINGLY MORE DIFFICULT, WITH THE PASSING OF JOE, ERIN, ESP thru HER LYMPHONIA SUNSUM RECOVERY WAS UNBELIEVABIY CLOSE TO JOE AND HANDLE THE LAST MONTHS OF HIS LIFE!! AS WELL AS CEILIE, "HER MOM" — TANA HARA HAS TAKEN ON MORE AND IT HAS BECOME A <sup>un</sup>"IMPOSSICABLE LOVE, WHICH HAS INTERFEARED WITH ANY PERSONAL LIFE SHE MIGHT EVEN THINK ABOUT, I KNOW THIS IS ALREADY TOO MUCH WRIGHTING — I AM ASKING YOU FOR THE eppor tunity to go HOME to TAKE CARE OF CEILIE, WITH THE STRICTESS OF RESTRICTIONS AND OVER SIGHTS — I DO NOT WANT A REDUCTION, INFACT I WANT TO BE ABLE EVERY QUESTION YOU MIGHT HAVE, ESPECIALLY CONCERNING THE FIRST STEP ACT, 2ND CHANCE ACT, NDAP, RDAP, good SERVICE ETC, ALL LEGISLATIVE LAWS that could HAVE ME HOME BEFORE THE END OF THE YEAR, BUT CEILIE NEEDS ME NOW, the END of the YEAR without ME WILL BE DIFFICULT to set for CEILIE, I AM truely SORRY for MY ACTIONS AND PUTTING YOU IN THIS SPOT, I PRAY to GOD All DAY EVERY DAY for ANOTHER opportuni to MAKE AMENDS AND TAKE CARE OF CEILIE 7/24's

TIME CONSUMING JOB + this

Thank You your Honor!

2 Final thoughts, when Joe passed I tried to get a 10 hour furlough, I was denied, but in the process the Chaplain came looking for me, and a senior guard told him where I was and how, I was a easy responsibles inmate and a former senior guard MR GEORSE, told me many times, "what are you doing here, you should be home with your wife, you are only taking up room!" WE ARE MAX'd out with inmates, have a mesa out break, and preparing for a ICE DETENTION prison of hundreds in the prison a mile away from the camp!"

Thank You
John DOUGHERTY

# GRADUATION 2026

## FPC LEWISBURG
## EDUCATION DEPARTMENT
### JANUARY 29, 2026



"If opportunity doesn't knock, build a door."

## Camp Education Staff

| | | |
|---|---|---|
| Mr. Hampe | Mr. Kuhns | Mr. Dickinson |
| Mr. Kurtz | Mr. Smith | Mr. Sheesley |
| Mr. Pardoe | Mr. Lincoln | |

## Education Work Detail

Elijah Goshert
John Dougherty
Isaiah Tenryk
Kiel Brandt
Vijaya Shetty
Jason Painter

Eric Lesak
Brian Burrows
Jeremy Corra
Basheer Dipietro
Anthony Hauck
Graham Hauck

James Lisa
Jovani Santiago
Surage Perera
Jeffrey Brooks
Joseph Maharaj

## GED Completions

Al-Salaam Hale
Emmanuel Liriano
Austin Gonsalves
Derrick Felton
Tayvon Lindsey
Julian Santiago
Frederick Bartley
Jerell Simms
Leonard Coleman
Kevin Martinez

Leslie Smith
Mark Ryals
Gregory Schroeder
Cory Daigle
Adam Cook
Ruben Melendez
Lamar Paris
Raquel Braswell
Jose Valdez
Davonte Wright

Shawn Hill
Adrian Mason
Anthony Santos
Gerald Benson
Eric Munoz
John Wiggins
Eric Harris
Kevin Fuller
Eronus Blay
Alberto Marrero

## English-as-a-Second Language (ESL) Completions

Juan Aquino
Gilberto Mora Rocha
Richard Helena Silverio

Byron Briceno
Lianbo Wang

Raul Diaz-Batista
Jorge Figueroa-Rivera

## Occupational Training Completions

### CDL

Christopher Bell
David McCrone

Sean Hall
Ephrem Nguyen

James Letko
Aaron Burke

### Building & Trades

Michael Banks
Jimmy Hart
Josue Maisonet
Jelani Wray
Kelvin Baez-Adames
Korey Cornish
Rashad Holder
Kavon Robinson
Khalil Shaheed
Winston Yu

Aaron Burke
Troy Headley
Jerson Pena Fernandez
Jimmie Young
Travis Benson
Anthony Cyntje
Harold McKinney
Cesar Santana
Gerick Turner

Arlen Encarnacion
Dwight Lawrence
Bob Rivera
Dontail Allison
Dashawn Broomer
Tremayne Ferguson
Rafael Montedeoca
Jovani Santiago
Thomas Wackman

### Certified Personal Trainer

Kareem Anderson
Robert Henon
Derek Metz
Dedric Camphor
Ahmed Osmen
Kyle Weiland

Rajeim Bradshaw
Eric Lesak
Malani Sanders
Dylan Meissner
Kavon Robinson

Bryant Gairaud
Giovanni Lugo
Kraig Trotter
Ralph Minni
Luis Vasquez

*Refreshments Provided by the Culinary Arts VT Program at USP Lewisburg*