**THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| v. | : | CRIMINAL NO. 19-64-1 |
| JOHN DOUGHERTY | : | |

**GOVERNMENT'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION
FOR RECONSIDERATION OF DENIAL OF MOTION TO REDUCE
SENTENCE PURSUANT TO 18 U.S.C. § 3582(c)(1)(A)(i)**

On January 26, 2026 (ECF 871), this Court denied the motion of defendant John

Dougherty for compassionate release. The Court explained that even if Dougherty

presented an "extraordinary and compelling reason" allowing consideration under 18

U.S.C. § 3582(c)(1)(A)(i), early release was not warranted upon consideration of the 18

U.S.C. § 3553(a) sentencing factors. The Court expounded:

> The nature and circumstances of this Defendant's offenses were indeed serious.
> They both undermined the public's trust in government, and the Union's trust in
> its leadership. He was twice convicted by juries of his peers—first for depriving
> the citizens of Philadelphia of the honest services of their elected official, and
> second for embezzling and misusing assets of Local 98. The Court noted at
> sentencing that all of these offenses represented "an incredible breach of duty" and
> a "loss of integrity and responsibility" that transformed Local 98 into Defendant's
> "personal piggy bank."

> With respect to his wife's condition, the record reflects that the trust funds
> supporting her care have not yet been depleted, and it remains speculative whether
> government programs such as Medicaid will be insufficient to cover the associated
> costs. The evidence also shows that, although they may not be available on a full-
> time basis, the Defendant's daughters can provide their mother with some
> meaningful degree of assistance. While the Defendant's wife's ongoing situation

is extremely unfortunate, it does not outweigh, at this point in time, the need for the punishment that has been adjudged.

On February 5, 2026 (ECF 872), Dougherty filed a motion for reconsideration. But the motion simply restates his earlier arguments, and should be denied. The Third Circuit explained:

> "The purpose of a motion for reconsideration . . . is to correct manifest errors of law or fact or to present newly discovered evidence." [*Max's Seafood Cafe ex rel. Lou Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999)] (quoting *Harsco Corp. v. Zlotnicki*, 779 F.2d 906, 909 (3d Cir.1985)). "Accordingly, a judgment may be altered or amended if the party seeking reconsideration shows at least one of the following grounds: (1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court granted the motion for summary judgment; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice." *Id*. (citation omitted).

*Howard Hess Dental Laboratories Inc. v. Dentsply Intern., Inc*., 602 F.3d 237, 251 (3d Cir. 2010).

> Such motions "are granted for 'compelling reasons,' such as a change in the law which reveals that an earlier ruling was erroneous, not for addressing arguments that a party should have raised earlier." *Solis v. Current Dev. Corp*., 557 F.3d 772, 780 (7th Cir.2009) (internal citations omitted). Though "[m]otions to reconsider empower the court to change course when a mistake has been made, they do not empower litigants . . . to raise their arguments, piece by piece." *Id*.

*United States v. Dupree*, 617 F.3d 724, 732 33 (3d Cir. 2010).

Here, Dougherty does not present any change in law, and instead simply reargues facts already known to the Court. He asserts that his daughters will attest that they are overwhelmed and not able to provide meaningful care to their disabled mother, as stated in the original motion. He states that his father-in-law passed away, but as the government previously explained, his father-in-law was ill for some time and did not provide meaningful care.

Most particularly, Dougherty stresses that the trust fund that pays for his wife's care is diminishing, reduced from $641,741 as of June 2024 to a balance of $294,877.95 at the time the original motion was filed, to a current balance five months later of $201,881.73. But if that is true – that the fund is being reduced at the rate of $92,996.22 during the last five months, that is, $18,599.24 per month – this means the fund will continue to pay the necessary expenses for another 10.85 months.

Further, at that point, if the family's assets are truly depleted, public assistance will be available under the Pennsylvania Medical Assistance (Medicaid) program. As this Court stated, it is entirely speculative that such care will be inadequate. Dougherty again insists that "there is NO WAY Medicare will provide the same level of care that Cecelia now receives (and that John Dougherty is ideally suited to provide)." Mtn. 3. But this is not an extraordinary situation. Many hundreds of thousands of Americans rely on Medicaid for necessary long-term care.[1]

Notably, it is not true that Dougherty is "ideally suited" to replace what he himself describes as the "intensive, round-the-clock care," Mtn. 10, that his wife receives. As the government has previously explained, Dougherty never provided his wife with the round-the-clock care that she regrettably requires. That is understandable, upon review of the

---

[1] *See* Centers for Medicare and Medicaid Services, *A Guide for Medicaid Beneficiaries' Families and Helpers*, https://www.cms.gov/medicare-medicaid-coordination/fraud-prevention/medicaid-integrity-education/downloads/nursinghome-beneficiary-factsheet.pdf (accessed Feb. 11, 2026) (stating, "A nursing home is one of many settings where Medicaid long-term care is provided. There are about 1.4 million nursing home residents in the United States. Almost two-thirds of those residents are Medicaid beneficiaries.").

information and particularly the video he previously provided to the Court, which documented his wife's tragic condition, showing that she is a nonverbal quadriplegic who is entirely incapacitated and dependent at all hours on the assistance of multiple nurses with every function of daily life.

The terrible fact remains that Mrs. Dougherty requires specialized, professional care, and she needs it 24 hours a day. If the money for private care runs out, whether Dougherty is incarcerated or not, the family must find resources to provide 24-hour coverage for the necessary care. John Dougherty himself is not a medical professional and cannot personally provide this care, and never provided 24-hour assistance. As such, like so many other Americans who require life-sustaining care, either as a result of old age or profound illness, Mrs. Dougherty must turn to the generous assistance provided by Medicaid for either in-home or nursing home care. In short, the one changed circumstance that has been suggested by Dougherty – that funds to pay for private care may run out in just under a year – does not support his release, or reconsideration of this Court's solemn and well-considered prior denial of his motion for release.

There is no need for a further hearing. The Court had the opportunity, at sentencing, to hear from the adult daughters in question, and quite properly assessed them as having the capabilities to supervise their mother's care. The defendant also invokes the loss of their mother's father as imposing an additional burden on them, but again overlooks his own prior acknowledgement that Mrs. Dougherty's father was not meaningfully able to care for his daughter in the last period of his life. *See* Motion, ECF

852, at p. 7 (Aug. 28, 2025) (stating, "Cecelia's father is no longer able, and will never again be able, to assist in caring for Cecelia").

In these circumstances, the government continues to maintain, while deeply sympathizing with his wife's condition, that release of Dougherty to assist his wife is not warranted, particularly where such an action would reduce the sentence for the very serious criminal conduct accurately described by the Court. The defendant's protests that his crimes were not that serious and that the term of imprisonment carefully determined by the Court is unwarranted are entirely unconvincing.

For years leading up to his indictment, the defendant was handsomely paid to be the Business Manager of Local 98. While employed in this fiduciary position, Dougherty abused his position of trust, embezzling from the union in almost every conceivable way, including by having renovations made to his house, buying expensive meals and trips for himself, his family, and his mistress, and having the employees of the union undertake personal tasks for him and his family members. In addition, Dougherty used union funds to bribe a sitting City Councilman to do his bidding rather than representing the people of Philadelphia. The illicit arrangement he struck with the Councilman allowed Dougherty to wield substantial power to the detriment of the community. This manifested itself in concrete ways (such as causing delays in the installation of extremely expensive MRI machines for children suffering from cancer, and threatening to ruin a towing company that had legally towed his illegally parked car) and in more intangible ways, such as by eroding the public's trust in good government. His self-serving view that he was not a serious criminal and has suffered enough is not a basis for overturning this Court's

carefully considered sentence, or revisiting the Court's carefully reasoned denial of compassionate release.

For these reasons, the defendant's Motion for Reconsideration and its embedded request for an evidentiary hearing should be denied.

Respectfully yours,

DAVID METCALF
United States Attorney


*/s Robert A. Zauzmer*
ROBERT A. ZAUZMER
Assistant United States Attorney
Chief of Appeals


*/s Bea L. Witzleben*
BEA L. WITZLEBEN
Assistant United States Attorney

**CERTIFICATE OF SERVICE**

I hereby certify that this pleading has been served on the Filing User identified

below through the Electronic Case Filing (ECF) system:

George Bochetto, Esq.

*/s Bea L. Witzleben*
BEA L. WITZLEBEN
Assistant United States Attorney

Dated:  February 12, 2026.