**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA**<br><br>**v.**<br><br>**JOHN DOUGHERTY** | **CRIMINAL DOCKET**<br>**NO. 2:19-cr-00064-001-JLS** |

**M E M O R A N D U M**

**SCHMEHL, J.** /s/ JLS **July 29, 2026**

Federal prisoner John Dougherty is serving a total term of 72 months' imprisonment for honest-services wire fraud, embezzlement of labor union assets, making and subscribing to false federal income tax returns, and related crimes. Shortly after reporting to federal custody, Dougherty petitioned the Court for compassionate release under 18 U.S.C. § 3582, arguing, among other things, that he ought to be released because he is the only available caregiver for his incapacitated wife. The Court denied that motion. *See* Order, ECF No. 871. A few days later, Dougherty filed a motion for reconsideration, ECF No. 872. After careful and considered review, the Court again denies relief.

**I**

Section 3582(c)(1)(A) permits a district court to reduce a previously imposed term of imprisonment only if the court finds that (i) extraordinary and compelling reasons warrant a reduction, and (ii) the factors set forth in 18 U.S.C. § 3553(a) weigh in favor of reduction.

With respect to step one—the "gatekeeping requirement"—Congress did not define the phrase "extraordinary and compelling." *See Rutherford v. United States*, 146 S. Ct. 1320, 1333 (2026). Instead, Congress directed the U.S. Sentencing Commission to articulate what circumstances should so qualify, the appropriate criteria, and related examples. *See* 28 U.S.C. §

994(t). Congress additionally specified that, before modifying a sentencing, a district court must review the Sentencing Commission's relevant policy statements and deem the reduction "consistent" therewith. *See* 18 U.S.C. § 3582(c)(1)(A). Here, Dougherty contends that his requested reduction is consistent with U.S. Sentencing Guidelines Manual § 1B1.13(b)(3)(B) (U.S. Sent'g Comm'n 2025) ("Family Circumstances of Defendant").

**II**

Section 1B1.13(b)(3)(B) authorizes compassionate release where the prisoner's spouse is "incapacitated" and when the prisoner would be the "only available caregiver." Here, the parties agree that Dougherty's wife, Cecelia, is incapacitated within the meaning of § 1B1.13(b)(3)(B) because she is quadriplegic and requires around-the-clock care. The threshold question is whether Dougherty has proven that he is the "only available caregiver" for his wife. To resolve the "fact-intensive inquiry," *United States v. Robelo-Galo*, 166 F.4th 1311, 1316 (11th Cir. 2026), the Court convened an evidentiary hearing, *see* Tr., ECF No. 885, briefly summarized below.

**A**

On May 18, 2026, the Court permitted Dougherty to supplement the record. After the parties stipulated to the admissibility of several exhibits, the Court heard testimony from five witnesses. First, Dr. Erol Veznedaroglu, a cerebrovascular and neurocritical-care neurosurgeon, testified that he has known the Dougherty family for decades and believes that Dougherty is "the most capable caregiver" for his wife and "could care for his wife all by himself 24/7." Veznedaroglu testified that he is aware that private nurses currently visit the Doughertys' Philadelphia apartment to care for Cecelia. He further testified that if Cecelia were placed in government-funded care, she likely would not receive sufficient attention and would die relatively quickly.

Next the Court heard from Tara Chupka, one of Dougherty's daughters. She testified that she is forty-two years old and works as an attorney in Philadelphia at "Dougherty Electric." Ms. Chupka further stated that her father served as Cecelia's primary caretaker from 2017 until October 2024, and that he is better able than anyone else to sense and respond to her needs. She testified that she cannot serve as her mother's primary caretaker in light of her own financial and work obligations. Chupka added that the private nurses who currently care for her mother are paid from trust funds, and that those costs are approximately $40,000 to $45,000 per month. And she testified that although the trust funds have been substantially depleted, a family friend has contributed approximately $20,000 per month to keep the fund afloat.

Third, Dougherty called his other daughter, Erin Dougherty. She testified that she is the CEO of a charter school in Philadelphia, which is an in-person job and cannot be balanced with full-time care of her mother. She further testified that she and her sister cover "shifts" when the privately retained nurses are unavailable. The balance of her testimony was consistent with much of Ms. Chupka's testimony.

Fourth, Dougherty called Dr. Donna Gentile O'Donnell, who testified that she has known the family for decades. She stated that Dougherty "is better suited than anyone else who walks the planet" to care for Cecelia. She also said that, if Cecelia is transferred to a publicly funded facility, "I think Cecelia will die within three to six months."

Finally, Dougherty himself took the stand and further described his wife's medical care and how he would be able to care for her if released.

**B**

Through counsel, Dougherty now contends that the trust funds paying for Cecelia's care will soon be depleted. When that occurs, Cecelia will be "forced" to transition to a government-

funded facility that cannot provide the level of care she requires. Dougherty further maintains that the mere theoretical availability of government-funded care does not defeat his argument. Otherwise, "[t]he Guideline provision would effectively be a dead letter, as that theoretical possibility . . . exists for any incapacitated [person]." *United States v. Haldorson*, No. 15 CR 623, 2024 WL 621653, at *3 (N.D. Ill. Feb. 14, 2024). Finally, Dougherty adds that his daughters cannot meet Cecelia's care needs given their employment obligations and the specialized nature of her condition. Taken together, Dougherty asserts that these circumstances establish that he is the only available caregiver.

In response, the Government contends that Dougherty has not definitively proven when the trust funds paying for Cecelia's medical care will "run dry." And the Government says that, even when the funds no longer exist, Pennsylvania's Medical Assistance program will remain available. Finally, the Government stresses that Dougherty is not a medical professional, cannot personally provide all the specialized care Cecelia requires, and has never before provided her with complete twenty-four-hour medical assistance.

**III**

After careful review, the Court finds that Mrs. Dougherty is presently receiving care from privately paid nurses in her Philadelphia apartment and is periodically visited by her two daughters. Neither party suggests that her current care is inadequate.[1] Nor has Dougherty sufficiently proven the projected exhaustion date of the trust funds, or—more importantly—what the status of the nursing care will be when the funds are exhausted.

---

[1] The Court notes that Dougherty does not dispute that his wife's privately paid nurses qualify as available caregivers.

On this record alone, the Court cannot conclude that Dougherty is the only available caregiver for his wife. Furthermore, for the reasons explained in the Court's prior order, ECF No. 871, and due to the minimal amount of time served toward the Court's initial sentence, the § 3553(a) factors still do not weigh sufficiently in favor of release. Should the facts materially change, or at a later point in time, Dougherty may file a renewed motion. For the present, the motion for reconsideration is denied.